Reid J. Schar (SBN 283948)
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA  94105-2453
Tel:     +1 628 267 6800
Fax:    +1 628 267 6859
Email: RSchar@jenner.com

Tassity S. Johnson
(admitted *pro hac vice*)
Samuel S. Ungar (SBN 318774)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC  20001-4412
Tel:     +1 202 639 6000
Fax:    +1 202 639 6066
Email: TJohnson@jenner.com
           SUngar@jenner.com

Alison I. Stein
(admitted *pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY  10036-2711
Tel:     +1 212 891-1600
Fax:    +1 212 891-1699
Email: AStein@jenner.com

*Attorneys for Defendants Twitter, Inc.
and Jack Dorsey*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LOOMER, as an individual, LAURA LOOMER, in her capacity as a Candidate for United States Congress, and LAURA LOOMER FOR CONGRESS, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., MARK ZUCKERBERG, in his capacity as CEO of Meta Platforms, Inc. and as an individual, TWITTER, INC., and JACK DORSEY, in his capacity as former CEO of Twitter, Inc. and as an individual,<br><br>                Defendants. | Case No. 3:22-cv-02646-LB<br>The Honorable Laurel Beeler<br><br>**TWITTER, INC. AND JACK DORSEY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:  September 15, 2022<br><br>Hearing Time: 9:30 AM<br><br>Courtroom:      B, 15th Floor |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 15, 2022 at 9:30 AM, or as soon thereafter as the Court is available, Defendants Twitter, Inc. ("Twitter") and Jack Dorsey (collectively, "Twitter Defendants") will appear before the Honorable Laurel Beeler and will, and hereby do, move to dismiss, in full and with prejudice, Plaintiffs Laura Loomer and Laura Loomer for Congress, Inc.'s Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Complaint fails to state any plausible claim on which relief can be granted. In addition, the Court lacks subject matter jurisdiction over Loomer's claims because she lacks standing to bring this action.

The Twitter Defendants' motion to dismiss is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, any additional briefing on this subject (including their reply brief), relevant arguments made by co-defendants which the Twitter Defendants may incorporate by reference, and any evidence and arguments that may be presented to the Court at a hearing on this matter.

## STATEMENT OF ISSUES

1.      Whether the Court should dismiss this action for failure to state a claim because it is barred by the doctrine of res judicata.

2.      Whether the Court should dismiss this action for failure to state a cognizable claim under Sections 1962(c) or (d) of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c)-(d).

3.      Whether the Court should dismiss this action for lack of subject matter jurisdiction because Plaintiffs lack constitutional standing.

4.      Whether the Court should dismiss this action for failure to state a claim because it is barred by Section 230(c)(1) of the Communications Decency Act of 1996, 47 U.S.C. § 230(c)(1).

5.      Whether, in the event the Court does not dismiss this action in full, the Court should nevertheless dismiss Plaintiffs' punitive damages claims.

1

## **TABLE OF CONTENTS**

2     STATEMENT OF ISSUES ..................................................................................... i

3     TABLE OF AUTHORITIES ................................................................................. iii

4     MEMORANDUM OF POINTS & AUTHORITIES ............................................... 1

5     BACKGROUND ..................................................................................................... 2

6     LEGAL STANDARD ............................................................................................. 4

7     ARGUMENT ........................................................................................................... 5

      I.      THE DOCTRINE OF RES JUDICATA BARS THIS ACTION. ................... 5
8
              A.      There Is an Identity of Claims Between This Case and the Prior
9                     *Freedom Watch* Case. .......................................................................... 6

10            B.      There Was a Final Judgment on the Merits in *Freedom Watch*. ........... 8

11            C.      There Is Privity Between the Parties in This Case and in the
                      *Freedom Watch* Case. .......................................................................... 8
12
      II.     THE COMPLAINT FAILS TO STATE A RICO CLAIM. .......................... 10
13
              A.      Loomer Lacks Standing to Sue Twitter for the Alleged
14                    RICO Violations. .................................................................................. 11

15            B.      Loomer Fails to Allege a Cognizable Association-in-Fact Enterprise. ... 13

16            C.      Loomer Fails to Allege That the Twitter Defendants "Conducted"
                      Any Enterprise. .................................................................................... 14
17
              D.      Loomer Fails to Allege a Pattern of Racketeering Activity.................... 15
18
              E.      Loomer Fails to Sufficiently Allege Racketeering Activity. .................. 16
19
                      1.      Loomer's Allegations About Twitter Do Not Establish a
20                            Predicate Act. ........................................................................... 17

21                    2.      Loomer Does Not Allege That Twitter Played Any Part in
                              Any Transportation in Aid of Racketeering, Wire Fraud, or Extortion..... 18
22
                      3.      Loomer Does Not Allege That Dorsey Played Any Part
23                            in Any Alleged Predicate Act. .................................................. 20

24            F.      Loomer Does Not State a Section 1962(d) Conspiracy Claim. .............. 20

      III.    SECTION 230 OF THE CDA BARS LOOMER'S COMPLAINT. ................ 21
25
      IV.     IN THE EVENT THE ENTIRE COMPLAINT IS NOT DISMISSED
26            WITH PREJUDICE, THE COURT SHOULD DISMISS LOOMER'S
              CLAIM FOR PUNITIVE DAMAGES........................................................... 24
27
      CONCLUSION...................................................................................................... 25

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                          **Page(s)**

3

4

*Abcarian v. Levine*,
   972 F.3d 1019 (9th Cir. 2020) ........................................................................18

5

*Abdulaziz v. Twitter, Inc.*,
   2020 WL 6947929 (N.D. Cal. Aug. 12, 2020) ................................................13

6

7

*Adam Bros. Farming v. Cnty. of Santa Barbara*,
   604 F.3d 1142 (9th Cir. 2010) ..........................................................................6

8

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995) ..........................................................................16

9

10

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .........................................................................................11

11

*Aquino v. Cal. Reconveyance Co.*,
   2014 WL 5494446 (N.D. Cal. Oct. 30, 2014) ..................................................8

12

13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................4, 17

14

15

*Barrett v. Rosenthal*,
   146 P.3d 510 (Cal. 2006) ................................................................................21

16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................4

17

18

*Bowen v. Olstead*,
   125 F.3d 800 (9th Cir. 1997) ..........................................................................12

19

20

*Boyle v. United States*,
   556 U.S. 938 (2009) ...................................................................................13, 14

21

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) .........................................................................................17

22

23

*Brittain v. Twitter, Inc.*,
   2019 WL 2423375 (N.D. Cal. June 10, 2019) ..........................................22, 23

24

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................................10, 11, 12

25

26

*Chaney v. Berkshire Hathaway Auto.*,
   2017 WL 6520662 (D. Ariz. Sept. 25, 2017) ................................................11

27

28

*Cnty. of Marin v. Deloitte Consulting LLP,*
    836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..............................................................16–17

*Conway v. Geithner,*
    2012 WL 1657156 (N.D. Cal. May 10, 2012) ...............................................................6

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,*
    2012 WL 10731957 (C.D. Cal. June 29, 2012) ............................................................14

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.,*
    528 F.3d 1001 (8th Cir. 2008) .....................................................................................17

*Darby v. Los Angeles Cnty.,*
    2018 WL 6074555 (C.D. Cal. Aug. 6, 2018) .................................................................9

*Davis v. Cnty. of Maui,*
    454 F. App'x 582 (9th Cir. 2011) ..................................................................................6

*Dehen v. Does 1-100,*
    2018 WL 4502336 (S.D. Cal. Sept. 19, 2018) .............................................................22

*Deville v. Specialized Loan Servicing, LLC,*
    2020 WL 7861974 (C.D. Cal. Nov. 20, 2020) ...............................................................7

*Doe v. Walmart Inc.,*
    2019 WL 499754 (N.D. Cal. Feb. 8, 2019) ...................................................................5

*Dyroff v. Ultimate Software Grp., Inc.,*
    934 F.3d 1093 (9th Cir. 2019) .....................................................................................21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    2012 WL 713289 (N.D. Cal. Mar. 5, 2012) .................................................................16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ...........................................................................10–11, 16

*Edwards v. Marin Park, Inc.,*
    356 F.3d 1058 (9th Cir. 2004) .......................................................................................4

*Eichman v. Fotomat Corp.,*
    880 F.2d 149 (9th Cir. 1989) .........................................................................................6

*Evans v. City of Chicago,*
    434 F.3d 916 (7th Cir. 2006) .......................................................................................12

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ...........................................................................2, 21, 23

*Fed. Agency of News LLC v. Facebook, Inc.,*
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .......................................................................23

iv

*Federated Dep't Stores v. Moitie*,
  452 U.S. 394 (1981) ..............................................................................................8

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016),
  *aff'd*, 881 F.3d 739 (9th Cir. 2018) ............................................................22, 24

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ....................................................................................24

*Fox v. Maulding*,
  112 F.3d 453 (10th Cir. 1997) ................................................................................9

*Fraser v. Mint Mobile, LLC*,
  2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) .......................................................25

