SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*
META PLATFORMS, INC. and
MARK ZUCKERBERG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAURA LOOMER, as an individual, LAURA LOOMER, in her capacity as a Candidate for United States Congress, and LAURA LOOMER FOR CONGRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., MARK ZUCKERBERG, in his capacity as CEO of Meta Platforms, Inc. and as an individual, TWITTER, INC., and JACK DORSEY, in his capacity as former CEO of Twitter, Inc. and as an individual, <br><br> Defendants. | Case No. 3:22-cv-02646-LB <br><br> **META PLATFORMS, INC. AND MARK ZUCKERBERG'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hon. Laurel Beeler <br> Courtroom B, 15th Floor <br> Date: September 15, 2022 <br> Time: 9:30 a.m. |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ...............................................................1

STATEMENT OF REQUESTED RELIEF .............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

BACKGROUND ...................................................................................................................3

     A.     Meta's Facebook And Content-Moderation Policies...............................3

     B.     Removal Of Loomer's Facebook Accounts For Violating Meta's Policies ...........4

     C.     Moderation Of Hate Speech By Other Social Media Websites...............................5

     D.     Loomer's Series of Meritless Lawsuits Based On The Same Events.....................6

ARGUMENT .........................................................................................................................7

I.     Loomer's Claims Are Barred By Res Judicata .....................................................7

II.     Loomer Has Not Stated A Civil RICO Claim .......................................................8

     A.     Loomer Has Not Pleaded A RICO Enterprise ........................................9

     B.     Loomer Has Not Pleaded A "Pattern" Of Racketeering Activity.........................12

     C.     Loomer Has Not Pleaded A Cognizable Injury Proximately Caused By The Alleged Predicate Acts........................................................................13

     D.     Loomer Has Not Pleaded Any Predicate Act ........................................15

          1.     Loomer Has Not Plausibly Alleged Wire Fraud........................15

          2.     Loomer Has Not Pleaded Extortion Under The Hobbs Or Travel Acts .................................................................................18

          3.     Loomer Has Not Pleaded Material Support Under The ATA .................20

          4.     Alleged Violations Of The Smith Act Are Not RICO Predicate Acts And Not Plausibly Pled ................................................21

III.     Loomer Has Not Stated A Claim For Rico Conspiracy....................................22

IV.     Section 230 Bars Loomer's Claims .......................................................23

V.     Dismissal Should Be With Prejudice ....................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

**CASES**

3

*Almanza v. United Airlines, Inc.*,
4            851 F.3d 1060 (11th Cir. 2017) ......................................................................................11

5      *Andrus v. Allard*,
6            444 U.S. 51 (1979)...........................................................................................................14

7      *Annulli v. Panikkar*,
            200 F.3d 189 (3d Cir. 1999), *abrogated on other grounds*, *Rotella v. Wood*,
8            528 U.S. 549 (2000)...........................................................................................................8

9      *Anza v. Ideal Steel Supply Co.*,
            547 U.S. 451 (2006)....................................................................................................14, 15
10

11     *Ashcroft v. Iqbal*,
            556 U.S. 662 (2009).........................................................................................................23
12

*Baldino's Lock & Key Service, Inc. v. Google, Inc.*,
13           88 F. Supp. 3d 543 (E.D. Va. 2015) ...............................................................................24

14     *Banks v. ACS Educ.*,
            638 F. App'x 587 (9th Cir. 2016) ....................................................................................22
15

16     *Barnes v. Yahoo!, Inc.*,
            570 F.3d 1096 (9th Cir. 2009) ...................................................................................24, 25

17     *Baumer v. Pachl*,
18           8 F.3d 1341 (9th Cir. 1993) .......................................................................................22, 23

19     *Bell Atl. Corp. v. Twombly*,
            550 U.S. 554 (2007)............................................................................................10, 22, 23
20

21     *Bowen v. Oistead*,
            125 F.3d 800 (9th Cir. 1997) ...........................................................................................13

22     *Boyle v. United States*,
23           556 U.S. 938 (2009).........................................................................................................10

24     *C&M Café v. Kinetic Farm, Inc.*,
            2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) ................................................................13
25

26     *Calise v. Meta Platforms, Inc.*,
            2022 WL 1240860 (N.D. Cal. Apr. 27, 2022) .................................................................23

27     *Canyon County v. Syngenta Seeds, Inc.*,
28           519 F.3d 969 (9th Cir. 2008) .....................................................................................13, 14

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................................3

*Chaset v. Fleer/Skybox Int'l LP*,
   300 F.3d 1083 (9th Cir. 2002) .............................................................................14

*Cobb v. JPMorgan Chase Bank, N.A.*,
   2013 WL 6201414 (N.D. Cal. Nov. 27, 2013) ....................................................19

*Costantini v. Trans World Airlines*,
   681 F.2d 1199 (9th Cir. 1982) ...............................................................................7

*Dennis v. United States*,
   341 U.S. 494 (1951).............................................................................................22

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) (en banc) ..........................................................13, 14

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015) ........................................................................10

*Dooley v. Crab Boat Owners Ass'n*,
   271 F. Supp. 2d 1207 (N.D. Cal. 2003) ...............................................................19

*Dyroff v. Ultimate Software Grp.*,
   934 F.3d 1093 (9th Cir. 2019) .............................................................................23

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..........................................................................10, 17

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) .............................................................................15

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods, Inc.*,
   411 F. Supp. 3d 905 (N.D. Cal. 2019) .................................................................25

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) (en banc) .........................................................23, 25

*Federal Agency of News LLC v. Facebook, Inc.*,
   395 F. Supp. 3d. 1295 (N.D. Cal. 2019).............................................................24

*Feng v. County of Santa Clara*,
   2019 WL 7194475 (N.D. Cal. Dec. 26, 2019) ....................................................13

*Ferrari v. Mercedes-Benz USA, LLC*,
   2016 WL 7188030 (N.D. Cal. Dec. 12, 2016)....................................................11

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018) ...............................................................................14

*Focus 15, LLC v. NICO Corp.*,
2022 WL 2355537 (N.D. Cal. June 30, 2022) ...................................................................18

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)......................................................................................3, 24

*Freedom Watch, Inc. v. Google, Inc.*,
368 F. Supp. 3d 30 (D.D.C. Mar. 14, 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020).....6

*Fyk v. Facebook, Inc.*,
2019 WL 11288576 (N.D. Cal. June 18, 2019), *aff'd*, 808 F. App'x 597
(9th Cir. 2020)........................................................................................................24, 25

*Fyk v. Facebook, Inc.*,
808 F. App'x 597 (9th Cir. 2020) ...................................................................................24

*Glaser v. Nationstar Mortg., LLC*,
2017 WL 1861850 (N.D. Cal. May 9, 2017) ...................................................................21

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)...............................................................................................12, 13

*Headwaters Inc. v. U.S. Forest Serv.*,
399 F.3d 1047 (9th Cir. 2005) .........................................................................................7

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010)............................................................................................................14

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010)............................................................................................................20

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992)........................................................................................................14

*Howard v. America Online Inc.*,
208 F.3d 741 (9th Cir. 2000) ...................................................................12, 13, 20, 22

*Hussein v. Dahabshiil Transfer Services Ltd.*,
230 F. Supp. 3d 167 (S.D.N.Y. 2017), *aff'd* 705 F. App'x 40 (2d Cir. 2017)...................21

*Icon Health & Fitness, Inc. v. ConsumerAffairs.com*,
2017 WL 2728413 (D. Utah June 23, 2017).................................................................24

*In re GlenFed, Inc. Securities Litigation*,
42 F.3d 1541 (9th Cir. 1994) (en banc) ..................................................................15, 16

*In re JUUL Labs, Inc., Marketing, Sales Practices, & Products Liability
Litigation*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ...............................................................11, 15, 16

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*,
    2019 WL 6749534 (N.D. Cal. Dec. 6, 2019) ............................................................13, 14

*In re Zoom Video Communications, Inc. Privacy Litigation*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..........................................................................3

*Kelly v. United States*,
    140 S. Ct. 1565 (2020) ...................................................................................................15

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .......................................................................................24

*King v. Facebook, Inc.*,
    2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ................................................................25

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .....................................................................................23

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .....................................................................................3, 4

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ..................................................................................18, 19

*Linares v. CitiMortgage, Inc.*,
    2015 WL 2088705 (N.D. Cal. May 5, 2015) ..................................................................9

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ...........................................................................................9

*Manchada v. Google*,
    2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016).................................................................24

*McCracken v. Wells Fargo Bank NA*,
    2017 WL 1428716 (N.D. Cal. Apr. 20, 2017) .................................................................21

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974)..........................................................................................................8

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1999) .........................................................................................8

*Monterey Plaza Hotel Ltd. v. Local 483*,
    215 F.3d 923 (9th Cir. 2000) ...............................................................................8, 17, 18

*National Organization for Women v. Scheidler*,
    510 U.S. 249 (1994)..........................................................................................................9

*Neibel v. Trans World Assurance Co.*,
  108 F.3d 1123 (9th Cir. 1997), *overruled on other grounds*, *United States
  v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004)........................................................9

*NetChoice, LLC v. Attorney General, Florida*,
  34 F.4th 1196 (11th Cir. 2022) ...........................................................................8

*Nguyen v. Chow*,
  2014 WL 12625960 (N.D. Cal. Sept. 19, 2014) ..................................................8

*O'Handley v. Padilla*,
  2022 WL 93625 (N.D. Cal. Jan. 10, 2022)..........................................................8

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) (en banc) .............................................................10

*Oscar v. University Students Co-operative Ass'n*,
  965 F.2d 783 (9th Cir. 1992), *abrogated on other grounds, Diaz v. Gates*, 420
  F.3d 897 (9th Cir. 2005) (en banc) .............................................................13, 14

