SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendants
META PLATFORMS, INC. and
MARK ZUCKERBERG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAURA LOOMER, as an individual, LAURA LOOMER, in her capacity as a Candidate for United States Congress, and LAURA LOOMER FOR CONGRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., MARK ZUCKERBERG, in his capacity as CEO of Meta Platforms, Inc. and as an individual, TWITTER, INC., and JACK DORSEY, in his capacity as former CEO of Twitter, Inc. and as an individual, THE PROCTOR & GAMBLE COMPANY, DOES 1-100, individuals, <br><br> Defendants. | Case No. 3:22-cv-02646-LB <br><br> **META PLATFORMS, INC. AND MARK ZUCKERBERG'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** <br><br><br> Hon. Laurel Beeler <br> Courtroom B, 15th Floor <br> Date: March 9, 2023 <br> Time: 9:30 a.m. |

1

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.      LOOMER CANNOT AVOID THE RES JUDICATA BAR ...............................1

II.     LOOMER DOES NOT PLEAD A RICO OR RICO CONSPIRACY CLAIM .................3

      A.      Loomer Has Not Plausibly Alleged Conduct Of A RICO Enterprise ....................3

      B.      Loomer Has Not Plausibly Alleged A Pattern Of Racketeering Activity ...............5

      C.      Loomer Has Not Plausibly Alleged A RICO Injury Or Proximate Causation ........6

      D.      Loomer Has Not Plausibly Alleged Any RICO Predicate Act ..............................8

            1.      Loomer Has Not Plausibly Alleged Wire Fraud..........................................8

            2.      Loomer Has Not Plausibly Alleged Extortion ...........................................10

            3.      Loomer Has Not Plausibly Alleged An ATA Violation............................11

            4.      Alleged Smith Act Violations Are Not RICO Predicate Acts ...................12

      E.      Loomer Has Not Plausibly Alleged A RICO Conspiracy .....................................12

III.    SECTION 230 REQUIRES DISMISSAL OF LOOMER'S RICO CLAIMS...................12

IV.     THE AMENDED COMPLAINT MUST BE DISMISSED WITH PREJUDICE.............14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ..................................................................................................7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................11, 12

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ........................................................................................6

*Children's Health Defense v. Facebook, Inc.*,
    546 F. Supp. 3d 909 (N.D. Cal. 2021) .....................................................................7, 10

*Committee for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ..........................................................................................7

*Costantini v. Trans World Airlines*, 681 F.2d 1199
    (9th Cir. 1982)...............................................................................................................2

*Dangaard v. Instagram, LLC*, 2022 WL 17342198
    (N.D. Cal. Nov. 30, 2022)......................................................................................13, 14

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................................................8, 11

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ...............................................................12, 13

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir.
    2020) .............................................................................................................................2

*Fyk v. Facebook, Inc.*,
    2019 WL 11288576 (N.D. Cal. June 18, 2019)..............................................................14

*Garcia v. Scribner*,
    1998 WL 397895 (N.D Cal. July 10, 1998)....................................................................7

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N.D. Cal. 2019) ..........................................................................4

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021), *cert. granted*, 143 S. Ct. 80 (2022)......................................14

*Headwaters Inc. v. U.S. Forest Service*,
    399 F.3d 1047 (9th Cir. 2005) ................................................................2

*Hernandez v. Federal Home Loan*,
    663 F. App'x 518 (9th Cir. 2016) .........................................................15

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989)................................................................................6

*Howard v. America Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ........................................................3, 5, 12

*In re JUUL Labs, Inc., Marketing, Sales Practices, & Products Liability*
    *Litigation*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................4

*Lerner v. Colman*,
    26 F.4th 71 (1st Cir. 2022).................................................................5, 11

*Lesnik v. Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) ...................................................3

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ..............................................................10

*Lewis v. Lhu*,
    696 F. Supp. 723 (D.D.C. 1988) ............................................................7

*Mendoza v. Amalgamated Transit Union International*,
    30 F.4th 879 (9th Cir. 2022) ..................................................................2

*National Organization for Women, Inc. v. Scheidler*
    510 U.S. 249 (1994)................................................................................7

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d. 1018 (N.D. Cal. 2014) .................................................14

*Perryman v. Litton Loan Servicing, LP*,
    2014 WL 4954674 (N.D. Cal. Oct. 1, 2014).........................................10

*Rogalinski v. Meta Platforms, Inc.*,
    2022 WL 3219368 (N.D. Cal. Aug. 9, 2022) .......................................10

*Salameh v. Tarsidia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ..............................................................15

*Scheidler v. National Organization for Women, Inc.*,
    537 U.S. 393 (2003)..............................................................................10

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) .........................................................15

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ..................................................13, 14

*Skilling v. United States*,
   561 U.S. 358 (2010) .......................................................................................9

*Sun Savings & Loan Association v. Dierdorff*,
   825 F.2d 187 (9th Cir. 1987) ........................................................................6

*Swift v. Zynga Game Network, Inc.*,
   2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) .................................................14

*United States v. Al Kassar*,
   660 F.3d 108 (2d Cir. 2011)..........................................................................11