*Freedom Watch, Inc. v. Google, Inc.*,
  368 F. Supp. 3d 30 (D.D.C. 2019),
  *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020),
  *cert. denied*, 141 S. Ct. 2466 (2021). ............................................................4, 5, 8

*Fulani v. Bentsen*,
  862 F. Supp. 1140 (S.D.N.Y. 1994) ..................................................................9, 10

*Fyk v. Facebook, Inc.*,
  2019 WL 11288576 (N.D. Cal. June 18, 2019) ................................................21, 24

*Gilbert v. MoneyMutual, LLC*,
  2018 WL 8186605 (N.D. Cal. Oct. 30, 2018) ........................................................15

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ..........................................................................22, 23, 24

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ...........................................................................................15–16

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ...................................................................................7

*Holloway v. Clackamas River Water*,
  2015 WL 13678932 (D. Or. Oct. 2, 2015) .............................................................12

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ................................................................................................11

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) ...........................................................................16, 20

*Hunt v. Zuffa, LLC*,
  No. 19-17529, 2021 WL 4355728 (9th Cir. Sept. 24, 2021) ..................................14

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018),
   *aff'd*, 786 F. App'x 104 (9th Cir. 2019)...................................................................24

*Illoominate Media, Inc. v. CAIR Found.*,
   2019 WL 13168767 (S.D. Fla. Nov. 19, 2019),
   *aff'd*, 841 F. App'x 132 (11th Cir. 2020).................................................................4

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ......................................................................................14

*Intermedics, Inc. v. Ventritex, Inc.*,
   804 F. Supp. 35 (N.D. Cal. 1992) ..............................................................................7

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) .......................................................................15

*Keys v. Pearson Affiliated, Inc.*,
   2013 WL 12205581 (C.D. Cal. May 14, 2013) .....................................................18–19

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ...................................................................................22

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) .......................................................................24

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .................................................................................24

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .....................................................................................2

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ...............................................................................17, 19

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) .......................................................................................5

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011),
   *aff'd*, 765 F.3d 1123 (9th Cir. 2014) .......................................................................23

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020),
   *aff'd*, 851 F. App'x 723 (9th Cir. 2021).....................................................................21

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ......................................................................................10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................5, 7, 12

*Mauro v. Fed. Exp. Corp.*,
  2009 WL 1905036 (C.D. Cal. June 18, 2009) ........................................................10

*Mazur v. eBay Inc.*,
  2008 WL 2951351 (N.D. Cal. July 25, 2008) .........................................................16

*McClain v. Apodaca*,
  793 F.2d 1031 (9th Cir. 1986) .................................................................................7

*Meland v. Weber*,
  2 F.4th 838 (9th Cir. 2021) ......................................................................................5

*Metaxas v. Lee*,
  503 F. Supp. 3d 923 (N.D. Cal. 2020) ...................................................................10

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*,
  215 F.3d 923 (9th Cir. 2000) ...............................................................................1, 6

*Morton v. Twitter, Inc.*,
  2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ........................................................21

*Mostowfi v. I2 Telecom Int'l, Inc.*,
  269 F. App'x 621 (9th Cir. 2008) ...........................................................................19

*Murillo-Prado v. Holder*,
  735 F.3d 1152 (9th Cir. 2013) ...............................................................................17

*N. Cal. River Watch v. Redwood Oil Co.*,
  2008 WL 4601016 (N.D. Cal. Oct. 15, 2008) ..........................................................8

*Neibel v. Trans World Assur. Co.*,
  108 F.3d 1123 (9th Cir. 1997) ...............................................................................25

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) .................................................................................21

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) .................................................................................2

*O'Handley v. Padilla*,
  2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ............................................................18

*Oscar v. Univ. Students Co-op. Ass'n*,
  965 F.2d 783 (9th Cir. 1992) .................................................................................12

*Oushana v. Lowe's Cos., Inc.*,
  2017 WL 5070271 (E.D. Cal. Nov. 3, 2017) ..........................................................24

*Ove v. Gwinn*,
   264 F.3d 817 (9th Cir. 2001) ................................................................................19

*Oxford St. Props., LLC v. Robbins*,
   2011 WL 13214282 (C.D. Cal. Feb. 24, 2011).......................................................15

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019) ...............................................................................11

*Pedrina v. Chun*,
   97 F.3d 1296 (9th Cir. 1996) ...............................................................................8, 9

*Powell v. Wells Fargo Home Mortg.*,
   2017 WL 2720182 (N.D. Cal. June 23, 2017),
   *aff'd*, 855 F. App'x 382 (9th Cir. 2021)..................................................................25

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) .................................................................................20

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)...............................................................................................15

*Richmond v. Nationwide Cassel L.P.*,
   52 F.3d 640 (7th Cir. 1995) ...................................................................................15

*Riggs v. MySpace, Inc.*,
   444 F. App'x 986 (9th Cir. 2011) ..........................................................................23

*Ripple Labs Inc. v. YouTube LLC*,
   2020 WL 6822891 (N.D. Cal. Nov. 20, 2020) ......................................................24

*Rouse v. Rouse*,
   1990 WL 160194 (N.D.N.Y. Oct. 17, 1990) .........................................................19

*Salazar v. Hoefel*,
   2005 WL 8156291 (C.D. Cal. Feb. 25, 2005)...................................................14–15

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) .................................................................................20

*Scheidler v. Nat'l Org. for Women, Inc.*,
   537 U.S. 393 (2003).........................................................................................19–20

*In re Schimmels*,
   127 F.3d 875 (9th Cir. 1997) ...................................................................................9

*Sedima v. Imrex Co.*,
   473 U.S. 479 (1985)...............................................................................................11

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015),
   *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ..........................................................................23

*Silva v. Yosemite Cmty. Coll. Dist.*,
   2019 WL 6878237 (E.D. Cal. Dec. 17, 2019) ....................................................................8

*Simon v. E. KY Welfare Rights Org.*,
   426 U.S. 26 (1976) ...............................................................................................................5

*Skilling v. United States*,
   561 U.S. 358 (2010) .............................................................................................................19

*Smith v. Block*,
   784 F.2d 993 (9th Cir. 1986) ..............................................................................................13

*Standard Chlorine of Del., Inc. v. Sinibaldi*,
   821 F. Supp. 232 (D. Del. 1992) ........................................................................................25

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ..............................................................................................5

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2002) ................................................................................................8

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
   720 F. Supp. 805 (N.D. Cal. 1989) ....................................................................................25

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   322 F.3d 1064 (9th Cir. 2003) ..........................................................................................6, 9

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..............................................................................................................9

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ............................................................................................16

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ..............................................................................................15

*United States ex rel. Barajas v. Northrop Corp.*,
   147 F.3d 905 (9th Cir. 1998) ................................................................................................6

*United States v. Bhatia*,
   545 F.3d 757 (9th Cir. 2008) ..............................................................................................10

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ..............................................................................................14

TWITTER & DORSEY'S MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:22-cv-02646-LB

*United States v. Enmons*,
    410 U.S. 396 (1973) .................................................................................... 20

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ............................................................... 20, 25

*United States v. Green*,
    592 F.3d 1057 (9th Cir. 2010) ..................................................................... 19

*United States v. Gurley*,
    43 F.3d 1188 (8th Cir. 1994) ......................................................................... 6

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987) ........................................................................ 11

*United States v. Rahman*,
    189 F.3d 88 (2d Cir. 1999) .......................................................................... 17

*United States v. Rogers*,
    389 F. Supp. 3d 774 (C.D. Cal. 2019) ........................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ............................................. 10

*W. Radio Servs. Co. v. Glickman*,
    123 F.3d 1189 (9th Cir. 1997) ....................................................................... 5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ....................................................................... 5

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ....................................................................... 25

*Yagman v. Wunderlich*,
    2021 WL 6804219 (C.D. Cal. Oct. 4, 2021) ............................................... 17

*Yates v. United States*,
    354 U.S. 298 (1957) .................................................................................... 17

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. amend. I ......................................................................................... 18

18 U.S.C. § 1951 ............................................................................................... 19

18 U.S.C. § 1952 ............................................................................................... 19

18 U.S.C. § 1961(1) .......................................................................................... 17

18 U.S.C. § 1962(c) .................................................................................. *passim*

18 U.S.C. § 1962(d) ................................................................................................2, 20

18 U.S.C. § 2385 ............................................................................................................17

18 U.S.C. § 2339B ....................................................................................................16, 18

47 U.S.C. § 230(c)(1) ............................................................................................ *passim*

47 U.S.C. § 230(e) .........................................................................................................23

Fed. R. Civ. P. 9(b) ...........................................................................................4, 17, 19

Fed. R. Civ. P. 12(b)(1) ..............................................................................................5, 13

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

Fed. R. Civ. P. 12(f) .......................................................................................................25

**Other Authorities**

Am. Class Action Compl., *Freedom Watch, Inc. et al. v. Google, Inc. et al.*,
No. 18-cv-2030 (D.D.C. Dec. 6, 2018), ECF No. 28 ...................................4, 6–7, 8

Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE (5th ed. 2018) ...........................................6

**MEMORANDUM OF POINTS & AUTHORITIES**

The Court should dismiss plaintiff Laura Loomer's complaint (ECF No. 1, the "Complaint") against Twitter and its former CEO, Jack Dorsey (collectively, "Twitter Defendants"), because it is barred by the doctrine of res judicata, fails to state a RICO claim upon which relief should be granted, and is barred by federal law. It also seeks to hold the Twitter Defendants liable for acts that did not cause Loomer any harm, depriving Loomer of standing and this Court of subject matter jurisdiction. Because of these multiple pleading failures, which are enumerated further below and which are each independently fatal to this action, the Court should dismiss the Complaint with prejudice.