*Pedrina v. Chun*,
  97 F.3d 1296, 1302 (9th Cir. 1996) .....................................................................8

*Price v. Pinnacle Brands*,
  138 F.3d 602 (5th Cir. 1998) (per curiam).........................................................14

*R.J. v. Cigna Behavioral Health, Inc.*,
  2021 WL 1110261 (N.D. Cal. Mar. 23, 2021).....................................................18

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)............................................................................................11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ...............................................................................6

*Rothman v. Vedder Park Management*,
  912 F.2d 315 (9th Cir. 1990) .............................................................................18

*Royce Int'l Broadcasting Corp. v. Field*,
  2000 WL 236434 (N.D. Cal. Feb. 23, 2000) .......................................................8

*Sanchez-Torres v. State*,
  322 So. 3d 15 (Fla. 2020)...................................................................................18

*Savage v. Council on American-Islamic Relations, Inc.*,
  2008 WL 2951281 (N.D. Cal. July 25, 2008).......................................................9

*Scheidler v. National Organization of Women, Inc.*,
  537 U.S. 393 (2003)......................................................................................19, 20

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..................................................................................21

*Sephery-Fard v. Select Portfolio Servicing, Inc.*,
    2015 WL 1063070 (N.D. Cal. Mar. 10, 2015)...........................................25

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ..................................................................12

*Sheperd v. American Honda Motor Co.*,
    822 F. Supp. 625 (N.D. Cal. 1993) ...........................................................14

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.
    2017) ...........................................................................................23, 24, 25

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    723 F. Supp. 2d 1205 (N.D. Cal. 2010) ....................................................21

*Sun Savings & Loan Ass'n v. Dierdorff*,
    825 F.2d 187 (9th Cir. 1987) ....................................................................13

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
    720 F. Supp. 805 (N.D. Cal. 1989) .............................................................9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ....................................................................15

*Taylor v. Sturgell*,
    553 U.S. 880, 895 (2008)............................................................................8

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
    445 F. Supp. 3d 139 (N.D. Cal. 2020) ........................................................3

*Titan Global LLC v. Organo Gold Int'l, Inc.*,
    2012 WL 6019285 (N.D. Cal. Dec. 2, 2012)..............................................16

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ..................................................................12

*United States v. Al Kassar*,
    660 F.3d 108 (2d Cir. 2011)......................................................................20

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ..............................................................10, 11

*United States v. Green*,
    592 F.3d 1057 (9th Cir. 2010) ..................................................................16

*United States v. Kozoil*,
    993 F.3d 1160 (9th Cir. 2021) ..................................................................19

*United States v. Lew*,
 875 F.2d 219 (9th Cir. 1989) ...........................................................................15

*United States v. McFall*,
 558 F.3d 951 (9th Cir. 2009) .......................................................................19, 20

*United States v. Miller*,
 953 F.3d 1095 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085 (2021)..............................17

*United States v. Turkette*,
 452 U.S. 576 (1981)........................................................................................10

*Vertkin v. Wells Fargo Home Mortgage*,
 2011 WL 175518 (N.D. Cal. Jan. 18, 2011) .............................................................10, 11

*Westchester County Independent Party v. Astorino*,
 137 F. Supp. 3d 586 (S.D.N.Y. 2015)...................................................................15

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) .............................................................................9

*Yates v. United States*,
 354 U.S. 298 (1957), *overruled on other grounds, Burks v. United States*, 437
 U.S. 1 (1978)..............................................................................................22

*Zimmerman v. Facebook, Inc.*,
 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020)..............................................................25

**DOCKETED CASES**

*Freedom Watch, Inc. et al. v. Google, Inc. et al.*, No. 1:18-cv-02030-TNM (D.D.C.) ...................6

*Loomer v. Facebook, Inc.*, No. 50-2020-CA-002352-XXXX-MB (Fla. 15th Cir. Ct.)...................6

*Loomer v. Facebook, Inc.*, No. 4:20-cv-03154-HSG (N.D. Cal.)....................................7

*Loomer v. Facebook, Inc.*, No. 9:20-cv-80484-DMM (S.D. Fla.)....................................6

*Loomer v. Facebook, Inc.*, No. 9:19-cv-80893-RS (S.D. Fla.)....................................6, 7

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C.
 § 1951(a) ...................................................................................................18
 § 1952(b)(i)(2) ..............................................................................................18
 § 1961(1).................................................................................................21, 22
 § 2339B................................................................................................20, 21
 § 2385........................................................................................................22

Fed R. Civ. P. 9(b) .....................................................................................15, 16

Fed R. Civ. P. 12(b)(6)..................................................................................................................1

**OTHER AUTHORITIES**

Birnbaum, *Twitter Takes Down Hamas, Hezbollah-Affiliated Accounts After Lawmaker Pressure*, The Hill (Nov. 4, 2019), https://thehill.com/policy/technology/468866-twitter-takes-down-hamas-hezbollah-affiliated-accounts-after-lawmaker ...................................................21

Bokhari, *Politicians Won't Be Allowed on Facebook If They've Previously Been Banned*, Breitbart (Nov. 14, 2019), https://www.breitbart.com/tech/2019/11/14/politicians-wont-be-allowed-on-facebook-if-theyve-previously-been-banned ...............................4, 5

Boyle, *Facebook's Updated Advertising Policy Could Enable Politicians To Spread Misinformation*, Newsweek (Oct. 3, 2019), https://www.newsweek.com/trump-biden-facebook-misleading-ads-1463054 ..........................................................16

Facebook, *Terms of Service*, https://www.facebook.com/legal/terms ....................................3, 4, 5

Frenkel & Hubbard, *After Social Media Bans, Militant Groups Found Ways to Remain*, N.Y. Times (Apr. 19, 2019), https://www.nytimes.com/2019/04/19/technology/terrorist-groups-social-media.html..................................................................................21

Hern, *Facebook Exempts Political Ads From Ban On Making False Claims*, Guardian (Oct. 4, 2019), https://www.theguardian.com/technology/2019/oct/04/facebook-exempts-political-ads-ban-making-false-claims ............................................16

Lee, *Facebook bans 'dangerous individuals,"* BBC News (May 3, 2019), https://www.bbc.com/news/technology-48142098.............................................................4

Manjarres, *Laura Loomer Announces 2022 Congressional Run*, The Floridian (Feb. 24, 2021), https://floridianpress.com/2021/02/laura-loomer-announces-2022-congressional-run ...........................................................14, 15

Martin, *Zuckerberg Tells Fox News Facebook Won't Censor Politicians, While Warren Says Facebook Could Help Trump Win Again*, Newsweek (Oct. 17, 2019), https://www.newsweek.com/zuckerberg-tells-fox-news-facebook-wont-censor-politicians-while-warren-says-facebook-could-help-1466117).......................17

Meta Transparency Center, *Dangerous Individuals and Organizations*, https://transparency.fb.com/policies/community-standards/dangerous-individuals-organizations ...............................................................................3, 4

Meta Transparency Center, *Facebook Community Standards*, https://transparency.fb.com/policies/community-standards......................................................3

Meta Transparency Center, *Hate Speech*, https://transparency.fb.com/policies/community-standards/hate-speech ..........................................................3

Ortutay, *Facebook bans 'dangerous individuals' cited for hate speech*, Associated
          Press (May 3, 2019), https://apnews.com/article/alex-jones-north-america-
          ap-top-news-sc-state-wire-ca-state-wire-
          7825d0df3fda4799a78da92b9e969cdc ...........................................................................4, 5

x

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on September 15, 2022 at 9:30 am or as soon thereafter as the matter may be heard, in Courtroom B of the U.S. District Court for the Northern District of California, San Francisco Division, this Motion to Dismiss will be heard. Meta Platforms, Inc. and Mark Zuckerberg move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, and the supporting Declaration of Emily Barnet.

## STATEMENT OF REQUESTED RELIEF

Meta and Mark Zuckerberg request that the Court dismiss the Complaint with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

Meta suspended and then banned Laura Loomer from the Facebook platform for violating its policies against hate speech and dangerous individuals and organizations. This is Loomer's fourth lawsuit challenging those decisions, having previously failed at the pleadings stage on antitrust and First Amendment claims and having abandoned her defamation claims. Her latest theory is that Meta and its CEO Mr. Zuckerberg (collectively "Meta") allegedly removed her account as part of a racketeering enterprise with defendants Twitter and its former CEO Jack Dorsey (collectively "Twitter"), as well as others, that used "the pretext of 'hate speech' as a cover for committing" "illegal predicate acts," including "advocating the overthrow of the government." Compl. ¶ 30. She seeks billions in damages and asks the Court to order Meta to stop removing content that violates its policies against hate speech and dangerous individuals and organizations.

Over the course of 132 pages and 369 allegations, Loomer's Complaint contains hardly any allegations that even arguably relate to her baseless claims. Scores of her allegations complain of conduct by non-defendants and actions that she does not even attempt to link to her alleged injuries. Despite its prodigious length, the Complaint describes no actionable conduct by Meta at all, let alone a viable RICO claim. Her claims fail for several, independent reasons.

*First*, Loomer's claims are barred by the doctrine of res judicata. She previously stipulated to a with-prejudice dismissal of a suit raising claims based on the removal of her Facebook account. She cannot recycle those same claims here under the guise of a RICO suit.

*Second*, Loomer's RICO claims suffer from numerous independent and incurable defects. At the outset, RICO must be narrowly construed here because the challenged conduct—Meta's exercise of editorial control and judgment over the content it displays on its privately owned website—is protected by the First Amendment. Moreover, Loomer has failed to plausibly allege the essential elements of an enterprise, a pattern of racketeering activity, or a cognizable RICO injury. And most fundamentally, Loomer fails to plausibly allege a single RICO predicate act. That is all unsurprising given that RICO is concerned with organized, long-term criminal activity, not garden-variety claims like this challenge to Meta's decision to ban Loomer from Facebook.