*United States v. Green*,
   592 F.3d 1057 (9th Cir. 2010) ......................................................................8

*United States v. McFall*,
   558 F.3d 951 (9th Cir. 2009) ........................................................................11

*United States v. Miller*,
   953 F.3d 1095 (9th Cir. 2020) ......................................................................9

*United States v. Milovanovic*,
   678 F.3d 713 (9th Cir. 2012) ........................................................................9

*Yuksel v. Twitter, Inc.*,
   2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ...............................................14

*Zimmerman v. Facebook, Inc.*,
   2020 WL 5877863 (N.D. Cal. Oct. 2, 2020)..................................................14

**DOCKETED CASES**

*Loomer v. Facebook, Inc.*,
   No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020),....................................1, 2, 3

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C. § 1346.......................................................................................................9

18 U.S.C. § 1961.......................................................................................................12

18 U.S.C. § 1964.......................................................................................................7

18 U.S.C. § 2339B....................................................................................................11

18 U.S.C. § 2385.......................................................................................................12

Fed R. Civ. P. 9(b) ...................................................................................................8

## OTHER AUTHORITIES

Restatement (Second) of Judgments ................................................................................3

**INTRODUCTION**

Laura Loomer's Amended Complaint must be dismissed with prejudice because she does not, and cannot, plead cognizable RICO claims against Meta Platforms, Inc. or Mark Zuckerberg (collectively "Meta"). As Meta explained in its pending Motion to Dismiss, ECF 80 ("MTD")—and before that, in its Motion to Dismiss her original Complaint, ECF 59; and before *that*, in a letter to Loomer's counsel asking her to withdraw her Complaint before wasting the Court's and the parties' time adjudicating these issues, MTD, Ex. 1—binding legal authority precludes the relief that Loomer seeks. *First*, her RICO claims are rendered res judicata by the with-prejudice dismissal of her previous suit over her removal from Facebook. *Second*, even taken as true, her allegations fail to establish the required elements of civil RICO or RICO conspiracy. *Third*, Section 230 of the Communications Decency Act bars her attempt to hold Meta liable for its alleged publishing conduct. In her overlong Opposition, Loomer refutes none of these arguments. She instead reiterates her Amended Complaint's conclusory assertions. She also warns that, given the chance, she will amend her pleadings again to double down on her most outlandish and irrelevant claims, none of which would cure the legal defects Meta has identified. Enough is enough. Loomer has demonstrated that she is unwilling to seriously engage with the legal framework that governs—and forecloses—her suit. The Court should dismiss the Amended Complaint with prejudice.

**ARGUMENT**

**I.    LOOMER CANNOT AVOID THE RES JUDICATA BAR**

This suit is nothing more than an attempt by Loomer to recast her complaints over Meta's removal of her Facebook account as RICO claims. Loomer admits she "previously sued Defendants Facebook and Twitter for her removal from these platforms." Plfs.' Omnibus Memo. in Opposition to Defs.' Mot. to Dismiss, ECF 87, at 12 ("Opp."). And she does not dispute that she voluntarily dismissed one of those previous suits with prejudice. Notice of Voluntary Dismissal, *Loomer v. Facebook, Inc.*, No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020), ECF No. 88 ("*Loomer I*"). As Meta's MTD explained (at 6-7), res judicata bars her claims because they "arise out of the same transactional nucleus of facts" as those she previously abandoned.

1    *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).[1]

2          Loomer fails to respond to Meta's argument that her voluntary dismissal in *Loomer I*

3    precludes this suit. Instead, her attempt to avoid res judicata (at 12-13) centers around "new

4    information" post-dating the judgment in *Freedom Watch*, a different suit that she once brought—

5    and lost—against Meta concerning her removal from Facebook. *See* MTD 5. But Loomer cannot

6    overcome res judicata by arguing that *Freedom Watch* does not bar this suit because, as Meta

7    explained (at 6-7), her suit is independently barred by the *Loomer I* judgment. That is dispositive.

8    But beyond that, Loomer's choice to focus on a different prior suit and ignore the preclusive

9    judgment underscores how similar and overlapping *all* of these lawsuits are, even in her view.

10         In any event, Loomer offers no explanation for how the purportedly "new information" she

11   identifies (at 12-13) furthers any of her claims. She points to a single conversation between Meta

12   and the FBI that she alleges occurred in the weeks preceding the 2020 election, *more than a year*

13   *after her removal from Facebook. See* Am. Compl. ¶¶ 1-3, 20-23, 254-261. Even assuming this

14   conversation suggests collusion between Meta and the FBI—it does not—Loomer does not allege

15   that this collusion was even happening at the time that Meta removed her account, let alone caused

16   her account removal. Loomer's "new information" therefore has no bearing on her RICO claims.

17         To the limited extent that Loomer seeks to rely on this "new information," her reliance is

18   misplaced because it brings her no closer to pleading a cognizable claim. *See infra*, pp. 4, 10.