First, the doctrine of res judicata precludes the relitigation of Loomer's ban from Twitter in this court. Loomer has already twice pursued legal actions against Twitter to overturn her ban. She filed her first case in the federal district court for the District of Columbia in 2019, alleging that her ban violated antitrust and non-discrimination laws. The trial judge ruled for Twitter on the merits, a unanimous panel of the D.C. Circuit affirmed, and the Supreme Court denied certiorari. Her second attempt was filed against Twitter, also in 2019, in the Southern District of Florida (though she never served Twitter). Because a plaintiff cannot file suit in a new court seeking redress for the same harm she sought to remedy in her prior failed litigation, Loomer's suit is barred, and the Court should dismiss it with prejudice. *See Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO,* 215 F.3d 923, 928 (9th Cir. 2000).

Second, Loomer fails to state a colorable civil RICO claim or establish the Court's jurisdiction over this action. Loomer asserts that a RICO conspiracy between Twitter, Dorsey, Facebook, Zuckerberg, and a variety of non-defendants, named and unnamed, exists. But she does not plead, as she must, that any of the alleged predicate acts concretely injured her business or property—either proximately or factually, as RICO requires. This defect also fatally deprives her of constitutional standing (and thus this Court of subject matter jurisdiction) because her alleged injuries are not "fairly traceable" to the complained-of conduct. Nor does she allege, as she must, that the Twitter Defendants associated with anyone else to form a RICO enterprise. She does not allege, as she must, that the Twitter Defendants agreed to participate in or conduct the business of

such an enterprise, which is also fatal to her allegations of a RICO conspiracy under 18 U.S.C. § 1962(d). And she does not plausibly allege, again, as she must, that the Twitter Defendants committed any of the purported predicate acts for which she seeks to hold the enterprise accountable.

And third, Section 230(c)(1) of the Communications Decency Act of 1996 (the "CDA") bars all of Loomer's claims against the Twitter Defendants because the claims rest entirely on Twitter's decisions about which content to allow, moderate, or block on its platform. Claims arising from decisions like Twitter's decision to remove Loomer from the platform are immune from liability under Section 230(c)(1). *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008). For that threshold reason, the Complaint fails to state a claim and must be dismissed with prejudice.

Because the Complaint is incurably defective, the Court should dismiss it with prejudice.

## BACKGROUND[1]

***Twitter.*** Twitter is a private enterprise that operates a global Internet platform for public self-expression and conversation. Jack Dorsey is Twitter's former Chief Executive Officer. Compl. ¶ 9. After agreeing to Twitter's User Agreement, which includes the Terms of Service (the "Terms"), any individual who is 13 years of age or older can create an account and post on the platform.[2] The Terms provide Twitter with the right to moderate content posted to its platform by account holders ("third-party content") and to ban account holders from the platform "for any or no reason." Compl. ¶ 246 & n.210. All account holders agree to be bound by these Terms when creating their accounts. The Terms incorporate Twitter's Hateful Conduct Policy, which prohibits the use of hateful language, tropes, images, and other similar content on the platform.[3]

---

[1] The allegations set forth in this brief are taken from the Complaint and are assumed to be true solely for purposes of this motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

[2] Twitter, Inc., Terms of Service, available at https://twitter.com/en/tos. Loomer incorporates these Terms into her Complaint by reference at paragraph 246, footnote 210, and the Court may consider them in adjudicating the Twitter Defendants' motion. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

[3] The Terms link to and expressly incorporate the Twitter Rules and Policies, https://help.twitter.com/en/rules-and-policies#twitter-rules, which themselves link to and expressly include the Hateful Conduct Policy, https://help.twitter.com/en/rules-and-policies/hateful-conduct-policy.

***Loomer and Twitter.*** On November 21, 2018, Twitter banned Laura Loomer from its platform for engaging in "hateful" conduct.[4] Compl. ¶ 210. On August 19, 2020, Twitter provided a statement to Breitbart News confirming that Loomer's ban remained in place after her victory in the Republican primary election in Florida's 21st congressional district. Compl. ¶ 240 & n.208. (Neither allegation mentions Dorsey, and the Complaint does not allege that Dorsey had anything to do with Loomer's Twitter ban.). These two paragraphs are the only paragraphs in the 369-paragraph Complaint that allege any connection between Loomer and Twitter.[5]

The Complaint's remaining allegations as to the Twitter Defendants are either irrelevant quotes and paraphrases from news articles, or legal conclusions that have nothing to do with Loomer. Compl. ¶¶ 24–25, 28, 30, 35, 40, 48, 50–55, 59, 61–63, 68, 71–72, 76, 81, 84, 86–91, 93–96, 108–09, 130–33, 144–45, 163–68, 172, 179, 181–86, 193–95, 197, 199–202, 204, 207–08, 246–51, 290, 294, 296, 298–300, 303, 307, 309, 311–12, 320, 326, 344, 346, 354, 356–58. In the interest of judicial economy, the Twitter Defendants will not summarize them all here because they have nothing to do with Loomer—but generally, Loomer recounts scores of Twitter's content moderation decisions and alleges those decisions suggest material support for terrorism and a plot to overthrow the United States government. Compl. ¶¶ 288–312. Critically, the Complaint does not even attempt to tie any of these allegations to Loomer's ban. *See generally id.* Loomer also alleges that conduct undertaken by other parties to this action—but not the Twitter Defendants—amounted to extortion, transportation in aid of racketeering, and wire fraud. Compl. ¶¶ 245–87. The Complaint draws no cognizable connection between these allegations and Twitter.

***Loomer's Prior Litigation Against Twitter.*** This action is not the first time that Loomer has sued Twitter based on her November 21, 2018 removal from the platform for violating Twitter's Hateful Conduct Policy, as she herself acknowledges. Compl. ¶¶ 13–14, 16. In *Freedom*

---

[4] Loomer sues in her personal capacity, in her "official" capacity (which does not exist, as explained *infra* at Part I.C), and on behalf of her 2020 congressional campaign. Because the Complaint does not meaningfully differentiate between these three purportedly separate plaintiffs, the Twitter Defendants refer to them collectively as "Loomer."

[5] Paragraph 180 includes an additional allegation that collaterally involves Loomer—an individual named Josh Lekach allegedly lost verified Twitter status after posting an interview with Loomer.

*Watch v. Google*, Loomer and others sued Twitter, Facebook, Google, and Apple, alleging that by banning her from their platforms they had violated the Sherman Act, the District of Columbia Human Rights Act, the First Amendment, and 42 U.S.C. § 1983. Am. Class Action Compl., *Freedom Watch, Inc. et al. v. Google, Inc. et al.*, No. 18-cv-2030 (D.D.C. Dec. 6, 2018), ECF No. 28 (hereinafter "Freedom Watch Am. Compl."). The court dismissed Loomer's complaint on the merits, concluding that Plaintiffs had "failed to state viable legal claims" against Twitter. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 37 (D.D.C. 2019). The D.C. Circuit affirmed that dismissal, 816 F. App'x 497 (D.C. Cir. 2020), and the Supreme Court denied certiorari, 141 S. Ct. 2466 (2021).

In *Illoominate Media v. CAIR*, Loomer sued Twitter and the Muslim-American advocacy group CAIR in Florida state court, alleging various claims in tort arising from Loomer's ban from Twitter. *Illoominate Media, Inc. v. CAIR Found.*, 2019 WL 13168767, at *3 (S.D. Fla. Nov. 19, 2019), *aff'd*, 841 F. App'x 132 (11th Cir. 2020). CAIR removed the case to federal court. Loomer never served Twitter, and voluntarily dismissed it from the case. The district court ultimately concluded as to the served defendants that her complaint was barred by Section 230 of the CDA and otherwise failed to state viable claims. *Id.* at *3.

## LEGAL STANDARD

***Failure to State a Claim.*** A complaint must be dismissed where the plaintiff fails to allege sufficient facts to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Mere "labels and conclusions" are insufficient to state a claim for relief, nor will a "formulaic recitation of the elements" suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a RICO plaintiff alleges claims premised on fraudulent predicate acts, she must satisfy the heightened pleading standard of Rule 9(b) by stating the circumstances of the fraud "with particularity[.]" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted). Amendment is futile when the plaintiff's complaint contains a legal deficiency that cannot be cured by additional factual pleadings. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

**Constitutional Standing.** "Article III standing requires that (1) the plaintiffs suffered an injury in fact, i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is '"fairly traceable" to the challenged conduct'; and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Doe v. Walmart Inc.*, 2019 WL 499754, at *8 (N.D. Cal. Feb. 8, 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Article III standing is essential to "the constitutional limitation of federal-court jurisdiction to actual cases or controversies," *Simon v. E. KY Welfare Rights Org.*, 426 U.S. 26, 37 (1976), and claims without constitutional standing must be dismissed pursuant to Rule 12(b)(1), *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing all three elements of constitutional standing. *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021).