*Third*, because Loomer fails to state a substantive RICO claim, her RICO conspiracy claim fails as well. Her conspiracy claim also fails for the independent reason that she does not plausibly allege an unlawful agreement among Defendants.

*Fourth*, Loomer's claims are independently barred by Section 230 of the Communications Decency Act, which protects Meta and its CEO Mr. Zuckerberg, as providers of a website, from liability for removing content or disabling accounts on Facebook.

Counsel for Meta and Mr. Zuckerberg informed Loomer in a July 8, 2022 letter that her Complaint states no viable legal claim because of these defects and asked her to dismiss her claims or, if she believed any amendment would cure the defects, to amend her complaint before Meta and the Court expended resources on this motion. Barnet Decl. Ex. 1.[1] Loomer declined to dismiss the suit or add any new allegations that might address the numerous shortcomings Meta identified. This is not surprising. Loomer has already filed four complaints in three prior lawsuits that unsuccessfully challenged the same conduct. Her fifth effort fails because her claims are fundamentally nonviable. Loomer has offered no indication that, given a sixth chance to try to state a claim against Meta for removing her access to Facebook, she would be able to plausibly allege conduct that violates the law. And no additional allegations could alter the defenses afforded to Meta by Section 230. Accordingly, this Court should dismiss the Complaint with prejudice.

---

[1] Two of Loomer's three counsel, Bob Barr and Brannon Borroughs, moved to withdraw as counsel the next business day.  Notice and Motion to Withdraw *Pro Hac Vice*, ECF No. 39 (July 11, 2022).

## BACKGROUND

### A.    Meta's Facebook And Content-Moderation Policies

The Complaint alleges that Facebook is a social media website used by over 3 billion people worldwide. Compl. ¶¶ 25, 254. Facebook users share content on the service and interact with content posted by other users. *Id.* Users can maintain Facebook profiles or create Pages; share status updates, photos, videos, and stories; and browse for content through their News Feed. Facebook, *Terms of Service*, https://www.facebook.com/legal/terms (Barnet Decl. Ex. 2).[2]   The content that users create is diverse and substantial. *See, e.g.*, Compl. ¶¶ 67, 70, 146, 306.

Meta has developed rules and standards to moderate the user-created content on its service. *See, e.g.*, Compl. ¶¶ 64-67, 99, 165. Though "Meta recognizes how important it is for Facebook to be a place where people feel empowered to communicate," Meta "take[s] [its] role seriously in keeping abuse off the service." Meta Transparency Center, *Facebook Community Standards*, https://transparency.fb.com/policies/community-standards   (Barnet   Decl.   Ex. 3).[3]   Meta   has therefore developed the Facebook Community Standards, which "outline what is and isn't allowed on Facebook." *Id.* As relevant here, Meta does not "allow hate speech on Facebook," because hate speech "creates an environment of intimidation and exclusion, and in some cases may promote offline violence." Meta Transparency Center, *Hate Speech*, https://transparency.fb.com/policies/community-standards/hate-speech (Barnet Decl. Ex. 4). "In an effort to prevent and disrupt real-world harm," Meta similarly "do[es] not allow organizations or individuals that proclaim a violent

---

[2] The Court may take judicial notice of the existence and content of Facebook's Terms of Service. *See In re Zoom Video Commc'ns, Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021) ("Public terms of service and privacy policies are proper subjects of judicial notice."); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (taking judicial notice of Facebook's Terms of Service); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (Facebook's Terms of Service and Community Standards were "subject to judicial notice").

[3] The Complaint incorporates the Facebook Community Standards by reference, s*ee, e.g.*, Compl. ¶¶ 99-114 (hate speech policy), 152-160 (dangerous individuals and organizations policy). They therefore may be considered in deciding this motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering website under "'incorporation by reference' doctrine" where contents were "alleged in [the] complaint" but "not physically attached to the [plaintiff's] pleading"). They may alternatively be judicially noticed by the Court. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed."); *Force*, 934 F.3d at 59 n.5.

mission or are engaged in violence to have a presence" on Facebook. Meta Transparency Center, *Dangerous Individuals and Organizations*, https://transparency.fb.com/policies/community-standards/dangerous-individuals-organizations (Barnet Decl. Ex. 5). Meta thus "remove[s] content that praises, substantively supports or represents ideologies that promote hate." *Id.*

Facebook users agree to abide by the Community Standards through the platform's Terms of Service; consequences for violating the Community Standards "rang[e] from a warning to an outright ban depending on the severity of the violation and the person's history on the platform." Compl. ¶ 99. The Terms inform Facebook users that if Meta learns of "harmful conduct towards others," it "may take appropriate action … includ[ing] … removing content, … [or] disabling an account." *Terms of Service* (Barnet Decl. Ex. 2). The Terms also explain that "[i]f we determine … that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular the Community Standards, … we may permanently disable or delete your account." *Id.*

Meta vigorously enforces its content-moderation policies. It has removed tens of millions of pieces of content for violation of its hate speech policy alone. Compl. ¶¶ 146-51.

**B.    Removal Of Loomer's Facebook Accounts For Violating Meta's Policies**

Loomer alleges Meta temporarily suspended her Facebook account, and then permanently removed it, under its dangerous individuals and organizations policy. Compl. ¶¶ 153, 210-211. According to Loomer, Meta permanently banned her from Facebook because she appeared with Proud Boys leader Gavin McInnes and praised Faith Goldy, "both of whom were previously designated 'hate figures'" by Facebook. *Id.* ¶ 211. At the time Loomer's account was banned, Meta explained that it has "always banned individuals or organisations that promote or engage in violence and hate, regardless of ideology." Lee, *Facebook bans 'dangerous individuals,'* BBC News (May 3, 2019) (Barnet Decl. Ex. 6) (cited at Compl. ¶ 153 n.133).[4] And "when [Meta] bans

---

[4] This news article and the others cited in this Section all are incorporated by reference in the Complaint and therefore may be considered in deciding this motion to dismiss. *Knievel*, 393 F.3d at 1076-1077; *see* Lee, *Facebook bans 'dangerous individuals,'* BBC News (May 3, 2019), https://www.bbc.com/news/technology-48142098 (Barnet Decl. Ex. 6) (cited at Compl. ¶ 153 n.133); Ortutay, *Facebook bans 'dangerous individuals' cited for hate speech*, Associated Press (May 3, 2019), https://apnews.com/article/alex-jones-north-america-ap-top-news-sc-state-wire-ca-state-wire-7825d00df3fda4799a78da92b9e969cdc (Barnet Decl. Ex. 7) (cited at Compl. ¶ 211 n.189); Bokhari, *Politicians Won't Be Allowed on Facebook If They've Previously Been Banned*,

someone under this policy, the company also prohibits anyone else from praising or supporting them." Ortutay, *Facebook bans 'dangerous individuals' cited for hate speech*, Associated Press (May 3, 2019) (Barnet Decl. Ex. 7) (cited at Compl. ¶ 211 n.189).

Months after Meta permanently banned her from Facebook, Loomer announced she was running for Congress in Florida. Compl. ¶ 212. She then attempted to set up "Laura Loomer for Congress," the "official campaign page for Candidate Loomer," on Facebook. *Id.* ¶ 218. Meta removed this Page the next day. *Id.* ¶ 219-220. Meta allegedly also prohibited Loomer from purchasing campaign ads. *Id.* ¶¶ 234-235. These decisions were consistent with Facebook's Terms, which state that "you cannot use Facebook if … [w]e've previously disabled your account for violations of our Terms or Policies." *Terms of Service* (Barnet Decl. Ex. 2). A spokesperson for Facebook explained that "[p]eople who have been banned from our services aren't able to set up a new account even if they're running for office." Bokhari, *Politicians Won't Be Allowed on Facebook If They've Previously Been Banned*, Breitbart (Nov. 14, 2019) (Barnet Decl. Ex. 8) (cited at Compl. ¶ 223 n.195).

## C.     Moderation Of Hate Speech By Other Social Media Websites

Loomer alleges that other social media websites have also developed and enforced policies against hate speech. *See* Compl. ¶ 79 (describing Google's policy against "derogatory content that promotes hatred"); *id.* ¶ 204 (describing Twitter's hate speech policy); *see also id.* ¶ 161-198 (describing enforcement of policies). For example, the Complaint alleges that Twitter permanently banned Loomer for "hateful" conduct on November 21, 2018. Compl. ¶ 210. Others were "banned" from or "censored" on websites like Twitter and Google under policies concerning violent rhetoric, *e.g.*, *id.* ¶¶ 164, 185-186, or race-related content, *e.g.*, *id.* ¶¶ 163, 188. Loomer devotes exactly one sentence of her Complaint to explaining how these allegations are relevant to her RICO claims against Meta. She alleges that "Facebook, Twitter, and other social media companies, including but not limited to Instagram, Google Inc. and YouTube are members of an enterprise which has used and continues to use the pretext of 'hate speech' as cover for committing

---

Breitbart (Nov. 14, 2019) (Barnet Decl. Ex. 8) (cited at Compl. ¶ 223 n.195).

and continuing to commit illegal predicate acts under the RICO statutes." *Id.* ¶ 30.