19   Loomer's new allegations are thus "scarcely enough to establish that the instant lawsuit arises out

20   of a different 'transactional nucleus of facts' than that which generated" the suit she voluntarily

21   dismissed. *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982) (affirming

22   dismissal based on res judicata because allegations in two suits were "virtually identical" aside

23   from "one additional falsehood" that the appellant claimed to have unearthed). Even alleging

24   "somewhat different legal theories and a somewhat broader range of related conduct and damages

25   does not alter the underlying fundamental identity of the suits under the Restatement's same-

26   transaction test." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022).

27

28   [1] Internal citations omitted and emphasis added throughout, unless otherwise noted.

Loomer's "new" allegations are by no means "material," as required to avoid the res judicata bar. *See* Restatement (Second) of Judgments § 24, cmt. f ("*Material* operative facts occurring after the decision of an action with respect to the same subject matter may … be made the basis of a second action not precluded by the first."). As such, even if Loomer's alleged new facts "occur[ed] after" she voluntarily dismissed *Loomer I*, her argument nevertheless fails.

## II.     LOOMER DOES NOT PLEAD A RICO OR RICO CONSPIRACY CLAIM

### A.     Loomer Has Not Plausibly Alleged Conduct Of A RICO Enterprise

As Meta explained (at 10-11), Loomer cannot adequately plead an association-in-fact enterprise by alleging only lawful parallel conduct or acts indistinguishable from the operation of a legitimate business. Loomer does not dispute these principles. And these principles foreclose her arguments (at 25-26) that routine decisions about what content to allow on Facebook or Twitter can establish a RICO enterprise among Defendants.

*First*, Loomer identifies no non-conclusory allegations of any coordination between Meta and Twitter. Instead, her claim (at 25-26) that Meta and Twitter "colluded with one another" and "acted together" "to determine which individuals to ban from their Platforms," is based entirely on allegations that Meta and Twitter formed "a wide-ranging conspiracy involving social media giants," Am. Compl. ¶ 3, and constituted "members of an enterprise," *id.* ¶ 37; *see also id.* ¶¶ 350, 359-360. Such "conclusory allegations are insufficient to preclude dismissal." *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000); *accord Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 959 (N.D. Cal. 2019) (dismissing RICO claim that relied on "boilerplate" enterprise allegations). The remaining allegations she cites merely describe distinct efforts by each company to combat abuse on its respective service. *E.g.*, Am. Compl. ¶¶ 57-69, 72-74, 89, 91-98 (describing companies' content moderation policies); *id.* ¶ 159-215 (describing companies' content moderation decisions). As Meta explained (at 10-11) and Loomer does not dispute, such allegations of "lawful parallel conduct" are not enough to plead a RICO enterprise.[2]

---

[2] Loomer also offers no support for her suggestion (at 26 n.3) that Meta and Twitter formed a RICO enterprise by "retain[ing] the same law firms." RICO surely does not preclude two companies from each independently seeking out the same attorneys with relevant experience and subject-matter expertise to defend themselves in separate lawsuits.

*Second*, Loomer cannot piece together a RICO enterprise—as she attempts to (at 26)—from Meta's alleged interactions with Procter and Gamble ("P&G"), Am. Compl. ¶ 234-239, or unnamed FBI officials, *id.* ¶ 254-258. Loomer does not refute Meta's argument (at 10-11) that her allegations fail to plead that either P&G or the FBI caused Meta to take any action at all, let alone action that demonstrates the existence of a RICO enterprise. She at most alleges that Meta applied preexisting policies to remove or demote content, as Meta routinely does. According to Loomer, Meta did so on one occasion after hearing concerns from P&G—an advertiser that shares Meta's legitimate business interest in protecting the integrity of Facebook—and on another occasion after federal law enforcement officers contacted Meta about an anticipated spread of misinformation. Even taken as true, allegations that Meta acted in line with its ordinary business motives do not establish a RICO enterprise. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough.").

*Finally*, Loomer offers no response to Meta's arguments (at 11) that she has failed to plausibly allege that Meta and Mr. Zuckerberg alone formed a RICO enterprise or that Mr. Zuckerberg can be held individually liable under RICO. Instead, Loomer merely insists on her say-so (at 24) that, along with P&G, Meta and Mr. Zuckerberg "directed the affairs of the [alleged] enterprise by coordinating which individuals should be banned." But as explained just above, Loomer does not plausibly allege P&G's involvement in any RICO enterprise. And any coordination between Meta and Mr. Zuckerberg cannot establish an association-in-fact enterprise, which requires "the presence of some third-party, separate and apart from the company and its officers and employees." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 601 (N.D. Cal. 2020). Loomer does not allege that Mr. Zuckerberg was involved in the removal of her account. To the extent that Loomer alleges Mr. Zuckerberg participated generally in Meta's content moderation efforts, her allegations, at most, support the inference that he did so "to serve [Meta's] general corporate interests, not the interests of the theoretically separate [association-in-fact] [e]nterprise." *Id.* Indeed, Loomer's argument (at 24-27) that her account was removed to appease an advertiser supports the inference that the removal was motivated by Meta's business interests. While Loomer might disagree with Meta about how its

policies should be enforced, she has not plausibly pleaded that Meta or Mr. Zuckerberg made these content moderation decisions for any purpose other than the general operation of the company.