## ARGUMENT

## I.   THE DOCTRINE OF RES JUDICATA BARS THIS ACTION.

Loomer's claims must be dismissed under the doctrine of res judicata because she previously sued Twitter in a different court for the same harm ostensibly claimed here—banning her from the platform—and lost. *See Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 2466 (2021). "In order for res judicata to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). All three requirements are met here.[6]

_____

[6] Because "any amended complaint that [Loomer] could bring would be [equally] barred by the application of res judicata," the Court should dismiss the Complaint without leave to amend. *See*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.     There Is an Identity of Claims Between This Case and the Prior *Freedom Watch* Case.

"Res judicata bars relitigation of all grounds of recovery that were asserted, *or could have been asserted*, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they *could* have been brought." *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) (emphasis added) (internal citations omitted); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (same).

A civil RICO claim is considered identical to claims brought in an earlier civil suit where "[t]he harm alleged" is "fundamentally the same" as the harms which were or "could have been raised" in the prior litigation. *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO,* 215 F.3d 923, 928 (9th Cir. 2000) (affirming dismissal of RICO claim where harms alleged were previously litigated); *see also* Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE § 30.A (5th ed. 2018) ("If the parties to a RICO action have previously litigated over the facts giving rise to the RICO claim, the prior litigation bars the subsequent RICO claim even if RICO was not invoked in the earlier action."). The test, in other words, is whether the new action "seeks redress for the same wrongs as alleged in" the earlier case. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 155 (9th Cir. 1989); *accord United States v. Gurley,* 43 F.3d 1188, 1196 (8th Cir. 1994); *see also Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010) ("The focus of our analysis is on the harm suffered.") (internal quotation marks omitted).

The harms Loomer alleges in this suit are identical to those Loomer alleged in her complaint in *Freedom Watch*, which was dismissed on the merits. Here, Loomer alleges harm arising from her ban from social media, with additional consequential harms suffered as a result. *See* Compl. ¶¶ 243–44.[7] This is the same harm she alleged in *Freedom Watch*. *Compare* Freedom

---

*Conway v. Geithner*, 2012 WL 1657156, at *4 (N.D. Cal. May 10, 2012); *see also Davis v. Cnty. of Maui*, 454 F. App'x 582, 583 (9th Cir. 2011) (same).

[7] Loomer actually attributes these harms only to Facebook's actions and does not mention any specific harms that Twitter caused her. This failure to attribute harm to Twitter makes clear that

Watch Am. Compl. ¶ 81 ("As a direct and proximate result of Defendants' illegal discriminatory conduct . . . Ms. Loomer has and will continue to suffer severe financial injury, as the loss of her over 260,000 Twitter followers and Facebook account will prevent her from reaching her audience with her investigative work."), *with* Compl. ¶ 243 ("Ms. Loomer has suffered significant and continuing damages . . . in the form of reputational damage, lost employment opportunities . . . and lost future profits.").[8] The fact that Loomer did not attempt to plead a civil RICO claim arising from her Twitter ban in *Freedom Watch* is immaterial. She cannot evade her prior dismissal for the same alleged harm by simply pleading a new legal theory in a new court—this is the very type of inefficiency and unfairness the doctrine of res judicata is meant to prohibit. *See McClain v. Apodaca,* 793 F.2d 1031, 1034 (9th Cir. 1986) ("[Plaintiff] cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in his prior action or by pleading a new legal theory."); *Intermedics, Inc. v. Ventritex, Inc.*, 804 F. Supp. 35, 43 (N.D. Cal. 1992) ("A primary purpose of the doctrine of res judicata . . . is to prevent parties (as well as courts) from suffering the unreasonable expense of repetitive litigation by pressuring litigants to consolidate into one proceeding as many contemporaneously knowable and reasonably related predicates for relief as possible."). Otherwise, Loomer could simply continue to file seriatim lawsuits, each claiming a new cause of action for the same alleged harm. Because Loomer could have raised her civil RICO claims in her prior failed action against Twitter for the same harm, she is barred from doing so here.

That Twitter's ban remained in place after Loomer's victory in the 2020 congressional primary is irrelevant to the analysis. "Simply identifying continuing harm from the same conduct is insufficient to overcome res judicata." *Deville v. Specialized Loan Servicing, LLC*, 2020 WL 7861974, at *6 (C.D. Cal. Nov. 20, 2020) (quoting *N. Cal. River Watch v. Humboldt Petroleum, Inc.*, 162 F. App'x 760, 763 (9th Cir. 2006)) (formatting modified), *aff'd,* No. 20-56328, 2022 WL

---

Loomer has alleged no injury–in–fact and that she lacks constitutional standing to press any claims against Twitter—an independent basis for dismissal. *See Lujan*, 504 U.S. at 560; *see also infra* at Part II.A. But only for purposes of determining the identity of claims in this *res judicata* analysis, Twitter is considering the harm that Loomer attributes to Facebook: her ban from the platform.

[8] *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state court decision and related filed briefs for purposes of determining prior judgment's preclusive effect).

259939 (9th Cir. Jan. 27, 2022); *see also N. Cal. River Watch v. Redwood Oil Co.*, 2008 WL 4601016, at *4 (N.D. Cal. Oct. 15, 2008) ("To defeat a claim preclusion defense, the new wrong cannot be related in origin to the [pre-judgment] violations."). Loomer's complaint is simply one of continuing harm: Twitter banned her from the platform in 2018, and that ban continued in 2020. It cannot be the law that a defendant is subject to permanent potential liability for conduct that a plaintiff has already unsuccessfully challenged in a prior case. Otherwise, Loomer would be able to bring identical lawsuits forever, deeming herself injured anew each day by the persistence of the status quo—an absurd result. *See Silva v. Yosemite Cmty. Coll. Dist.*, 2019 WL 6878237, at *7 (E.D. Cal. Dec. 17, 2019) (where "new" allegations "merely comprise the same course of conduct in previously litigated claims, application of res judicata is proper").

**B.      There Was a Final Judgment on the Merits in *Freedom Watch*.**

Judge McFadden dismissed Loomer's complaint in *Freedom Watch* on the merits pursuant to Rule 12(b)(6). 368 F. Supp. 3d at 41. "Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (quoting *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 399 n.3 (1981)).

**C.      There Is Privity Between the Parties in This Case and in the *Freedom Watch* Case.**

"Privity between parties exists when the parties in both actions are identical or substantially identical, 'that is, when there is sufficient commonality of interest.'" *Aquino v. Cal. Reconveyance Co.*, 2014 WL 5494446, at *4 (N.D. Cal. Oct. 30, 2014) (quoting *Tahoe-Sierra,* 322 F.3d at 1077). Here, Loomer was the plaintiff in Freedom Watch and Twitter was a defendant. Loomer is the plaintiff in this case and Twitter is a defendant. That is privity between the parties.

While Dorsey was not a defendant in *Freedom Watch*, as Twitter's CEO, he was in privity with Twitter in that action. *See* Freedom Watch Am. Compl. ¶ 50 (Dorsey was Twitter's chief executive). A corporate officer is in privity with his company in an earlier litigation that (1) concerned the same alleged corporate activities as the new suit and that (2) "relate[d] to actions taken in [his] official, rather than [his] individual, capacit[y]." *Pedrina v. Chun*, 97 F.3d 1296,

1302 (9th Cir. 1996). Both conditions are satisfied here. Loomer seeks redress for the same harm as in her previous suit, *see* Part I.A, *supra*, and she mentions Dorsey only in his capacity as Twitter's CEO, *see* Compl. ¶¶ 9, 40, 84, 131, 311–12; *accord Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) ("A director's close relationship with the corporation will generally establish privity."). Because Dorsey and Twitter were in privity in *Freedom Watch*, he may invoke res judicata to bar Loomer's suit against him here. *See Pedrina*, 97 F.3d at 1302.

The fact that Loomer purports to pursue this action, in part, "in her capacity as a candidate for Congress" and by her campaign committee does not help her evade the preclusive effects of res judicata. As an initial matter, Loomer has no "official" capacity. Loomer is a private citizen who does not allege that she has ever held any public office. An individual who decides to seek political office does not suddenly create a separate juridical entity that can sue and be sued independent from herself. *See Darby v. Los Angeles Cnty.*, 2018 WL 6074555, at *4 (C.D. Cal. Aug. 6, 2018) (official capacity allegations are a "legal nullity" for private citizens who never worked for the government). Accordingly, Loomer sued in her personal capacity alone in this case and in *Freedom Watch*.