### D.      Loomer's Series of Meritless Lawsuits Based On The Same Events

Loomer has responded to these events by bringing a string of baseless lawsuits against Meta, all arising out of the decision to suspend her Facebook account. She first alleged that Facebook and other online platforms violated the antitrust laws and the First Amendment when they suspended her social media accounts. Am. Compl. ¶¶ 69, 103-128, *Freedom Watch, Inc. et al. v. Google, Inc. et al.*, No. 1:18-cv-02030-TNM (D.D.C. Dec. 6, 2018), ECF No. 27.[5] That case was dismissed for failure to state a claim. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 34 (D.D.C. Mar. 14, 2019), *aff'd*, 816 F. App'x 497, 500-501 (D.C. Cir. 2020).

Just four months after the D.C. district court dismissed that case, Loomer restyled her lawsuit as a defamation claim. She filed suit in the Southern District of Florida, alleging that Facebook defamed her when it temporarily suspended her account and then permanently banned her from the platform under its dangerous individuals and organizations policy. Compl. ¶¶ 5, 23-43, *Loomer v. Facebook, Inc.*, No. 9:19-cv-80893-RS (S.D. Fla. July 8, 2019), ECF No. 1. She took the opportunity to amend her allegations a month later. Am. Compl., *Loomer v. Facebook, Inc.*, No. 9:19-cv-80893-RS (S.D. Fla. Aug. 5, 2019), ECF No. 7. And just hours after that court denied Loomer's motion for an extension of discovery, Loomer filed a nearly identical complaint against Facebook in Florida state court. *See Loomer v. Facebook, Inc.*, No. 50-2020-CA-002352-XXXX-MB (Fla. 15th Cir. Ct. 2020). Facebook removed the state court case to federal court, *see* Notice of Removal, *Loomer v. Facebook, Inc.*, No. 9:20-cv-80484-DMM (S.D. Fla. Mar. 24, 2020), ECF No. 1, and Loomer voluntarily dismissed the case shortly thereafter, Notice of Voluntary Dismissal, *Loomer*, No. 9:20-cv-80484-DMM (S.D. Fla. Apr. 22, 2020), ECF No. 20. The Southern District of Florida transferred the first-filed Florida case to this District. Order Granting Motion to Transfer, *Loomer*, No. 9:19-cv-80893-RS (S.D. Fla. Apr. 13, 2020), ECF No. 56. Loomer then voluntarily dismissed that action with prejudice—after Meta had fully briefed a motion to dismiss and filed a motion for summary judgment—asserting that she did not believe

---

[5] The Court may take judicial notice of these previous court filings, which are "matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

that she "would be accorded due process and an unbiased adjudication by the Court." Notice of

Voluntary Dismissal, *Loomer*, No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020), ECF No. 88;

Joint Initial Case Management Statement at 3 (N.D. Cal. June 30, 2020), ECF No. 80. Yet Loomer

now returns to the Northern District of California, almost two years later, with another farfetched

theory of why the decision to remove her Facebook account should be deemed unlawful.

## ARGUMENT

## I.   LOOMER'S CLAIMS ARE BARRED BY RES JUDICATA

Loomer's attempt to repackage claims against Meta that she already raised and voluntarily

dismissed with prejudice is prohibited by res judicata. *See* Compl., *Loomer v. Facebook, Inc.*, No.

9:19-cv-80893-RS (S.D. Fla. July 8, 2019), ECF No. 1; Notice of Voluntary Dismissal, *Loomer*,

No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020), ECF No. 88. Loomer's "stipulated dismissal

of [her] action with prejudice … constitutes a final judgment on the merits and precludes [her]

from reasserting the same claims in a subsequent action in the same court." *Headwaters Inc. v.

U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005). And Loomer undoubtedly pursues the

"same claims" here as she did in her defamation action because "the two suits arise out of the same

transactional nucleus of facts": Meta's removal of her Facebook account. *Id.* (citing *Costantini v.

Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).

It makes no difference that she now labels her challenge as RICO claims; she cannot

relitigate the same claims even if she "has pleaded a new legal theory." *Costantini*, 681 F.2d at

1201. Nor does it matter that she now challenges Meta's alleged removal of her campaign page on

November 12, 2019 or its alleged prohibition on her purchase of campaign ads on July 4, 2020.

Compl. ¶¶ 219, 235. That alleged conduct occurred before Loomer voluntarily dismissed her prior

suit and that dismissal "bars all grounds for recovery which *could have been asserted, whether

they were or not*, in [the] prior suit." *Costantini*, 681 F.2d at 1201.[6] Loomer's efforts to pad her

RICO claims by asserting implausible Anti-Terrorism Act (ATA) and Smith Act predicates also

do not change this fact, as she cannot "avoid the bar of res judicata merely because [she] now

---

[6] Emphasis added and citations and internal quotations omitted throughout, unless otherwise noted.

1   alleges conduct by [Meta] not alleged in [her] prior suit." *Id.* And any attempt to distinguish the

2   facts underlying her RICO claims from those alleged in her defamation suit only undermines her

3   suit further, for "to state a federal RICO claim, [she] must allege that all of the predicate acts, *taken*

4   *together, constitute a single course of conduct* aimed at benefitting the wrongdoer by harming

5   [her]." *Monterey Plaza Hotel Ltd. v. Local 483*, 215 F.3d 923, 927-928 (9th Cir. 2000) (RICO

6   claim precluded by prior state action under state law) (emphasis in original).  Finally, Loomer

7   cannot avoid the res judicata bar by naming Mr. Zuckerberg as a defendant or listing her campaign

8   committee as a plaintiff, as both stand in privity to the parties to her previous defamation suit.

9   *Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996) (corporate officers in privity with

10  corporation); *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) (nonparties bound if "adequately

11  represented" in prior suit and parties to prior judgment cannot "relitigate[e] through a proxy").

12  ## II.   LOOMER HAS NOT STATED A CIVIL RICO CLAIM

13          The Court should reject Loomer's latest attempt to recast her grievance about Meta's

14  removal of her account as a RICO claim. RICO "'was enacted with a goal of eradicat[ing]

15  organized, long-term criminal activity.'" *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at

16  *4 (N.D. Cal. Feb. 23, 2000) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th

17  Cir. 1999)). It does not provide a cause of action to pursue the kind of garden-variety tort or

18  contract claims that Loomer has previously brought in response to these same events. *Nguyen v.

19  Chow*, 2014 WL 12625960, at *2 (N.D. Cal. Sept. 19, 2014); *Annulli v. Panikkar*, 200 F.3d 189,

20  200 (3d Cir. 1999), *abrogated on other grounds*, *Rotella v. Wood*, 528 U.S. 549 (2000).

21          Imposing RICO liability would be especially inappropriate here because Loomer

22  challenges conduct protected by Meta's First Amendment right to "exercise … editorial control

23  and judgment" over what content it disseminates through its communications platform. *See Miami

24  Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257-58 (1974). This First Amendment protection

25  extends to "decisions about what content to include, exclude, moderate, filter, label, restrict, or

26  promote" on platforms such as Facebook. *O'Handley v. Padilla*, 2022 WL 93625, at *14 (N.D.

27  Cal. Jan. 10, 2022); *see also NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196, 1210 (11th Cir. 2022)

28  (holding that a platform "engages in 'speech' within the meaning of the First Amendment" when

it selectively removes user content). Loomer attempts to hold Meta liable for its exercise of editorial control and judgment, including its decisions to remove her content and block her from accessing Facebook. *See, e.g.*, Compl. ¶¶ 30, 210-11, 218-19, 235, 243-44. But courts must be wary of extending civil RICO's "somewhat elastic" predicate acts to encompass such "fully protected First Amendment activity." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring). And Meta is "entitl[ed] … to dismissal on that basis." *Id.*; *see also Savage v. Council on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *10 (N.D. Cal. July 25, 2008) (dismissing RICO claim that raised "serious First Amendment concerns").

But even setting aside Meta's First Amendment rights, Loomer's RICO claim fails because her allegations do not support an entitlement to relief. To state a civil RICO claim, Loomer must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Loomer alleges that Meta and Mr. Zuckerberg, along with other social media websites, participated in an enterprise that committed a series of predicate acts under RICO by violating the federal wire fraud statute, the Hobbs Act, the Travel Act, the ATA, and the Smith Act. Compl. ¶¶ 332, 341-62. But her allegations satisfy none of RICO's requirements. The Complaint does not plausibly allege an enterprise, a pattern, or injury to business or property. Nor does it plausibly allege any predicate act. It should be dismissed.[7]

### A.    Loomer Has Not Pleaded A RICO Enterprise

Loomer's RICO claim fails at the outset because she has not plausibly alleged an

---

[7] Loomer's claims for punitive damages independently should be dismissed because punitive damages are precluded under civil RICO. *See Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal. 1989) (RICO "provides for treble damages which are themselves punitive in character."); *Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1130 (9th Cir. 1997) (crediting *Southwest Marine*'s holding that "punitive damages were unavailable directly through RICO"), *overruled on other grounds*, *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004). A motion to dismiss under 12(b)(6) is the appropriate vehicle to dismiss damages claims that "are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *see, e.g.*, *Linares v. CitiMortgage, Inc.*, 2015 WL 2088705, at *8 (N.D. Cal. May 5, 2015) (construing motion to strike as motion to dismiss and dismissing punitive damages claim where such damages were "not available").

association-in-fact RICO enterprise. "[A]n association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Such an enterprise "must have a structure." *Id.* at 945. A RICO plaintiff must plausibly allege that enterprise members shared a "common purpose," formed "'a vehicle for the commission of two or more predicate crimes,'" and that their "behavior was 'ongoing' rather than isolated activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007) (en banc). A RICO enterprise is not proved by evidence that "several individuals, *independently and without coordination*, engaged in a pattern of crimes listed as RICO predicates." *Boyle*, 556 U.S. at 947 n.4.