### B. Loomer Has Not Plausibly Alleged A Pattern Of Racketeering Activity

Loomer likewise fails to plead that the alleged predicate acts are sufficiently related to form a RICO pattern. As Meta explained (at 12), RICO predicates cannot form a pattern if they lack a similar "purpose, result, victim, and method." *Howard*, 208 F.3d at 749. Loomer does not dispute that the alleged predicates have no related victim or result, and she is wrong that they share a similar method and purpose.

The supposed common method that Loomer identifies (at 27)—"banning certain individuals and ideas from social media Platforms"—is cast at far too "high [a] level of generality" to satisfy the relatedness requirement. *See Lerner v. Colman*, 26 F.4th 71, 85 (1st Cir. 2022) (no relatedness where common method alleged was that predicates "both 'used fraudulent mailing and wires'"). And in any event, Loomer does not plead even this loose connection. Instead, Loomer alleges that Meta carried out each predicate through distinct methods: wire fraud through public statements that Loomer tries to twist into representations that politicians—including those, like Loomer, who were already banned—would have access to Facebook without "third party review or censorship," Am. Compl. ¶¶ 224-230, 296; extortion by labeling her a "dangerous individual" when her account was removed, *id.* ¶ 364; and material support by *failing* to remove all terrorist content from Facebook, *id.* ¶ 313. No common thread binds each of these theories.

Loomer likewise fails to plausibly allege any common purpose. Indeed, rather than one purpose, she claims (at 27) three different motivations for the alleged predicates: "suppressing speech, controlling public narrative, and undermining American elections." And these are not actually the purposes identified in her Amended Complaint. While she alleges that Meta extorted her and others in part to restrain speech, Am. Compl. ¶ 364-365, she asserts that Meta committed wire fraud to "procure millions of dollars in advertisement purchases," *id.* ¶ 297, and she alleges no motivation at all for Meta's alleged ATA violations. Meta's alleged Smith Act violations are not racketeering activity, meaning they cannot form part of a RICO pattern. *See Howard*, 208 F.3d at 746 (RICO pattern defined as two or more "'acts of racketeering activity'").

1          Loomer also fails to rebut Meta's argument (at 12-13) that her allegations describe only

2  the type of "isolated or sporadic acts" that cannot establish the "threat of continuing activity"

3  necessary to plead a RICO pattern. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th

4  Cir. 1987). Loomer claims (at 27) that Meta has admitted it bans conservative accounts (but

5  "allow[s] terrorists, dictators, and foreign propagandists to remain on" Facebook) as part of its

6  "regular business practices." But she cites to no such admission or any other allegation that could

7  support that claim. At bottom, Loomer's theory is that Meta occasionally bans some accounts that

8  she would not ban, or does not ban other accounts that she would remove, in the course of

9  performing its entirely lawful content moderation functions. That hardly establishes any

10 continuous future threat of Meta committing predicate acts of wire fraud, extortion, or material

11 support as part of its "regular way of doing business." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

12 229, 242 (1989).[3] And Loomer's claim (at 28) that Meta "regularly coordinate[s] with the

13 government and other paying entities" to make content moderation decisions is based on just two

14 alleged interactions, neither of which helps her allege any predicate act, let alone an ongoing

15 pattern of illicit conduct. Am. Compl. ¶ 235, 254-255.

16         **C.      Loomer Has Not Plausibly Alleged A RICO Injury Or Proximate Causation**

17         As Meta explained (at 13), the Amended Complaint fails to plead a cognizable RICO injury

18 because it does not establish a "concrete financial loss" proximately caused by the alleged

19 predicate acts. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). Rather

20 than attempt to overcome this hurdle, Loomer appears to argue (at 14-16) that she need not plead

21 any tangible financial injury and can instead rely on allegations of "reputational damage,

22 deprivation of equal access to voters, … loss of votes," and loss of purported "rights" to manage

23 and share campaign profiles, "spread knowledge," and "lobby donations from users" on Facebook.

24 That is wrong. The Ninth Circuit "requires that a plaintiff asserting injury to property allege

25 'concrete financial loss,'" not merely intangible injuries. *Syngenta*, 519 F.3d at 975. Contrary to

26

27 ───────────────
   [3] When it comes to material support, the Amended Complaint in fact incorporates the
28 commonsense explanation that any terrorist content on Facebook exists in spite of, not because of,
   Meta's content moderation efforts. Am. Compl. ¶¶ 156, 312 n.252; MTD 21 & Ex. 13.

what Loomer argues (at 14), *National Organization for Women, Inc. v. Scheidler* does not relieve her of this requirement. Its holding that a RICO *enterprise* needs no economic motive, *see* 510 U.S. 249, 261 (1994), in no way relates to the statutory requirement that a RICO *plaintiff* must demonstrate an injury to business or property, *see* 18 U.S.C. § 1964(c). Citing an out-of-circuit district court decision, *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988), Loomer argues (at 14) that she can meet this requirement based on reputational damage alone. But as Meta explained and Loomer fails to acknowledge, the law in this circuit requires a tangible financial injury. At most, *Lewis* stands for the idea that "damage to business reputation" can establish a RICO injury when it "result[s] in financial loss." *Garcia v. Scribner*, 1998 WL 397895, at *3 (N.D Cal. July 10, 1998) (citing *Lewis*, 696 F. Supp. at 727). That is why courts in this District repeatedly hold that damage to reputation or goodwill alone is not cognizable under RICO. MTD 13 (collecting cases).[4]