While Loomer's campaign committee did not participate in the *Freedom Watch* case, it stands in privity with Loomer in the prior case (as would Loomer's "official capacity," if that existed). "[P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases[.]" *Tahoe-Sierra*, 322 F.3d at 1081–82. "[F]ederal courts will bind a non-party whose interests were represented adequately by a party in the original suit," including "where the interests of the nonparty and party are so closely aligned as to be 'virtually representative[.]'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (internal quotation marks and citations omitted). Loomer, by definition, represented her campaign's interests in *Freedom Watch*, because a campaign committee has no purpose beyond advancing the interests of its candidate. Indeed, the Supreme Court has made clear that Loomer should not be able to avoid res judicata by subsequently naming a surrogate plaintiff, warning that "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008). On this point, *Fulani v. Bentsen*, 862 F. Supp. 1140 (S.D.N.Y. 1994), is

illustrative. There, Fulani—an independent candidate for President in the 1992 election—her running mate, and her campaign committee sued the Commission on Presidential Debates after it refused to allow her to participate in the debates. The problem for Fulani was that she had already sued the Commission in 1988 for the same harms and lost. The court held that Fulani was estopped from raising the same issues again in 1992.[9] Notably, though Fulani was a plaintiff in both the 1988 and 1992 cases, in 1992 she had a different running mate and a different campaign committee, which were thus parties only to the second case. This did not matter. The court found that the parties were in privity anyway (and the renewed claims barred), as "[w]hile Fulani's running mate and campaign committee may have varied between the 1988 and 1992 elections, Fulani herself was primarily responsible for the initiation and continuation of both lawsuits." *Id.* at 1148. The situation here parallels *Fulani*, which means there is privity between the parties in this case and *Freedom Watch*.

In sum, because every element of the doctrine of res judicata is met, Loomer is barred from relitigating the same alleged harm, and her Complaint should be dismissed with prejudice.

## II.     THE COMPLAINT FAILS TO STATE A RICO CLAIM.

To state a RICO claim of any kind, Plaintiffs must first satisfy RICO's statutory standing provisions, which "require them to plausibly allege an injury to 'business or property' that is proximately caused 'by reason of a violation of section 1962.'" *Metaxas v. Lee*, 503 F. Supp. 3d 923, 935 (N.D. Cal. 2020); *see also Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (same). Then, to state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts"). *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005); *see also* § 1962(c).

The four elements under Section 1962(c) "must be established as to each individual defendant." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594, at *10 (N.D. Cal. Oct. 30, 2017) (citation omitted); *see also Eclectic Props. E., LLC v.*

---

[9] While *Fulani* concerned collateral estoppel rather than res judicata, the standard for privity is the same for both. *Mauro v. Fed. Exp. Corp.*, 2009 WL 1905036, at *4 (C.D. Cal. June 18, 2009) (citing *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008)).

1   *Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014); *United States v. Persico*, 832 F.2d

2   705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering

3   engaged in by a defendant, rather than the collective activities of the members of the enterprise.").

4   Because Loomer fails to establish these elements as to the Twitter Defendants, her RICO claim

5   must be dismissed.

6       **A.      Loomer Lacks Standing to Sue Twitter for the Alleged RICO Violations.**

7           As a threshold matter, Loomer lacks standing under the civil RICO statute to bring this

8   suit. To have statutory standing, a civil RICO plaintiff must show that her harm "was *'by reason*

9   *of'* the RICO violation, which requires the plaintiff to establish proximate causation," and that her

10  alleged harm "qualifies as injury to [her] business or property[.]" *Canyon Cnty.*, 519 F.3d at 972

11  (emphasis added) (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). This is "an

12  even more rigorous standing requirement than Article III." *Chaney v. Berkshire Hathaway Auto.*,

13  2017 WL 6520662, at *5 n.4 (D. Ariz. Sept. 25, 2017). Loomer cannot make either of these

14  mandatory showings.

15          As an initial matter, Loomer cannot establish that any harm she suffered was "by reason

16  of" the RICO violations alleged. RICO imposes a heightened causation standard that requires a

17  showing of both proximate and but-for causation. This means that the statute "demand[s] . . . some

18  direct relation between the injury asserted and the injurious conduct alleged." *Painters & Allied*

19  *Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1249 (9th

20  Cir. 2019) (*quoting Holmes,* 503 U.S. at 268). Indeed, "the central question [a court] must ask is

21  whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply*

22  *Corp.*, 547 U.S. 451, 461 (2006); *see also Sedima v. Imrex Co.*, 473 U.S. 479, 497 (1985) ("[T]he

23  compensable injury necessarily is the harm caused by predicate acts sufficiently related to

24  constitute a pattern, for the essence of the violation is the commission of those acts in connection

25  with the conduct of an enterprise."). Loomer cannot satisfy this standard because neither of the

26  predicate acts she attempts to allege against Twitter (assistance to terrorist organizations and

27  advocacy for the overthrow of the government, ¶¶ 288–300 & 301–12) directly gave rise to her

28

injuries (removal from Twitter and subsequent reputational and consequential harms).[10] Because Loomer does not allege any way in which the Twitter Defendants' alleged RICO conduct harmed her, the Complaint must be dismissed.

Loomer not only fails to meet the causation requirement (which proves fatal), but she also fails to allege a concrete financial injury to her business or property that is cognizable under Section 1964(c) (which independently proves fatal). "[I]t is well-established that not all injuries are compensable under [the civil RICO statute]. . . . [A] showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (citation omitted); *see also Canyon Cnty.*, 519 F.3d at 975. Loomer alleges that, as an individual, she suffered "reputational damage, lost employment opportunities due to employers' fear of being similarly banned for mere association per Defendants' policies, and lost future profits," Compl. ¶ 243, and that her candidacy for Congress suffered "reputational damage, deprivation of equal access to voters and campaign donations, and the loss of votes in a federal election," *id.* ¶ 244. These "speculative and amorphous" damages are not available in a civil RICO suit. *E.g.*, *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006) ("[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous."); *see also Holloway v. Clackamas River Water*, 2015 WL 13678932, at *7 (D. Or. Oct. 2, 2015) ("[I]njury to reputation [is] not compensable injur[y] under RICO's requirement of a concrete harm to the plaintiff's business or property interest." (citing *Bowen v. Olstead*, 125 F.3d 800, 806 (9th Cir. 1997)).

The Complaint does not even clear the lower threshold for Article III standing. To establish constitutional standing, Loomer must demonstrate (*inter alia*) that she suffered an injury in fact that is "fairly traceable" to the conduct challenged in this case. *Lujan*, 504 U.S. at 560. But the

[10] Loomer has no standing to sue the Twitter Defendants for the alleged predicate acts of extortion, transportation in aid of racketeering, or wire fraud or honest services fraud not only because none of these acts gave rise to her Twitter ban and related harms, but also because she does not allege that Twitter participated in any of these acts in any way. *See* Compl. ¶¶ 256–57, 259–61 (extortion allegations against Facebook and Google); *id.* ¶¶ 262–70 (transportation in aid of racketeering allegations against Facebook); *id.* ¶¶ 274–87 (wire fraud or honest services fraud allegations against Facebook); *see* also Part II.C.3, *infra*.

injury Loomer alleges the Twitter Defendants caused her is not "fairly traceable" to the predicate acts she alleges to support her civil RICO claim against them. "There must be a link" between the Twitter Defendants' challenged conduct and Loomer's injury. *Smith v. Block*, 784 F.2d 993, 995 (9th Cir. 1986). For the reasons already explained above, however, there is no link between Twitter's alleged provision of material support to terrorists and conspiracy to overthrow the government, on the one hand, and the consequential injuries Loomer allegedly suffered from the deprivation of her Twitter account on the other. S*ee also Abdulaziz v. Twitter, Inc.*, 2020 WL 6947929, at *6 (N.D. Cal. Aug. 12, 2020) (Beeler, M.J.) (no Article III standing based on similar failure to plead causation). And she provides no basis at all to infer that *Dorsey* personally participated in any activities described in the Complaint—whether they had anything to do with her (*e.g.*, her removal from Twitter) or not (*i.e.*, the putative RICO predicate acts)—much less any injury "fairly traceable" to Dorsey's personal actions.

As it did in *Abdulaziz*, the Court should grant the Twitter Defendants' motion to dismiss both because Plaintiffs fail to state a claim pursuant to Rule 12(b)(6)—here, because they have not established statutory standing—and because Plaintiffs lack constitutional standing pursuant to Rule 12(b)(1). *See id.* at *6–7.

**B.**     **Loomer Fails to Allege a Cognizable Association-in-Fact Enterprise.**

Separate from the Complaint's standing infirmities, Loomer fails in multiple ways to sufficiently plead a RICO claim. To make out the essential "enterprise" element of a Section 1962(c) claim, Loomer must plead an association-in-fact enterprise with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Complaint does not plausibly allege that the Twitter Defendants associated with *anyone* in the putative enterprise, for any reason, for any length of time.

Loomer references a so-called "Community Media Enterprise" made up of Facebook, Twitter, their respective CEOs, YouTube, Google, possibly Procter & Gamble, and unnamed others. *See, e.g.*, Compl. ¶¶ 30, 332, 366. But the Complaint lacks any plausible allegation that the Twitter Defendants (or anyone else named as a member of that enterprise) had any relationship,

TWITTER & DORSEY'S MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:22-cv-02646-LB

association, or even *contact* with the other putative members. It thus does not and cannot allege what RICO requires: "that these alleged associates functioned as a unit, as opposed to a collection of unrelated individuals." *Hunt v. Zuffa, LLC*, No. 19-17529, 2021 WL 4355728, at *2 (9th Cir. Sept. 24, 2021).