The Complaint is bereft of plausible allegations as to "what exactly each individual did, when they did it, or how they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (holding plaintiff failed to plead RICO enterprise). Instead, it conclusorily asserts that Defendants, as well as nonparties such as YouTube and Google, formed an "associated in fact" enterprise, Compl. ¶ 332, that "has used and continues to fraudulently use the pretext of 'hate speech' as cover for committing and continuing to commit illegal predicate acts under the RICO statutes" against Loomer and others "in order to further multiple fraudulent schemes," *id.* ¶ 30. That does not suffice. "[A]n 'entitlement to relief' requires 'more than labels and conclusions.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

To the extent that the Complaint includes any specific allegations concerning the alleged enterprise, they amount, at most, to "lawful parallel conduct," which cannot establish a RICO enterprise. *Vertkin v. Wells Fargo Home Mortg.*, 2011 WL 175518, at *4 (N.D. Cal. Jan. 18, 2011) (citing *Twombly*, 550 U.S. at 557). Loomer alleges that Meta and Twitter have enacted policies related to "hate speech" or "hateful conduct," Compl. ¶¶ 99-107, 108-09, and have taken action to enforce those policies. To be sure, both companies are alleged to have "banned" and "censored" accounts, *id.* ¶¶ 161-98; permanently banned Loomer's accounts, *id.* ¶¶ 210, 211; and banned or frozen Donald Trump's accounts, *id.* ¶¶ 308, 309. But Loomer has not plausibly alleged that Meta and Twitter "associated together for a common purpose" by "coordinat[ing] their activities,"

1   *United States v. Christensen*, 828 F.3d 763, 780-781 (9th Cir. 2015), or working as "a cohesive

2   unit," *Vertkin*, 2011 WL 175518, at \*4.[8] Nor does Loomer explain how the alleged members of

3   the enterprise "had relationships among each other with respect to the actual carrying out of what

4   they were each doing individually." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1073 (11th

5   Cir. 2017). Her allegations therefore cannot support a RICO enterprise.

6          Nor can Loomer overcome her failure to show anything more than parallel conduct by

7   claiming that Mr. Zuckerberg participated in the alleged enterprise. To plead an enterprise

8   consisting of Meta and its CEO, Loomer must plausibly allege "the existence of a distinct

9   Enterprise, separate and apart from the general business of [Meta]." *In re JUUL Labs, Inc., Mktg.,*

10  *Sales Practices, & Prods. Liability Litig.*, 497 F. Supp. 3d 552, 603 (N.D. Cal. 2020). And to hold

11  an individual such as Mr. Zuckerberg liable under RICO, she must show that this distinct enterprise

12  was under his "direction or control." *Id.* at 607 (analyzing role of CEO in alleged enterprise); *see*

13  *also Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (liability for conduct of enterprise requires

14  "some part in directing" the enterprise's affairs). But Loomer has not plausibly alleged that Mr.

15  Zuckerberg was personally involved in operating or managing any enterprise distinct from Meta's

16  general business, let alone that he participated in removing her account or other content-related

17  decisions underlying her RICO allegations. She points only to Mr. Zuckerberg's general public

18  statements about Facebook's policies and his views as the company's CEO about how Meta should

19  exercise editorial judgment and control. *See, e.g.*, Compl. ¶¶ 49, 56, 77, 82, 85, 119, 203, 216, 282,

20  291-293. She does not, and cannot, show that Mr. Zuckerberg "conducted or participated in the

21  conduct of a racketeering enterprise, rather than just the business of [Meta] separate and apart from

22  any alleged racketeering acts." *Ferrari v. Mercedes-Benz USA, LLC*, 2016 WL 7188030, at \*3

23  (N.D. Cal. Dec. 12, 2016) (analyzing roles of current and former CEOs in alleged enterprise).

24

25  _____

    [8] Nor do Loomer's citations to a handful of ongoing lawsuits naming members of the supposed

26  enterprise help establish a common purpose to engage in the predicate acts that she alleges, as
    these other lawsuits are unrelated to the claims she brings in this action. *See, e.g.*, Compl. ¶ 33

27  (allegations that Mr. Zuckerberg and Google's CEO "secretly conspired … to guarantee Defendant
    Facebook would both bid in and win a fixed percentage of ad auctions."); *id.* ¶ 37 (allegations that

28  Meta "was reported to have engaged in [a] fraudulent scheme" relating to privacy).

### B.     Loomer Has Not Pleaded A "Pattern" Of Racketeering Activity

Loomer has also failed to plead the essential element of a "pattern" of racketeering activity. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To establish the requisite "pattern," a plaintiff must allege that "the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Loomer's Complaint comes up short on both components.

Where "[t]he purpose, result, victim and method" are "strikingly different" for each of the predicate acts, the relatedness requirement is not met. *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). That is precisely the case here. For example, Loomer appears to allege that Meta defrauded her and unnamed others by allegedly applying its Community Standards inconsistently and by limiting particular politicians' access to Facebook after allegedly stating that politicians would be able to access and post content to Facebook without regard to the restrictions of the Community Standards. *See* Compl. ¶ 217, 280. This alleged conduct, which Loomer cites in support of her wire fraud claim, shares no overlapping purpose, result, victim, or method with her allegations that Meta attempted to provide material support to terrorist groups, *id.* ¶ 354, or to advocate for the overthrow of the government, *id.* ¶ 356-358, by allowing certain accounts to remain on Facebook. Loomer does not, in fact, assert that she was injured by the alleged ATA and Smith Act violations at all. She was not. Those purported predicate acts are premised on decisions to remove (or not remove) content that was posted by other third parties and are not alleged to have had any impact on Loomer. *See id.* ¶¶ 288-300 (ATA); *id.* ¶¶ 301-12 (Smith Act).

Loomer likewise fails to plausibly allege a "threat of continued criminal activity," as required to plead a RICO pattern. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). She claims to have shown "Open Ended Continuity," asserting that, as a group, "Defendants continue to engage in the predicates listed herein," which are "supported by Defendants' policies and procedures for its ongoing, legitimate businesses." Compl. ¶ 336-338. These conclusory allegations do not suffice. Loomer must plausibly allege "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. She does not do so. Loomer bases her allegation that Meta extorted her on a single action that the company took in May 2019.

Compl. ¶¶ 211, 346-347. Her wire fraud allegations hinge on statements allegedly made in October 2019, *id.* ¶¶ 216-217, 281-282, that are purportedly inconsistent with Meta's conduct in November 2019, *id.* ¶ 218-223. And as discussed above, her ATA and Smith Act allegations do not describe "related predicates" at all. *See H.J. Inc.*, 492 U.S. at 242. Like the allegations found insufficient to establish open-ended continuity in *Howard*, Loomer's Complaint "present[s] no facts indicating that [these alleged predicate acts] would continue into the future." *See* 208 F.3d at 750. She describes, at most, the kind of "isolated or sporadic acts" that do not suffice to establish a RICO pattern. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987).

### C.   Loomer Has Not Pleaded A Cognizable Injury Proximately Caused By The Alleged Predicate Acts

Loomer does not plead a cognizable RICO injury because she does not plausibly allege that she "'has been injured in [her] business or property'" as a result of Facebook's ban. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). A RICO injury "requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005) (en banc). As this Court has recognized, intangible injuries, such as "'[c]ivil rights violations and injury to reputation,'" "'do not fall within the statutory definition of racketeering activity' and thus 'fail[] to state a claim under RICO.'" *Feng v. County of Santa Clara*, 2019 WL 7194475, at *8 (N.D. Cal. Dec. 26, 2019) (quoting *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997)).

Most of Loomer's asserted injuries, including "reputational damage," Compl. ¶ 243, "deprivation of equal access to voters," *id.* ¶ 244, "the loss of votes in a federal election," *id.*, and "the loss of … intangible rights, equal opportunity, [and] campaign exposure," *id.* ¶ 362, do not survive this basic requirement to plead a "tangible financial loss" and therefore are not cognizable under RICO, *Diaz*, 420 F.3d at 900. Her alleged voting-related injuries do not even arguably involve business or property interests; nor is the alleged damage to her reputation or goodwill redressable under RICO. *C&M Café v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 18, 2016) (reputational harm not cognizable RICO injury); *In re Volkswagen "Clean Diesel"*

1    *Mktg., Sales Practices, & Prods. Liability Litig.*, 2019 WL 6749534, at *4 (N.D. Cal. Dec. 6, 2019)

2    ("[H]arm to goodwill is not recoverable under RICO.").

3           As for Loomer's remaining alleged injuries—"lost employment opportunities," Compl.

4    ¶ 243, "lost future profits," *id.*, and "deprivation of … campaign donations," *id.* ¶ 244—the

5    Complaint fails plausibly to allege that any predicate act proximately caused these injuries, as

6    RICO requires. *See Syngenta*, 519 F.3d at 972.[9] A RICO plaintiff must identify "'some direct

7    relation between the injury asserted and the injurious conduct alleged.'" *Id.* at 981 (quoting *Holmes*

8    *v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). This requirement "is not easily met," *Sheperd*

9    *v. Am. Honda Motor Co.*, 822 F. Supp. 625, 629 (N.D. Cal. 1993), and Loomer fails to meet it

10   here. Like the injuries that were held insufficient to state a RICO claim in *Oscar*, Loomer's alleged

11   losses are "purely speculative." *Diaz*, 420 F.3d at 898 (quoting *Oscar*, 965 F.2d at 787). She "never

12   alleged that she wanted or tried to" pursue opportunities for employment or future profit, or that

13   Defendants stood in her way. *Id.* Because these allegations "require[] the Court to move beyond

14   the first step in the causal chain" in order to trace Loomer's injuries to Meta, they are too indirect

15   to establish a RICO injury. *Fields v. Twitter, Inc.*, 881 F.3d 739, 745 (9th Cir. 2018) (citing *Hemi*

16   *Grp., LLC v. City of New York*, 559 U.S. 1, 8-12 (2010)).