Loomer likewise fails to demonstrate that her remaining alleged injuries—lost employment opportunities, lost future profits, and lost campaign donations—are sufficiently non-speculative to establish the required proximate cause. *See* MTD 13-14. As an initial matter, Loomer is wrong that she can satisfy RICO's proximate cause requirement by pleading that Meta injured her "indirectly." Opp. 14-16. To the contrary, the Supreme Court has repeatedly held that a plaintiff must identify "'some direct relation between the injury asserted and the injurious conduct alleged,'" and has therefore refused to "permit RICO suits by parties who have been injured only indirectly." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006). Loomer identifies no cognizable injury. She argues (at 15-16) that Meta's removal of her account drove potential donors away from her and toward her political rivals. But she nowhere explains how banning her account directly caused Loomer to lose campaign contributions, especially given her insistence that she remained a prodigious fundraiser after her removal from Facebook. *See* MTD 14. Loomer also

---

[4] Loomer purports to quote (at 16) *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) as holding that "a nonprofit [candidate's] reputational damage or loss of donation revenue constitutes actionable commercial injury." But that quote is not from *Yost* (a Lanham Act case). It is from a brief filed in another suit against Meta, *see* Plaintiff's Opp. to Facebook & Mark Zuckerberg's Mot. to Dismiss, *Children's Health Defense v. Facebook, Inc.*, 2021 WL 1867638 (N.D. Cal. Feb. 5, 2021), in support of an argument that the court rejected in that case, *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 937 (N.D. Cal. 2021) (appeal pending).

speculates (at 15) that unidentified potential supporters were "deterr[ed]" from making contributions to her because Meta "incorrectly label[ed] [her] page as false" and otherwise subjected her account to "deceptive 'fact-checking' notifications." But that theory appears nowhere in the Amended Complaint, which does not allege that Meta labeled her page as false or otherwise fact-checked her profile.[5] Finally, Loomer argues (at 16) that removing her account injured other Facebook users who could no longer follow or donate to Loomer, but even setting aside that Loomer concedes that removal of her account did "not directly result in a financial loss" to those users, RICO requires her to adequately plead her *own* injury proximately caused by Meta's purported predicate violations. *See Anza*, 547 U.S. at 461. She has not.

### D.    Loomer Has Not Plausibly Alleged Any RICO Predicate Act

### 1.    Loomer Has Not Plausibly Alleged Wire Fraud

Loomer refutes neither defect that Meta identified in her attempt to establish that Meta or Mr. Zuckerberg committed wire fraud. *First*, as Meta explained (at 15-17), the Amended Complaint does not plead, with the particularly required by Rule 9(b), that Meta or Mr. Zuckerberg made any "affirmative, material misrepresentation" regarding access to Facebook. *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010). Loomer attempts to respond by pointing to various allegations (at 29-30) but she never addresses the specific defects that Meta identified. Meta explained (at 16 & n.11), for example, that alleged public statements by Mr. Zuckerberg and a Meta spokesperson that tech companies should not "censor politicians," Am. Compl. ¶ 223; *see id.* ¶ 298-299, are expressions of opinion and therefore not actionable as fraud. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014). Loomer offers no response. Meta explained (at 16-17) that none of the statements represent that banned accounts (like Loomer's) would be restored. Again, Loomer offers no response. Meta further explained (at 16) that any statements suggesting an exemption for politicians was limited to Meta's fact-checking

---

[5] Nor would such allegations state a sufficiently direct RICO injury. There are "many reasons" why Loomer's campaign may not have attracted the donor support she expected, "and it would require a complex assessment to establish what portion" of lost donations were the direct result of a fact-checking label affixed to Loomer's Facebook page, *Anza*, 547 U.S. at 459—a page that was removed months before Loomer even announced her candidacy. Am. Compl. ¶¶ 218-219.

1    policy, and did not exempt politicians from the dangerous individuals and organizations policy

2    under which Loomer's account was removed, which in any event occurred well before she

3    announced her candidacy. *See* Am. Compl. ¶ 298 & n.240. Yet again, Loomer offers no response.[6]

4          *Second*, Meta explained (at 17-18) that Loomer's wire fraud theory also fails because

5    Loomer did not allege that Meta or Mr. Zuckerberg schemed to "obtain money or property, i.e.,

6    … to cheat someone out of something valuable" through their supposedly deceptive statements.

7    *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). Loomer does not dispute that the

8    Amended Complaint fails to plausibly allege that Meta or Mr. Zuckerberg acted with any intent to

9    obtain money or property from her. Instead, Loomer argues (at 29-30) that she pleads the requisite

10   scheme to defraud through her conclusory allegations that Meta and P&G sought to deprive her of

11   "honest services." Am. Compl. ¶ 289-292.[7] But this argument also falls short because Loomer's

12   theory that she "was deprived of her intangible right not to have her reputation damaged," Opp.