Nor does Loomer allege that the Twitter Defendants or any other member of the putative enterprise knew the purpose and "general nature of the enterprise and . . . that the enterprise extend[ed] beyond [its] individual role." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). Plaintiffs must "allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period," as otherwise, "the RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless of whether there is even a hint of the collaboration necessary to trigger liability." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70 (3d Cir. 2010) (cited with approval in *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *10 n.15 (C.D. Cal. June 29, 2012)) (internal quotation marks and citations omitted); *see also Boyle*, 556 U.S. at 947 n.4 (that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates" does not by itself show an enterprise existed and the defendants worked on its behalf). Loomer's allegations that Twitter moderated the content on its platform, and that the other defendants engaged in similar conduct on their own platforms, do not plausibly allege an enterprise.

Loomer thus has failed to allege the central element of a RICO claim—the existence of a racketeering enterprise—and her RICO claim must therefore be dismissed. *See Hunt*, 2021 WL 4355728, at *2 (affirming dismissal of RICO claim where plaintiff failed to allege an enterprise).

## C. Loomer Fails to Allege That the Twitter Defendants "Conducted" Any Enterprise.

The Complaint similarly cannot establish that the Twitter Defendants *conducted* any RICO enterprise because it does not plausibly allege that the Twitter Defendants' alleged activities were part of a coordinated effort with Facebook, Google, or anyone else. "Simply naming a string of defendants," as the Complaint does here, "does not allege an enterprise"—much less that the listed

1    entities conducted one together. *Salazar v. Hoefel*, 2005 WL 8156291, at *4 (C.D. Cal. Feb. 25,

2    2005); *accord Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646 (7th Cir. 1995) (same).

3         A civil RICO claim requires allegations that not only show an enterprise existed, but also

4    demonstrate that each defendant "conduct[ed] or participate[d], directly or indirectly, in the

5    conduct of" the RICO enterprise's affairs. 18 U.S.C. § 1962(c). "In order to 'participate, directly

6    or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing

7    those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The Complaint does not allege

8    that the Twitter Defendants did anything other than direct Twitter's *own* affairs by moderating

9    content on and access to its platform. Such actions do not constitute the "conduct[]" of an

10   enterprise. *Oxford St. Props., LLC v. Robbins*, 2011 WL 13214282, at *7 (C.D. Cal. Feb. 24, 2011).

11        Even if Twitter's moderation of its platform was illegal (and it certainly is not), Loomer

12   does not allege Twitter or Dorsey coordinated the moderation of its platform with any other

13   participant in the putative conspiracy. "RICO does not penalize parallel, uncoordinated" acts.

14   *Gilbert v. MoneyMutual, LLC*, 2018 WL 8186605, at *13 (N.D. Cal. Oct. 30, 2018) (quoting

15   *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,

16   719 F.3d 849, 855 (7th Cir. 2013)). As in *United Food*, Loomer does not allege that defendants

17   "involved themselves in the affairs of the other" defendants. 719 F.3d at 854. Rather, "the activities

18   the complaint describes are entirely consistent with . . . each going about its own business," *see id.*

19   at 854–55, the exact antithesis of conducting or directing the affairs of the enterprise. *See also In*

20   *re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 609 (N.D. Cal.

21   2020) (dismissing RICO complaint for want of allegations that defendants "specifically conducted

22   the affairs of [a] distinct Enterprise" as opposed to affairs of their own business). This is especially

23   true as to Dorsey, who is not alleged to have conducted the operations of any enterprise besides

24   Twitter. *See id.* Since Loomer fails to plead the essential conduct element of § 1962(c), the

25   Complaint must be dismissed.

26        **D.    Loomer Fails to Allege a Pattern of Racketeering Activity.**

27        To show a "pattern" of racketeering activity, Loomer must demonstrate that the alleged

28   predicate acts were sufficiently related to one another and continuous. *H.J. Inc. v. Nw. Bell Tel.*

*Co.*, 492 U.S. 229, 239 (1989). And because she alleges that the defendants engaged in an enterprise with "open-ended continuity," Compl. ¶ 336, she must allege "a form of predicate misconduct that by its nature projects into the future with a threat of repetition." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (internal quotation marks and citations omitted).

But Loomer does not allege that any of the supposed racketeering predicates were related to one another—there is no thread in the Complaint connecting the Twitter Defendants' supposed purpose in materially supporting terrorism to their purpose in putatively seeking to overthrow the government. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (racketeering acts are not related when "[t]he purpose, result, victim and method" are different from one another). Nor does she show a pattern that naturally continues into the future. The Complaint incorporates facts demonstrating that Twitter changed its policy relating to foreign terrorist organizations years ago, Compl. ¶ 296 n.252, so there is no threat of continuing relevant activity as to the alleged Section 2339B predicate. *See Turner*, 362 F.3d at 1230 (no open-ended continuity when relevant activity had ended) (collecting cases). And the Complaint does not contain any allegation suggesting that Twitter's supposed efforts to overthrow the American government—which, as explained in Part I.C.1, *infra*, is not even a predicate act under the RICO statute—either "specifically threaten[s]" to be repeated or constitutes Twitter's "regular way of doing business." *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). None of the other predicates can establish a pattern as to the Twitter Defendants because Loomer does not allege that the Twitter Defendants committed any of them. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *9 (N.D. Cal. Mar. 5, 2012) ("The pattern requirement must be satisfied as to each defendant individually."), *aff'd*, 751 F.3d 990 (9th Cir. 2014); *see* Part I.C.2, *infra*.

Because the Complaint does not plausibly allege a pattern of racketeering activity, it does not state a RICO claim and should be dismissed. *Turner*, 362 F.3d at 1231.

### E.    Loomer Fails to Sufficiently Allege Racketeering Activity.

"A plaintiff alleging a RICO violation also must allege the essential elements of each predicate act of racketeering activity." *Mazur v. eBay Inc.*, 2008 WL 2951351, at *2 n.2 (N.D. Cal. July 25, 2008); *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 n.10 (N.D.

Cal. 2011); *see also Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027–28 (8th Cir. 2008) ("The requirements of § 1962(c) must be established as to each individual defendant," and "[t]he focus of § 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise.") (internal citations and quotation marks omitted). Each predicate act must be supported by specific factual allegations from which the Court could find a plausible claim for relief, *Yagman v. Wunderlich*, 2021 WL 6804219, at *5 (C.D. Cal. Oct. 4, 2021) (quoting *Iqbal*, 556 U.S. at 679), and for those predicate acts sounding in fraud, Loomer must satisfy the heightened pleading standards of Rule 9(b), *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). The Complaint lacks specific factual allegations to show that the Twitter Defendants committed the predicate acts, under the heightened pleading standards for fraud or otherwise.

### 1.    Loomer's Allegations About Twitter Do Not Establish a Predicate Act.

The Complaint alleges that Twitter advocated for the overthrow of the government of the United States in violation of the Smith Act, 18 U.S.C. § 2385. Compl. ¶¶ 301–12. But the Smith Act is not a statutorily defined RICO predicate. The only cognizable predicate acts under RICO are those listed in 18 U.S.C. § 1961(1), which defines "racketeering activity." *Murillo-Prado v. Holder*, 735 F.3d 1152, 1156 (9th Cir. 2013) (statutory definition is exhaustive). Section 2385 is not listed in that provision, and thus cannot give rise to a RICO claim.

Even if violating the Smith Act were a racketeering predicate, the Complaint does not allege a violation. A person can be held liable for advocating for overthrowing the government only by "force or violence" or "assassination of any officer of any such government." § 2385. This must take the form of affirmative "advocacy of concrete violent action," and such advocacy must be likely to incite or produce such "imminent lawless action." *United States v. Rahman*, 189 F.3d 88, 115 (2d Cir. 1999) (first citing *Yates v. United States*, 354 U.S. 298, 318 (1957); and then quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). The Complaint does not contain a single allegation that the Twitter Defendants ever advocated for concrete violent action to overthrow the United States government—much less that Twitter's actions were likely to foment an *imminent rebellion*. *See* Compl. ¶¶ 303, 307, 309, 311–12 (alleging generally that former President Trump

accused Twitter of interfering with the 2020 election, that former President Trump was banned from Twitter on January 8, 2021 due to risk of further incitement of violence after the violent storming of the U.S. Capitol on January 6, 2021, and that a congressman had previously sent Twitter a letter relating to Taliban Twitter accounts).