17          Nor does Loomer plead the requisite "direct causal connection" between the challenged

18   conduct—Meta's decision to ban her from Facebook—and the loss of campaign donations she

19   claims. *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 460 (2006). Indeed, some of her allegations

20   suggest the opposite causal connection. Loomer won the Republican primary *after* she was banned

21   from Facebook, *see* Compl. ¶ 239, and when she announced her 2022 congressional run, she touted

22   her de-platforming and "'Big Tech'['s] efforts to silence everyday Americans." Manjarres, *Laura*

23
24   ───────────────
       [9] It is also doubtful whether any of these injuries could qualify as injuries to Loomer's business or
25   property interests. The Supreme Court has noted that, "perhaps because of its very uncertainty, the
     interest in anticipated gains has traditionally been viewed as less compelling than other property-
26   related interests." *Andrus v. Allard*, 444 U.S. 51, 66 (1979). And in upholding dismissal of a RICO
     claim involving the sale of trading cards, the Ninth Circuit approvingly quoted the Fifth Circuit's
27   observation that "'[i]njury to mere expectancy interests … is not sufficient to confer RICO
     standing.'" *Chaset v. Fleer/Skybox Int'l LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (quoting *Price v.
28   Pinnacle Brands*, 138 F.3d 602, 607 (5th Cir. 1998) (per curiam)). But the Court need not resolve
     that issue, given Loomer's failure to plausibly allege proximate cause as to these supposed injuries.

*Loomer Announces 2022 Congressional Run*, The Floridian (Feb. 24, 2021), https://floridianpress.com/2021/02/laura-loomer-announces-2022-congressional-run (Barnet Decl. Ex. 9) (cited at Compl. ¶ 242 n.209). Her assertion that she lost out on campaign contributions thus invites this Court to engage in exactly the type of "intricate, uncertain inquir[y]" that RICO's proximate cause element is designed to prevent. *Anza*, 547 U.S. at 459-460 (holding that alleged RICO injury lacked proximate cause because it "could have resulted from factors other than petitioners' alleged acts of fraud"); *see Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 615 (S.D.N.Y. 2015) (allegation of lost campaign donations was "indefinite and unprovable" and thus insufficient to establish RICO injury). This Court should decline to do so.

### D.     Loomer Has Not Pleaded Any Predicate Act

Beyond all these defects, Loomer fails to satisfy the most basic requirement under RICO: she has not plausibly alleged any "racketeering activity (known as predicate acts)." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015).

### 1.     Loomer Has Not Plausibly Alleged Wire Fraud

Wire fraud allegations must be pleaded with particularity. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing Fed R. Civ. P. 9(b)). To do so, Loomer must set forth specific facts establishing "(1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the specific intent to defraud." *JUUL Labs*, 497 F. Supp. 3d at 595. Not every alleged misrepresentation amounts to criminal fraud. The statute prohibits "only deceptive 'schemes to deprive [the victim of] money or property,'" *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020), and requires the intent to "obtain money or property from the one who is deceived," *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989). Loomer's allegations do not meet these standards.

*First*, Loomer does not adequately allege any deceptive conduct. Her wire fraud claim does not meet the basic requirement under Rule 9(b) to plead fraud with particularity. Her theory appears to be that Meta "devise[d] an artifice of community policies" to somehow defraud her and others. Compl. ¶ 344. But nowhere does she "state the time, place, and specific content of the false representations" Meta allegedly made to her concerning its Community Standards. *Swartz*, 476 F.3d at 764. Nor does she "set forth an explanation as to why the statement or omission complained

of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). That alone is a sufficient basis for holding that she failed to plead this alleged predicate act. *E.g.*, *Titan Glob. LLC v. Organo Gold Int'l, Inc.*, 2012 WL 6019285, at *7 (N.D. Cal. Dec. 2, 2012).[10]

Beyond that threshold defect, there are others. While Loomer appears to also allege that Meta fraudulently "promised [her] access to its network" as a politician, Compl. ¶ 217, she has not plausibly alleged any "affirmative, material misrepresentation" to that effect, *JUUL Labs.*, 497 F. Supp. 3d at 595 (quoting *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010)). As reported in articles the Complaint incorporates by reference, Meta exempted "direct statement[s] from a candidate or campaign … from policies designed to *prevent misinformation*"—not its Community Standards more broadly (or, in particular, the dangerous individuals and organizations policy that was the basis for Meta's decision to ban Loomer from the platform). Hern, *Facebook Exempts Political Ads From Ban On Making False Claims*, Guardian (Oct. 4, 2019), https://www.theguardian.com/technology/2019/oct/04/facebook-exempts-political-ads-ban-making-false-claims (Barnet Decl. Ex. 10) (cited at Compl. ¶ 281 n.238); *see* Boyle, *Facebook's Updated Advertising Policy Could Enable Politicians To Spread Misinformation*, Newsweek (Oct. 3, 2019), https://www.newsweek.com/trump-biden-facebook-misleading-ads-1463054 (Barnet Decl. Ex. 11) (cited at Compl. ¶ 281 n.238). Nor does Loomer explain how Mr. Zuckerberg's alleged statement that he "would not censor social media posts from politicians," Compl. ¶ 282, represented a promise that users would retain unconditional access to Facebook no matter what content they posted, let alone a promise that Meta would allow individuals like Loomer to *return* to the platform if they were previously banned for violating the Community Standards.[11]

---

[10] The Complaint appears to suggest, though without the particularity required by Rule 9(b), that the Community Standards are fraudulent because Meta allegedly applies them inconsistently. That theory also fails because Loomer does not allege any statement by Meta that it perfectly enforces its Community Standards or that there can be no reasonable disagreement as to whether particular content violates those Standards. Thus, allegations that Meta did not remove content that violated its Community Standards (in Loomer's view) or removed content that did not violate its Community Standards (again, in Loomer's view), *see, e.g.*, Compl. ¶¶ 157-159, do not plausibly allege that Meta's Community Guidelines Standards are an "artifice," *id.* ¶ 344.

[11] What Mr. Zuckerberg actually said, according to the article on which this allegation relies and

1    The remaining alleged statements on this topic are statements of opinion that are not

2    falsifiable. According to the Complaint, Mr. Zuckerberg stated that he did not believe it was "right

3    for tech companies to censor politicians in a democracy," Compl. ¶ 216, and a Facebook

4    spokesperson said the company "did not think it would be appropriate to prevent a politician's

5    speech from reaching its audience," *id.* ¶ 281. These statements are "expressions of opinion," and

6    thus "not actionable as fraud." *Eclectic Props.*, 751 F.3d at 1000. Because Loomer does not

7    identify any statements that were false or misleading, she cannot plausibly allege that she or other

8    users could be deceived by any of them.  Her attempt to disguise her challenge to the ban on her

9    account as wire fraud fails.

10    *Second*, Loomer's reliance on wire fraud fails for the independent reason that she does not

11    plausibly allege that Meta devised a scheme with the goal of obtaining money or property by means

12    of a false or misleading statement. The scheme she alleges is nonsensical. According to Loomer,

13    Meta carried out a bait-and-switch. It allegedly lured political candidates onto its platform "under

14    the false pretense and false promises that advertisements from political candidates would *not* be

15    subject to third-party review or censorship," only to later change its policy. Compl. ¶¶ 279, 280.

16    That change in policy, in turn, allegedly permitted Meta to freeze then-President Trump's

17    Facebook account and remove Loomer's campaign page a day after she attempted to set it up—

18    thereby preventing those accounts from purchasing any advertising on Facebook. *Id.* ¶¶ 308, 218-

19    219. Loomer's own case perfectly demonstrates why this alleged scheme is not plausibly related

20    to any effort to "deprive [her] of money or property by means of deception." *United States v.*

21    *Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085 (2021). The wire fraud

22    statute is meant "to punish wrongful transfers of property from the victim to the wrongdoer, not to

23    _____

24    which is incorporated by reference, is: "My belief is that in a democracy, I don't think that we
want private companies censoring politicians in the news." "I generally believe that as a principle,

25    people should decide what is credible and what they want to believe, who they want to vote for.
And I don't think that should be something that we want tech companies or any kind of company

26    doing." Martin, *Zuckerberg Tells Fox News Facebook Won't Censor Politicians, While Warren*
*Says Facebook Could Help Trump Win Again*, Newsweek (Oct. 17, 2019),

27    https://www.newsweek.com/zuckerberg-tells-fox-news-facebook-wont-censor-politicians-while-
warren-says-facebook-could-help-1466117 (Barnet Decl. Ex. 12) (cited at Compl. ¶ 282 n.239).

28    These are statements of opinion and not actionable in fraud. *See Eclectic Props.*, 751 F.3d at 1000.

salve wounded feelings." *Monterey Plaza Hotel L.P.*, 215 F.3d at 927. It thus prohibits only conduct with an "acquisitive" purpose. *Id.* Had Meta been acting with an "acquisitive" purpose, *id.*—rather than the purpose of keeping abuse off the platform—it would not have removed Loomer's campaign page *before* she even was able to purchase any advertisements on Facebook. Because Loomer has not plausibly alleged that Meta acted with an "intent to deceive and cheat" by obtaining property, dismissal is appropriate. *R.J. v. Cigna Behavioral Health, Inc.*, 2021 WL 1110261, at *10 (N.D. Cal. Mar. 23, 2021) (dismissing wire fraud claim on this ground); *see also Focus 15, LLC v. NICO Corp.*, 2022 WL 2355537, at *5 (N.D. Cal. June 30, 2022) (similar).