13   30, cannot establish honest services fraud. As the Supreme Court held in *Skilling v. United States*,

14   honest services fraud "covers only bribery and kickback schemes." 561 U.S. 358, 368 (2010)

15   (imposing a limiting construction on honest services fraud statute, 18 U.S.C. § 1346). Loomer does

16   not claim that she alleges either. Instead, she cites (at 29) various cases decided before *Skilling*

17   narrowed the scope of the honest services fraud statute. Those cases are no longer good law.

18   Further, the Ninth Circuit has held that "breach of a fiduciary duty is [also] an element of honest

19   services fraud." *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012). Because

20   Loomer's allegations make clear that she and Meta had, at most, "an arm's-length commercial

21   relationship … in which neither reposed trust in, nor professed a duty of loyalty to, the other,"

22   Meta owed her no fiduciary duty and she cannot state a claim for honest services fraud. *Perryman*

23   *v. Litton Loan Servicing, LP*, 2014 WL 4954674, at *15 (N.D. Cal. Oct. 1, 2014).[8]

24   ---

     [6] Loomer's remaining citations to the Amended Complaint do not describe any statements made
25   by Meta or Mr. Zuckerberg that she alleges were misleading.

26   [7] 18 U.S.C. § 1346 extends the wire fraud statute to fraudulent schemes "to deprive another of the
     intangible right of honest services."

27   [8] Even if Loomer had alleged bribery, kickbacks, or a breach of fiduciary duty, she cannot establish
28   honest services fraud by speculating that Meta's removal of her account benefited Loomer's
     political rivals by causing Facebook users to redirect their donations. Opp. 15-16. She still "has

## 2.   Loomer Has Not Plausibly Alleged Extortion

As Meta explained (at 18-20), Loomer's extortion claims against Meta and Mr. Zuckerberg fail for two reasons: She has not shown that Meta acted wrongfully because she cannot establish a "pre-existing right" to access Facebook that Meta could unjustifiably withhold, and she has not plausibly alleged that Meta actually obtained any property from her. *See* MTD 18 (citing cases).

Loomer attempts to overcome the first defect by arguing (at 31) that Meta was "acting as a State Actor" and violated her First Amendment rights when it allegedly suppressed her speech and interfered in her election. But Meta is not a state actor. *See Rogalinski v. Meta Platforms, Inc.*, 2022 WL 3219368, at *3-6 (N.D. Cal. Aug. 9, 2022) (appeal pending). Loomer makes no effort to explain how her allegations plead state action or a First Amendment violation. She instead cites (at 12, 31) allegations that, more than a year after removing Loomer's account, Meta suppressed unrelated news stories at the behest of the FBI. Loomer does not allege that the government was involved in her account removal. Even assuming that she intends to argue her account removal nonetheless constitutes state action under a "nexus" or "joint action" theory, the Amended Complaint supports neither. *See* 2022 WL 3219368, at *6 (no state action when private actor "may have used information from the government investigation, but its decision was still its own"); *id.* ("'One party supplying information to another party does not amount to joint action.'"). Beyond her erroneous state action theory, Loomer makes no attempt to rebut the well-established case law recognizing that users of websites like Facebook have no pre-existing legal right of access. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014).

Loomer likewise fails to overcome the second defect in her extortion theory. Loomer does not dispute that her "speech rights"—and any other form of intangible property she alludes to—do not constitute "something of value" that Meta "pursued" or "received" from *her. See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003). She instead appears to argue (at 31) that Meta extorted her by suppressing her speech in order to obtain advertising dollars from someone else—P&G. But to plead extortion, Loomer must establish that Meta "actually appropriate[d] (or

___

not alleged any facts to establish that [Meta], [its] associates, or any third party obtained money or property from deceived Facebook users." *Children's Health Defense*, 546 F. Supp. 3d at 941.

attempt[ed] to appropriate) *the victim's* property." *United States v. McFall*, 558 F.3d 951, 957 (9th Cir. 2009). Because she does not even attempt to do so, her extortion claims fail.

### 3.   Loomer Has Not Plausibly Alleged An ATA Violation

As Meta explained (at 20), Loomer's ATA allegations cannot support her RICO claim because this alleged predicate is not plausibly related to her wire fraud or extortion allegations. Loomer makes no attempt to establish that her ATA theory shares any purpose, result, or victim in common with her wire fraud or extortion theories. Instead, she argues (at 18) that the ATA theory "is connected to the wire fraud by communications present online and as a whole." Such a vague purported link cannot establish the requisite relatedness. *See Lerner*, 26 F.4th at 85. Loomer also appears to argue (at 17) that, because Meta removed her account under its dangerous individuals and organizations policy, but allegedly failed to remove every single instance of terrorist content from Facebook, one of Meta's advertisers must be a terrorist organization. Bald speculation cannot satisfy *Iqbal* and *Twombly*'s plausibility standard. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). And Loomer's unsupported assertion does nothing to connect her ATA allegations to her wire fraud or extortion theories.