The only other predicate act that Loomer alleges as to Twitter is material support for terrorism in violation of 18 U.S.C. § 2339B, which also fails. Not only is Loomer's reliance on Section 2339B foreclosed by Section 230 (*see* Part III, *infra*) and Loomer's lack of standing (*see* Part II.A, *supra*), but it fails on First Amendment grounds as well. *See* § 2339B(i) ("Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment[.]"); *O'Handley v. Padilla*, 2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022) ("Like a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment.") (collecting cases). Further, Loomer's Section 2339B factual allegations are deficient. Most of them concern the Taliban (Compl. ¶¶ 297–300), which she concedes is not a "designated foreign terrorist organization" as required by Section 2339B(a)(1) (Compl. ¶ 297). And Loomer herself cites a source noting that when Twitter identifies an account affiliated with Hamas or Hezbollah, Twitter's policy is to terminate that account. Compl. ¶ 296 n.252.

Because the Complaint does not plausibly allege that Twitter violated either statute (one of which is not even a RICO predicate) it does not state a viable RICO claim. *See Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020).

### 2.   Loomer Does Not Allege That Twitter Played Any Part in Any Transportation in Aid of Racketeering, Wire Fraud, or Extortion.

The Complaint does not allege that the Twitter Defendants participated in the predicate acts of transportation in aid of racketeering, wire fraud, or extortion. *See* Compl. ¶¶ 245–87. The Twitter Defendants thus cannot be liable for those acts.

Loomer does not even mention the Twitter Defendants in describing the transportation in aid of racketeering and wire fraud predicate acts. Compl. ¶¶ 262–87. For this reason alone, these allegations cannot form the basis of the Twitter Defendants' liability. *See, e.g.*, *Keys v. Pearson*

*Affiliated, Inc.*, 2013 WL 12205581, at *3 (C.D. Cal. May 14, 2013) (dismissing RICO claims against defendants where allegations of predicate acts "fail[ed] to mention" those defendants); *Rouse v. Rouse*, 1990 WL 160194, at *5 (N.D.N.Y. Oct. 17, 1990) (same). Allegations which do not mention Twitter cannot suffice to demonstrate that Twitter used "the mail or any facility in interstate or foreign commerce" to carry out any "unlawful activity," and thus cannot show that Twitter engaged in transportation in aid of racketeering in violation of 18 U.S.C. § 1952. *See United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019). And they certainly cannot demonstrate that Twitter committed any acts of wire fraud at the heightened level of specificity demanded by Federal Rule of Civil Procedure 9(b). *See Mostowfi v. I2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) ("[G]eneral statements about actions committed by the defendants that fail to identify the 'who, what, when, where and how' of the misconduct charged" do not satisfy Rule 9(b).); *Lancaster Cmty. Hosp.*, 940 F.2d at 405 (RICO plaintiff must detail "the role of each defendant in each [fraudulent] scheme."). Even setting aside Rule 9(b)'s heightened pleading standard, a plaintiff must fundamentally allege a "scheme to defraud" which includes an "affirmative, material misrepresentation." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010). The Complaint contains no plausible allegations of any affirmative, material misrepresentations by anyone—let alone by the Twitter Defendants.

Moreover, the Complaint's allegations focus on honest services fraud. *See* Compl. ¶¶ 272–75. But that predicate cannot give rise to RICO standing, *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001), and it also requires a "scheme[] to deprive another of honest services through bribes or kickbacks supplied by a third party who ha[s] not been deceived[,]" *Skilling v. United States*, 561 U.S. 358, 404 (2010), which the Complaint does not allege the Twitter Defendants (or anyone else) perpetuated.

As to the extortion predicate, Loomer only mentions Twitter in referencing (a) Twitter's right to moderate its platform, and (b) its account verification process. Compl. ¶¶ 246–51. Loomer does not allege that Twitter obtained any of her property, nor that Twitter used force, violence or fear to do so—"wrongful[ly]" or otherwise. The Hobbs Act, 18 U.S.C. § 1951(b)(2), requires that Loomer allege each of these elements. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404

(2003); *United States v. Enmons*, 410 U.S. 396, 400 (1973) (the statutory term "wrongful" limits the application of the Hobbs Act to "instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property"). In short, there is no allegation that Twitter or Dorsey committed any extortion predicate act.

For all of these reasons, Loomer fails to state a claim under 18 U.S.C. § 1962(c).

### 3. Loomer Does Not Allege That Dorsey Played Any Part in Any Alleged Predicate Act.

The Complaint does not attempt, even in the most conclusory terms, to allege that any conduct on Dorsey's part constituted a RICO predicate act. In the 68 paragraphs (¶¶ 245–312) that purport to describe predicate acts, Dorsey's name appears only twice, and only as the addressee of a letter from a member of Congress complaining about Twitter. *See* Compl. ¶¶ 311–12. The failure to allege any act on Dorsey's part is fatal to Loomer's attempt to state a claim against him.

### F. Loomer Does Not State a Section 1962(d) Conspiracy Claim.

Loomer brings a second tag-along count alleging a RICO conspiracy. Compl. ¶¶ 363–69; *see* 18 U.S.C. § 1962(d). But "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of" Section 1962(c). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Because Loomer has not stated a Section 1962(c) claim for all the reasons explained above, her pendent Section 1962(d) claim necessarily fails.

The Complaint also independently fails to allege a RICO conspiracy claim. A defendant can be found liable for conspiring to violate RICO only where it is demonstrated that the defendant knowingly and personally "agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004). Loomer does not allege that the Twitter Defendants agreed to do anything with anyone, much less that such agreement included a scheme to operate or manage a RICO enterprise. And as explained above, Loomer was not injured by any of the alleged predicate acts, *see* Part II.A, *supra*, which is a necessary element of a RICO conspiracy claim. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 295 (9th Cir. 1990). Therefore, the Complaint's RICO conspiracy claim also fails.

1    **III.    SECTION 230 OF THE CDA BARS LOOMER'S COMPLAINT.**

2           The Complaint must be dismissed with prejudice because it is an attempt to hold Twitter,

3    an interactive computer service provider, and its former CEO liable for Twitter's decisions

4    concerning the removal of third-party content posted on Twitter's platform. Under well-

5    established precedent, Section 230(c)(1) of the CDA bars all such claims. *Roommates*, 521 F.3d at

6    1170–71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that

7    third parties seek to post online is perforce immune under section 230.").

8           District courts may (and routinely do) grant Rule 12(b)(6) motions on Section 230

9    immunity grounds and need not wait for that defense to be raised at summary judgment. *See Dyroff

10   v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096–97 (9th Cir. 2019). "[C]ourts aim to resolve

11   the question of § 230 immunity at the earliest possible stage of the case so that defendants entitled

12   to § 230 immunity are saved from having to fight costly and protracted legal battles." *Morton v.

13   Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) (quoting *Nemet Chevrolet, Ltd.

14   v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254–55 (4th Cir. 2009)) (internal quotation marks

15   omitted). Indeed, Section 230 was "inten[ded] to promote active screening by service providers of

16   online content provided by others" and prevent "regulation compelled at the sword point of tort

17   liability." *Barrett v. Rosenthal*, 146 P.3d 510, 522–23 (Cal. 2006). Courts thus routinely dismiss

18   claims under Section 230 with prejudice. *See, e.g.*, *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at

19   *3 (N.D. Cal. June 18, 2019); *Morton*, 2021 WL 1181753, at *6; *Lewis v. Google LLC*, 461 F.

20   Supp. 3d 938, 963 (N.D. Cal. 2020), *aff'd,* 851 F. App'x 723 (9th Cir. 2021).

21          Section 230(c)(1) of the CDA "protects from liability (1) a provider or user of an interactive

22   computer service (2) whom a plaintiff seeks to treat. . . as a publisher or speaker (3) of information

23   provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (citation omitted);

24   *see* 47 U.S.C. § 230(c)(1) (providing that "[n]o provider or user of an interactive computer service

25   shall be treated as the publisher or speaker of any information provided by another information

26   content provider."). All three prongs are met here, and the claims at issue thus fall squarely within

27   this definition.

28

On Section 230(c)(1)'s first prong, Twitter is a provider of an interactive computer service. As the Ninth Circuit has held, "[t]he prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). This aptly describes Twitter, a website where account holders post content and engage with the content of other account holders. Courts in this circuit have thus repeatedly found that Twitter is an "interactive computer service provider." *E.g.*, *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (dismissing plaintiff's claim against Twitter with prejudice pursuant to § 230(c)(1)); *Dehen v. Does 1-100*, 2018 WL 4502336, at *3 (S.D. Cal. Sept. 19, 2018) (same); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1120–22 (N.D. Cal. 2016) (same), *aff'd*, 881 F.3d 739 (9th Cir. 2018).