### 2.     Loomer Has Not Pleaded Extortion Under The Hobbs Or Travel Acts

Loomer does not plausibly allege any conduct that amounts to extortion under the Hobbs Act, 18 U.S.C. § 1951(a), or under Florida or California law, which are incorporated by the federal Travel Act, *see id.* U.S.C. § 1952(b)(i)(2). She fails to establish multiple required elements of extortion, foreclosing her claims under both the Hobbs Act and the Travel Act.

*First*, Loomer does not plausibly allege that Meta acted wrongfully or without justification, an essential element under both predicates. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1132 (9th Cir. 2014) (extortion under Hobbs Act and California law require "wrongful" use of force or violence); *Sanchez-Torres v. State*, 322 So. 3d 15, 22-23 (Fla. 2020) (under Florida law, extortion requires act "without any lawful justification"). She alleges generally that Meta acted wrongfully by threatening to injure the "property and reputation" of her and others similarly situated and "expose [them] to the disgrace of being banned, labeled a 'dangerous individual,' and placed on a dangerous individual's [sic] list." Compl. ¶¶ 347, 352. But to avoid "transform[ing] a wide variety of legally acceptable business dealings into extortion," a plaintiff alleging extortion must point to "a pre-existing right to be free from the threatened harm." *See Levitt*, 765 F.3d at 1132-33; *see also Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 317-318 (9th Cir. 1990) (tenants had no right to be free from landlord's threats of future rent increases). Loomer fails to do so. She alleges no preexisting legal right to access Facebook while violating its policies or to use Facebook without being deemed a dangerous individual under its Community Standards. To the contrary, Facebook specifically requires users to comply with its Community Standards in its Terms of Service and

notifies users that their account may be removed if they do not. *See supra* p. 4. Loomer alleges, at most, that Meta "is withholding a benefit that [Meta] makes possible and maintains," which Meta "has no obligation to do." *Levitt*, 765 F.3d at 1133. Loomer therefore cannot plausibly allege that Meta acted "wrongful[ly] or "without any lawful justification" when it removed her accounts.

*Second*, Loomer does not plausibly allege that Defendants obtained any property from her, and so cannot plead a violation of the Hobbs Act or California's extortion law. *See United States v. Kozoil*, 993 F.3d 1160, 1168 (9th Cir. 2021) (Hobbs Act); *Cobb v. JPMorgan Chase Bank, N.A.*, 2013 WL 6201414, at *13 (N.D. Cal. Nov. 27, 2013) (California law). Extortion under these statutes "require[s] not only the deprivation but also the *acquisition* of property." *Scheidler v. Nat'l Org. of Women, Inc.*, 537 U.S. 393, 404 (2003). Loomer must plead that Meta received "something of value" that it "could exercise, transfer, or sell." *Id.* at 405. She has not.

Loomer's Complaint does not describe any property—tangible or intangible—that Meta could have acquired through its alleged acts of extortion.[12] She asserts that Defendants extorted "intangible property" from her, Compl. ¶ 346, that Meta "attempts and conspires to obtain contractual, speech and other rights and intellectual property consensually from its members induced by the threat of banning and labeling," *id.* ¶ 256, and that Meta compelled her and others "to refrain, against their will, from speaking to or associating with other[s]" Meta disfavored, *id.* at 347. But she does not identify any intangible property, intellectual property, or contract rights that Defendants attempted to obtain by banning her or others from Facebook, nor would that make any sense. And Loomer's allegation that Defendants sought to force her and others not to speak to or associate cannot support an extortion claim because her "speech rights" are not "something of value" that Defendants could possibly obtain in order to "exercise, transfer, or sell." *Scheidler*, 537

---

[12] Loomer has not alleged extortion even assuming intangible property can support an extortion claim, but that is an open question. The Supreme Court has expressly left the question open, *see Scheidler*, 537 U.S. at 402, as has the Ninth Circuit, *see United States v. McFall*, 558 F.3d 951, 957 & n.7 (9th Cir. 2009). Six years before the Ninth Circuit's decision in *McFall*, a judge in this District held that a defendant obtains property under the Hobbs Act if he "gains control over the use of a competitor's business asset, even if the asset is … intangible," because in doing so he "does more than coerce by restricting the competing business's freedom of action." *Dooley v. Crab Boat Owners Ass'n*, 271 F. Supp. 2d 1207, 1213 (N.D. Cal. 2003). Loomer at most alleges a "restrict[ion]" of her "freedom of action" that would not support an extortion claim under *Dooley*.

U.S. at 405. To plead extortion, "[i]t is not enough" to allege that Defendants "gain[ed] some speculative benefit" by "restricting [Loomer's] activities"—"an alleged extortionist must actually appropriate (or attempt to appropriate) the victim's property." *United States v. McFall*, 558 F.3d 951, 957-958 (9th Cir. 2009). Because Loomer does not plausibly allege that Defendants attempted to acquire property, she cannot state an extortion claim.

### 3. Loomer Has Not Pleaded Material Support Under The ATA

Loomer alleges a criminal violation of the Anti-Terrorism Act's material-support provision. As discussed *supra*, Loomer generally has failed to plausibly allege a pattern of racketeering activity. But even assuming that some of the alleged predicate acts constitute the requisite pattern, this one certainly is not part of any such pattern. Her claim that Meta has not removed every account and page on Facebook associated with a terrorist organization, *see* Compl. ¶¶ 294-295, 354, is entirely unrelated to her claim that Meta defrauded her into creating Facebook accounts or extorted her through its dangerous individuals and organizations policy. These alleged predicate acts have different purposes, results, and victims. *See Howard*, 208 F.3d at 749. Indeed, Loomer at least claims to be an alleged victim of the wire fraud, Hobbs Act, and Travel Act violations but she does not and could plausibly claim to be a victim of the alleged ATA violation.

Regardless, Loomer fails to plausibly allege a criminal violation of the ATA, which makes it a crime to "knowingly provide[] material support or resources to a foreign terrorist organization," or to "attempt[] or conspire[] to do so." 18 U.S.C. § 2339B(a)(1). To violate the statute, a defendant must both "know[] about the organization's connection to terrorism," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010), and deliberately aid that organization, *United States v. Al Kassar*, 660 F.3d 108, 129 (2d Cir. 2011). Loomer has not plausibly alleged that Meta knowingly attempted to provide material support to any designated FTO because she has not plausibly alleged that Meta knew any particular account was affiliated with an FTO and failed to remove it. She vaguely alleges that Hezbollah, Hamas, ISIS, and Al Qaida maintain accounts and pages on Facebook but not that Meta knew of, and declined to remove, any specific account or page. Compl. ¶¶ 294-295.[13]

---

[13] The allegation that "Defendants" "announc[ed] that the political wings of known foreign terrorist

1    To the contrary, as the Complaint alleges and as news articles that it incorporates by

2  reference make clear, Meta removes a tremendous amount of terrorist content from Facebook, *see*

3  Compl. ¶ 149, and any that remains is content that "f[e]ll through the cracks," Frenkel & Hubbard,

4  *After Social Media Bans, Militant Groups Found Ways to Remain*, N.Y. Times (Apr. 19, 2019),

5  https://www.nytimes.com/2019/04/19/technology/terrorist-groups-social-media.html    (Barnet

6  Decl. Ex. 13) (cited at Compl. ¶ 294 n.250). In other words, it is content that Meta does not detect.

7  Thus, Loomer has not plausibly alleged that Meta knew that any particular account was affiliated

8  with a FTO. *See Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 176 (S.D.N.Y.

9  2017) (inference of knowledge "generally implausible when the only allegations are that the

10  defendants provided 'routine' banking services"), *aff'd* 705 F. App'x 40 (2d Cir. 2017). Nor has

11  she plausibly alleged the requisite intent: Meta cannot intentionally provide an account to a FTO

12  if it is not even aware that it is providing an account to that particular user.

13    **4.    Alleged Violations Of The Smith Act Are Not RICO Predicate Acts**

14    **And Not Plausibly Pled**

15    Under RICO, "'racketeering activity' consists of no more and no less than commission of

16  a predicate act." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985) (citing 18 U.S.C.

17  § 1961(1)); *see Smith v. Levine Leichtman Cap. Partners, Inc.*, 723 F. Supp. 2d 1205, 1214 (N.D.

18

19  organizations could use its platforms," Compl. ¶ 354, improperly lumps together all defendants.
   As this Court has noted, "grouping multiple defendants together in a broad allegation is insufficient

20  to provide the defendants with fair notice of the claims against them" and violates the pleading
   requirements of Rule 8. *Glaser v. Nationstar Mortg., LLC*, 2017 WL 1861850, at *5 (N.D. Cal.

21  May 9, 2017). Loomer therefore cannot "allege[] 'that multiple parties did an act, without
   identifying which party did what specifically.'" *McCracken v. Wells Fargo Bank NA*, 2017 WL

22  1428716, at *2 (N.D. Cal. Apr. 20, 2017). But Loomer identifies only a single statement by a
   Twitter employee about Twitter's past practices. *Id.* ¶ 296. She alleges no such statement by Meta

23  or Mr. Zuckerberg.  And the article the allegation incorporates by reference specifically notes that

24  Meta does not "keep up the content of … Hezbollah and Hamas." Birnbaum, *Twitter Takes Down
   Hamas, Hezbollah-Affiliated Accounts After Lawmaker Pressure*, The Hill (Nov. 4, 2019),

25  https://thehill.com/policy/technology/468866-twitter-takes-down-hamas-hezbollah-affiliated-
   accounts-after-lawmaker (Barnet Decl. Ex. 14) (cited at Compl. ¶ 296 n.252). Separately, her

26  allegations that Meta allowed Taliban supporters to use Facebook cannot support an ATA claim

27  because, as she concedes, the Taliban is not a designated FTO. *See* 18 U.S.C. § 2339B(g)(6)
   ("[T]he term 'terrorist organization' means an organization designated as a terrorist organization

28  under section 219 of the Immigration and Nationality Act."); Compl. ¶ 297-298.