Meta also explained (at 20-21) that Loomer did not plead material support because she has failed to identify any terrorist account or page that Meta or Mr. Zuckerberg knew of and declined to remove. *See United States v. Al Kassar*, 660 F.3d 108, 129 (2d Cir. 2011) (18 U.S.C. § 2339B requires that "the [alleged] aid be intentional and that the defendant know the organization he is aiding is a terrorist organization"). Loomer argues (at 32-33) that some terrorist groups have Facebook pages, and because Facebook has allegedly "generated hundreds of business pages promoting ISIS and Al Qaida," "[i]t is unlikely that these … pages remained undetected by Facebook." But Loomer's own Amended Complaint, and the sources it incorporates, explain that Meta removes a tremendous amount of terrorist content, and any remaining content has simply "fall[en] through the cracks." Am. Compl. ¶¶ 156, 312 n.252; MTD 21 & Ex. 13. Instead of pointing to "'facts tending to exclude the possibility that [this] alternative explanation is true,'" as she must, *Eclectic Props.*, 751 F.3d at 996-997, Loomer offers (at 32) nothing but her personal view that it is "unlikely that … [terrorist] pages remained undetected by Facebook." That falls far

short of "the line between possibility and plausibility of 'entitlement to relief,'" *Twombly*, 550 U.S. at 546, based on any ATA violation.

### 4.    Alleged Smith Act Violations Are Not RICO Predicate Acts

Finally, despite Meta explaining (at 21-22) that Smith Act violations are not RICO predicates, 18 U.S.C. § 1961(1) (racketeering activity does not include 18 U.S.C. § 2385), Loomer continues to press her frivolous claim that Meta and Mr. Zuckerberg attempted to overthrow the government. Indeed, Loomer appears to concede (at 28) that the RICO statute encompasses only specified offenses, but continues to argue that Meta violated the Smith Act, and threatens (at 33-34 n.4) to double down on that theory in another amended complaint. Loomer should not be permitted to further burden the Court or the parties with a theory that even she cannot defend.

### E.    Loomer Has Not Plausibly Alleged A RICO Conspiracy

Loomer's RICO conspiracy claim fails because, as explained above, and in Meta's Motion to Dismiss, she pleads no substantive RICO violation and no agreement among the purported enterprise participants to commit the predicate acts. *Howard*, 208 F.3d at 751 ("[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."). Loomer cannot overcome these defects by insisting (at 35) that she has established an agreement through allegations that some members of the purported enterprise "direct[ed] other members … to censor and ban certain speech and individuals." Just as Loomer has not pleaded that the supposed enterprise participants associated together for a common purpose based on her conclusory allegations that Meta coordinated its actions with Twitter, or her assertions that Meta followed the directions of the FBI and its advertiser P&G, or her description of conduct by Mr. Zuckerberg in line with his role as Meta's CEO, *see supra* Section II.A, she has not plausibly alleged an agreement among these parties to engage in racketeering activity.

## III.    SECTION 230 REQUIRES DISMISSAL OF LOOMER'S RICO CLAIMS

As Meta explained (at 23-25), Loomer's claims are barred by Section 230 because she seeks to impose liability on "interactive computer service" providers for "deciding whether to exclude material that third parties seek to post online." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) (en banc). Loomer does not

dispute that Meta and Mr. Zuckerberg are providers of an "interactive computer service," arguing instead (at 21-23) that Meta falls outside Section 230 because it acted as an "information content provider" rather than a publisher of third-party content. She is wrong.

Loomer asserts (at 21-23) that Meta "is clearly a content provider" because Meta at times manipulates, filters, groups together, and fact-checks content, promotes advertisements, and "control[s] the narrative."[9] This does not suffice. To remove Meta's alleged conduct from the ambit of Section 230, Loomer must plausibly allege that Meta was responsible for "creating or developing the *content at issue*" in her RICO claims. *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (citing *Roommates.Com*, 521 F.3d at 1162). But Loomer's claims are based on Meta's publishing conduct with respect to content created by Loomer and other third parties, not Meta. She does not explain how the acts of wire fraud, extortion, material support, and government overthrow that she alleges are premised on content that Meta created—or even manipulated, filtered, or fact-checked. Indeed, contrary to her suggestion (at 23), she does not cite any allegations that Meta fact-checked or otherwise "displayed" its own content on any particular post. Loomer's arguments that Meta contributes to content on Facebook *in general* cannot establish that Meta created the content at issue here and thus cannot deprive Meta of Section 230's protection against her RICO claims.