With regard to Section 230(c)(1)'s second and third prongs, Loomer's Complaint seeks to treat Twitter as a publisher of information provided by another information content provider, and the claim is thus barred. A plaintiff treats the defendant as a publisher when it attempts to hold a defendant liable for "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Gonzalez v. Google LLC*, 2 F.4th 871, 892 (9th Cir. 2021). Here, Loomer's RICO allegations against Twitter all target Twitter for actions it took as a publisher in determining which individuals (and the content they produce) are allowed to remain on its platform. The only allegations involving both Twitter and Loomer concern Twitter's decisions about whether to exclude third-party content from its platform—namely, its decision to ban Loomer from the platform for posting hateful content. *See* Compl. ¶¶ 210, 240. And the only allegations Loomer says constitute racketeering activity—which Loomer has no standing to pursue because they caused her no injury, *see* Part II.A, *supra*—exclusively concern Twitter's moderation of third-party content.[11]

---

[11] *See id.* ¶¶ 30, 88–91, 94, 163–68, 172, 179, 180–186, 193–95, 197, 202, 204, 207–08, 294, 299–300 (allegations about Twitter's moderation of content on platform); *id.* ¶¶ 50, 52–53, 61–63, 71–72, 76, 81, 86, 93, 109, 199–200, 246, 250 (allegations about Twitter's adoption of content moderation policies); *id.* ¶¶ 40, 48, 51, 55, 59, 68, 84, 87, 95–96, 108, 130–31, 144–45, 296 (allegations about public statements from Twitter representatives regarding content moderation); *id.* ¶¶ 35, 54, 132–33, 201, 247–49, 251, 290, 298, 303, 307, 309, 311–12, 320, 326 (allegations

The Ninth Circuit and district courts in California have held time and again that Section 230(c)(1) bars suits like Loomer's, which seek to hold Twitter and other social media platforms liable for "activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *See Roommates*, 521 F.3d at 1170–71. These courts have consistently found that plaintiffs who, like Loomer, challenge their removal from social media platforms are in fact challenging decisions that Section 230 immunizes from review. *See, e.g.*:

- *Brittain*, 2019 WL 2423375, at *3 ("Twitter argues that Brittain's claims 'ultimately arise from Twitter's alleged decision to suspend' the Brittain Accounts and therefore seek to treat Twitter as a publisher under the CDA. . . .The Court agrees with Twitter.");

- *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (dismissing claims as precluded by 230(c)(1) where "Plaintiffs seek to hold Facebook liable for removing FAN's Facebook account, posts, and content");

- *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) ("[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher." (citation omitted)), *aff'd*, 697 F. App'x 526 (9th Cir. 2017);

- *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (social network's decision to delete some profiles but not others protected from liability by § 230(c)(1));

- *See also Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011) (platform's decision to delete some content but not others "immunized by § 230(c)(1)"), *aff'd,* 765 F.3d 1123 (9th Cir. 2014).

To the extent Loomer asserts that Twitter violated RICO by deciding not to remove certain third-party content or accounts, *see* Compl. ¶¶ 288–300, these decisions are similarly immune.[12]

---

about public statements from others regarding content on Twitter); *see also* ¶ 344 (concerning Twitter's alleged application of content moderation policies); *id.* ¶ 346 (concerning Twitter's alleged decision to remove third-party accounts from platform); *id.* ¶ 354 (concerning Twitter's alleged decision to allow some third-party users to post on platform); *id.* ¶¶ 356–58 (concerning Twitter's alleged decision to permit content on platform).

[12] Section 230(e)(1)'s exception for criminal conduct does not apply to civil actions brought under the RICO statute. *See Gonzalez*, 2 F.4th at 890 (collecting cases). No other statutory exception applies. *See* 47 U.S.C. § 230(e)(2)–(5) (irrelevant exceptions).

TWITTER & DORSEY'S MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:22-cv-02646-LB

*See, e.g., Gonzalez,* 2 F.4th at 891–92 (affirming dismissal, under § 230(c)(1), of claims against Google for failing to block or remove content from ISIS on YouTube); *Fields,* 200 F. Supp. 3d at 972 (plaintiffs' attempts to impose liability on Twitter for providing accounts to ISIS members were barred by § 230(c)(1) because they were based on "the decision to permit third parties to post content" through the provision of accounts); *Ripple Labs Inc. v. YouTube LLC,* 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) (Beeler, M.J.) (YouTube not liable under § 230(c)(1) for failing to remove third-party content); *accord Force v. Facebook, Inc.,* 934 F.3d 53, 65 (2d Cir. 2019) (Facebook immunized by § 230(c)(1) from Antiterrorism Act liability for hosting Hamas content).

Section 230(c)(1) therefore immunizes Twitter from liability for each of Loomer's allegations. Because Loomer's Complaint is premised entirely on Twitter's third-party content moderation decisions, it cannot be amended to avoid Section 230 and should be dismissed with prejudice. *See Fyk,* 2019 WL 11288576, at *3 ("[G]ranting leave to amend would be futile in this instance as Plaintiff's claims are barred" by § 230(c)(1)); *King v. Facebook, Inc.,* 572 F. Supp. 3d 776, ---, 2021 WL 5279823, at *10 (N.D. Cal. 2021) (same).

Finally, Section 230's protections apply equally to Twitter's CEO as a "provider" of Twitter's interactive computer service. § 230(c)(1); *Igbonwa v. Facebook, Inc.,* 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018) ("[W]here, as here, a plaintiff seeks to hold Zuckerberg liable only on the basis of Facebook's actions or inaction, he too is a provider of an interactive computer service for the purposes of the CDA."), *aff'd,* 786 F. App'x 104 (9th Cir. 2019); *accord Klayman v. Zuckerberg,* 753 F.3d 1354, 1358 (D.C. Cir. 2014). Because Loomer's allegations related to Dorsey exclusively concern Twitter's moderation decisions, *see* Compl. ¶¶ 40 & 84, Section 230 immunizes him from liability for all the reasons Twitter is immune.

## IV.   IN THE EVENT THE ENTIRE COMPLAINT IS NOT DISMISSED WITH PREJUDICE, THE COURT SHOULD DISMISS LOOMER'S CLAIM FOR PUNITIVE DAMAGES.

"The proper vehicle for challenging the sufficiency of a punitive damages claim is a motion to dismiss under Rule 12(b)(6)." *Oushana v. Lowe's Cos., Inc.,* 2017 WL 5070271, at *2 (E.D. Cal. Nov. 3, 2017). Loomer seeks $10 billion in punitive damages. Compl. at 132. This represents more than 94 percent of her total damages claims. Punitive damages are not available in RICO

cases. *See Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal. 1989) (dismissing claim for punitive damages because "[t]he civil remedy provision of RICO, 18 U.S.C. § 1964, provides for treble damages which are themselves punitive in character.").[13]

If, for any reason, Loomer's Complaint is not dismissed with prejudice for the multitude of reasons noted above, Loomer's claim for punitive damages should be dismissed with prejudice. Courts in this circuit routinely dismiss claims for damages that are not permitted under the statute giving rise to the cause of action.[14] *See, e.g.*, *Powell v. Wells Fargo Home Mortg.*, 2017 WL 2720182, at *7 (N.D. Cal. June 23, 2017), *aff'd,* 855 F. App'x 382 (9th Cir. 2021); *Fraser v. Mint Mobile, LLC*, 2022 WL 1240864, at *8 (N.D. Cal. Apr. 27, 2022).

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed as to the Twitter Defendants. Because the Complaint seeks redress for the same harms that gave rise to Loomer's prior failed litigation (and thus cannot be amended to avoid res judicata), and because it is premised entirely on Twitter's third-party content moderation decisions (and thus cannot be amended to avoid Section 230), the Court should dismiss it with prejudice.

---

[13] *See also Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1130 (9th Cir. 1997), *recognized as overruled on other grounds in Fernandez*, 388 F.3d at 1230; *accord Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 252–53 (D. Del. 1992) ("[P]unitive damages are not proper under RICO since the Act already provides for treble damages.").

[14] The Ninth Circuit has said that in most cases a defendant may not move to strike an improper damages claim under Rule 12(f). *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). It has instead suggested that such claims be dismissed pursuant to Rule 12(b)(6). *Id.* But *Whittlestone* did not involve a damages claim, like the one in this case, which was "redundant" of damages already claimed in the pleading—and Rule 12(f) expressly permits courts to strike "redundant" matters. *See* Fed. R. Civ. P. 12(f); *see also Sinibaldi*, 821 F. Supp. at 252–53 (punitive damages redundant of RICO treble damages). The Court thus may alternatively strike Loomer's punitive damages claim under Rule 12(f).

Dated:  August 8, 2022                              JENNER & BLOCK LLP

                                          By:  */s/ Reid J. Schar*
                                               Reid J. Schar (SBN 283948)
                                               455 Market Street, Suite 2100
                                               San Francisco, CA  94105-2453
                                               Tel:    +1 628 267 6800
                                               Fax:    +1 628 267 6859
                                               Email: RSchar@jenner.com

                                               Tassity S. Johnson
                                               (admitted *pro hac vice*)
                                               Samuel S. Ungar (SBN 318774)
                                               1099 New York Avenue NW, Suite 900
                                               Washington, DC  20001-4412
                                               Tel:    +1 202 639 6000
                                               Fax:    +1 202 639 6066
                                               Email: TJohnson@jenner.com
                                                      SUngar@jenner.com

                                               Alison I. Stein
                                               (admitted *pro hac vice*)
                                               JENNER & BLOCK LLP
                                               1155 Avenue of the Americas
                                               New York, NY  10036-2711
                                               Tel:    +1 212 891-1600
                                               Fax:    +1 212 891-1699
                                               Email: AStein@jenner.com

                                               *Attorneys for Defendants Twitter, Inc.
                                               and Jack Dorsey*