Cal. 2010) ("'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes …."). A RICO claim "fails as a matter of law" if based on statutory violations that "are not within the enumerated predicate acts that may amount to a 'pattern of racketeering activity.'" *Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016). Because violations of the Smith Act, 18 U.S.C. § 2385, are not predicate acts under RICO, *id.* § 1961(1), Loomer's related allegations cannot support her RICO claim.

In any event, Loomer comes nowhere close to pleading a Smith Act violation. The statute prohibits various forms or advocacy or organizing with the intent to overthrow the government by force or violence. *See Dennis v. United States*, 341 U.S. 494, 499 (1951). The defendant must promote an "effort to instigate action to that end," and possess a "specific intent to accomplish [government] overthrow." *Yates v. United States*, 354 U.S. 298, 318, 331 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 8-10 (1978). None of Loomer's allegations plausibly establish these required elements. Any allegations that Meta advocated the overthrow of the government by removing content related to efforts to contest the 2020 presidential election are frivolous. Compl. ¶¶ 303, 307-310. And allegations that Meta allowed content encouraging others "to harass and disrupt the lives of government officials and post direct threats," *id.* ¶ 302, removed pro-law enforcement content, *id.* ¶ 306, or allowed anti-law enforcement content, *id.* ¶ 304-05, fall well short of plausibly alleging the existence of any efforts to overthrow the government, let alone that Meta advocated such efforts or "instigate[d] action to that end," *Yates*, 354 U.S. at 318.[14]

## III.    LOOMER HAS NOT STATED A CLAIM FOR RICO CONSPIRACY

Loomer's RICO conspiracy claim fails as well. Because she has not plausibly alleged a substantive RICO offense, *see supra* Part II, she "cannot claim that a conspiracy to violate RICO existed." *Howard*, 208 F.3d at 751. Her conspiracy claim fails for the additional reason that the Complaint does not plausibly allege an agreement between Meta and others to commit the alleged predicate acts. *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993). To survive a motion to dismiss a conspiracy claim, a plaintiff must put forward "allegations plausibly suggesting (not merely

---

[14] Like the alleged ATA predicate act, the alleged Smith Act predicate also is not plausibly part of any pattern of racketeering activity.  It is entirely unrelated to her wire fraud and extortion claims.

consistent with) agreement." *Twombly*, 550 U.S. at 557. Loomer's allegations that Meta "conspired and agreed to" engage in racketeering activity, *see* Compl. ¶ 368, are entirely conclusory. They do not "plausibly suggest an illicit accord." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Instead, they are precisely the sort of "bare allegations … [that] provide no basis to infer assent to contribute to a common enterprise." *Baumer*, 8 F.3d at 1347; *see also Iqbal*, 556 U.S. at 680 (alleged conduct "d[oes] not plausibly suggest an illicit accord" when it is "not only compatible with, but indeed … more likely explained by, lawful, unchoreographed free-market behavior."). *See supra* Part II.A.

## IV.     SECTION 230 BARS LOOMER'S CLAIMS

Loomer's claims fail for the independent reason that they are barred by Section 230. As the Ninth Circuit has repeatedly recognized, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230" as a traditional editorial function. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) (en banc). Section 230 bars a claim when: "(1) Defendant is a 'provider or user of an interactive computer service'; (2) the information for which Plaintiffs seeks to hold Defendant liable is 'information provided by another information content provider'; and (3) Plaintiffs' claim seeks to hold Defendant liable as the 'publisher or speaker' of that information." *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-1095 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017). Each condition is satisfied as to Loomer's claims.

*First*, both Meta and Mr. Zuckerberg are "provider[s]" of an "interactive computer service." Facebook is an "interactive computer service" that Meta provides. *See Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *2 (N.D. Cal. Apr. 27, 2022); *Sikhs for Justice*, 144 F. Supp. 3d at 1093; *see also Dyroff v. Ultimate Software Grp.*, 934 F.3d 1093, 1097 (9th Cir. 2019). As for Mr. Zuckerberg, Loomer seeks to hold him liable for "his role in making [an interactive computer service] available." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-1358 (D.C. Cir. 2014); Compl. ¶¶ 216-217, 282, 292-293. He is thus subject to the same Section 230 protections as Meta.

*Second*, Loomer's claims all arise out of content created by third parties, not by Meta. All of Loomer's claims complain about Meta's treatment of content that she and other third parties

posted to Facebook. *See* Compl. ¶¶ 276, 279, 284 (wire fraud); *id.* ¶¶ 256, 258 (Hobbs Act); *id.* ¶¶ 263, 265, 270 (Travel Act); *id.* ¶¶ 294-295, 298 (ATA); *id.* ¶ 302-309 (Smith Act). Loomer does not allege that either Meta or Mr. Zuckerberg played any role in the creation of the content that was displayed on or removed from Facebook. Because this content was "created entirely by individuals or entities" other than Meta and Mr. Zuckerberg, this Section 230 prerequisite is satisfied. *Sikhs for Justice*, 144 F. Supp. 3d at 1094; *see also, e.g.*, *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020); *Federal Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d. 1295 (N.D. Cal. 2019).

*Third*, Loomer's claims all seek to impose liability on Meta for its decision to remove her and others' content and thus impermissibly seek to treat Meta as a publisher of third-party content. "[W]hat matters is not the name of the cause of action," but whether the claim seeks to impose liability for "publishing conduct"—such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009). This flexible test prevents plaintiffs from "circumvent[ing] the CDA's protections through 'creative' pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). Courts have repeatedly held that Section 230 mandates dismissal of RICO claims alleging wire fraud where, as here, those claims are based on an interactive computer provider's publishing conduct. *E.g.*, *Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, 2017 WL 2728413, at *5 (D. Utah June 23, 2017) (alleged removal of positive reviews); *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va. 2015) (alleged publication of fraudulent ads); *Manchada v. Google*, 2016 WL 6806250, at *3 (S.D.N.Y. Nov. 16, 2016) (alleged publication of false content). Courts likewise have held that Section 230 bars claims based on publishing conduct when styled as extortion claims, *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *1 (N.D. Cal. June 18, 2019) (alleged removal of user content), *aff'd*, 808 F. App'x 597 (9th Cir. 2020), and material support claims, *Force*, 934 F.3d at 65 (alleged publication of content linked to terrorism).

Loomer seeks to hold Meta and Mr. Zuckerberg liable as publishers. She alleges that Meta committed wire fraud by denying her "promised access" to Facebook, Compl. ¶ 217, and enforcing Facebook's Community Standards against her and other third-party content creators in an

"artific[ial]" manner. *See id.* ¶ 344. Her extortion claims similarly rest on Meta's decisions to

"ban[]" her content and the content of other third parties that Meta "labeled a dangerous individual

or group." *See id.* ¶ 347. And each of the allegations Loomer makes in support of her ATA and

Smith Act claims involve the removal (or failure to remove) third-party content. *See id.* ¶¶ 288-

312. Under Section 230, "publication involves reviewing, editing, and deciding whether to publish

or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102 (citing

*Roommates.Com*, 521 F.3d at 1171). Section 230 therefore precludes liability for removal, as well

as publication, of third-party content. *See, e.g.*, *King v. Facebook, Inc.*, 2021 WL 5279823, at *11-

13 (N.D. Cal. Nov. 12, 2021) (account removed for violating Community Standards); *Fyk*, 2019

WL 11288576, at *1-2 (content removed for violating Community Standards); *Zimmerman v.

Facebook, Inc.*, 2020 WL 5877863, at *1 (N.D. Cal. Oct. 2, 2020) (access to user accounts

blocked); *Sikhs for Justice*, 144 F. Supp. 3d at 1095 (content removed). Though Loomer attempts

to plead around Section 230 for the fifth time, her claims all seek to impose liability on Meta for

its removal and publication of third-party content.  They are thus squarely barred by Section 230.

## V.    DISMISSAL SHOULD BE WITH PREJUDICE

The Complaint should be dismissed with prejudice because none of these defects can be

cured by amendment. This is Loomer's fourth lawsuit challenging Meta's decision to ban her

account. *See Sephery-Fard v. Select Portfolio Servicing, Inc.*, 2015 WL 1063070, at *5 (N.D. Cal.

Mar. 10, 2015) (denying leave to amend because of "Plaintiff's pattern of filing serial lawsuits

arising out of the same nucleus of facts and with respect to the same Property"). As explained

*supra* Part I, her claims are barred by res judicata. Her suit thus must be dismissed with prejudice.

*See Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods, Inc.*, 411 F. Supp. 3d 905,

918 (N.D. Cal. 2019). But even beyond that, before filing this motion, Meta's counsel sent

Loomer's counsel a letter identifying the defects with her claims and urging her to drop this lawsuit

or, if she believed these defects could be cured, to propose amendments that would address them.

*See* Barnet Decl. Ex. 1. Loomer nonetheless chose to proceed with this defective Complaint. Given

that choice, and because Section 230 is meant to protect against "protracted legal battles,"

*Roommates*, 521 F.3d at 1175, dismissal should be with prejudice.

Dated:  August 8, 2022

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:    */s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendants*
META PLATFORMS, INC. AND
MARK ZUCKERBERG

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on August 8, 2022, I electronically filed the above document with the

3  Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4  registered counsel.

5

6  Dated:  August 8, 2022                    By:   /s/ Sonal N. Mehta
                                                  Sonal N. Mehta

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28