Contrary to Loomer's Opposition (at 22), the recent decision in *Dangaard v. Instagram, LLC*, 2022 WL 17342198, at *4 (N.D. Cal. Nov. 30, 2022), does not establish that Meta created the content at issue here. *Dangaard* involved highly unusual and idiosyncratic allegations not present here. In *Dangaard*, plaintiffs alleged that their rivals paid Meta employees to "demote[] or delete[] plaintiffs' accounts and posts." 2022 WL 17342198, at *1. In their complaint, the *Dangaard* plaintiffs pointed to several suspicious wire transfers that raised the inference that "defendants' employees accepted bribes … to blacklist competitors" of the paying rival. *Id.* at *2. These allegations were central to *Dangaard*'s holding that Section 230 did not apply because Meta

---

[9] Loomer seems to argue (at 23) that Meta could also be liable for "collecting, storing, and using consumers' data, targeted ads, deceptive ads, and subjecting users to scams and counterfeit merchandise." But Loomer nowhere alleges that Meta engaged in any of these acts.

defendants were alleged to have "purposefully designed their platforms to filter posts and accounts in an anticompetitive manner" instead of filtering content "in a neutral manner." *Id.* at *4. No similar facts are alleged here. Despite Loomer's argument (at 22) that Meta uses "'filtration tools' … designed to facilitate anticompetitive conduct," she nowhere alleges that Meta took any action aimed at harming competition. And as Meta explained (at 24-25), courts regularly hold that a website's exercise of editorial judgment, such as Meta's removal of Loomer's account, is protected under Section 230—even in the face of allegations that the website removed content for an unlawful purpose. *E.g.*, *Sikhs for Justice*, 144 F. Supp. 3d at 1095 (content removed for allegedly discriminatory purpose); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *1-2 (N.D. Cal. Oct. 2, 2020) (allegedly unconstitutional purpose); *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *1 (N.D. Cal. June 18, 2019) (allegedly anticompetitive purpose).[10]

Finally, Loomer argues (at 23) that Meta has no protection against RICO claims due to a carveout in Section 230(e)(1). She is wrong. "Courts have consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes." *Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021), *cert. granted*, 143 S. Ct. 80 (2022). Section 230(e)(1) "does not provide any exception from Section 230 immunity for civil claims premised upon federal criminal statutes—including civil RICO claims." *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022).

## IV.   THE AMENDED COMPLAINT MUST BE DISMISSED WITH PREJUDICE

Loomer's Amended Complaint must be dismissed with prejudice because its defects cannot be cured, nor has Loomer shown any interest in curing them after multiple opportunities to do so. Instead, she has expressed her willingness to seek additional amendments for the sole purpose of adding frivolous allegations in support of her unsupportable claims. For example, she states (at 34 n.4) that she will use any further amendment opportunity to supplement her unserious Smith Act

---

[10] The other cases Loomer cites (at 23) are likewise distinguishable. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d. 1018, 1043-1045 & n.12 (N.D. Cal. 2014) (website materially contributed to alleged illegality of content by issuing guidelines that "encourage[d] data theft"); *Swift v. Zynga Game Network, Inc.*, 2010 WL 4569889, at *4-6 (N.D. Cal. Nov. 3, 2010) (website designed games to "lure consumers into … allegedly fraudulent transactions").

allegations; but as Meta explained (at 21-22), Smith Act violations are not RICO predicate acts, so no amendment can render these allegations relevant to her RICO claims. Loomer also seeks (at 13 n.2) to add allegations that purportedly relate to her assertion that Meta and Twitter violated the First Amendment by "interfer[ing] with American elections" in concert with government officials. At the outset, these proposed new allegations involve only Twitter, and should not affect the dismissal of Loomer's claims against Meta. But in any case, Meta is not a state actor capable of violating the First Amendment and Loomer articulates no cognizable theory of First Amendment harm; even if Loomer could establish a First Amendment violation, it would not cure her deficient RICO claims. *See supra* p.10. And Loomer's claim (at 9 n.1) that she has discovered the identities of additional defendants she plans to sue does not support leave to amend because Loomer does not explain how adding those parties salvages her RICO claims.

The Court thus has ample grounds to deny amendment here. "'[D]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.'" *Salameh v. Tarsidia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). And the Amended Complaint cannot be saved because no allegations could overcome the bar to Loomer's RICO claims imposed by res judicata or Section 230. *See Hernandez v. Federal Home Loan*, 663 F. App'x 518, 519-520 (9th Cir. 2016) (affirming denial of leave to amend complaint "barred by the doctrine of claim preclusion" because "amendment would have been futile"); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) (amendment futile because claim was "barred by the CDA").

Nor should this Court grant Loomer leave to amend her complaint so she can attempt once more to allege a cognizable RICO claim. Loomer filed her Original Complaint in May 2022. ECF 1. Even after Meta explained the flaws in her RICO claims in a July 8, 2022 letter to her counsel, MTD, Ex. 1; an August 8, 2022 Motion to Dismiss, ECF 59; and the pending MTD; Loomer has continued to press the same insufficient RICO allegations. And as described in detail above, her Opposition makes clear that she is not willing to engage seriously with the legal standards governing her RICO claims. "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh*, 726 F.3d at 1133. This case demands the exercise of that discretion, and dismissal of the Amended Complaint with prejudice.

Dated:  February 13, 2023

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:    */s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendants*
META PLATFORMS, INC. AND
MARK ZUCKERBERG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated:   February 13, 2023

By:   <u>*/s/ Sonal N. Mehta*</u>
        Sonal N. Mehta