**WILLKIE FARR & GALLAGHER LLP**
JONATHAN A. PATCHEN (SBN 237346)
jpatchen@willkie.com
YUHAN ALICE CHI (SBN 239521)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, California 94111
Telephone: (415) 858-7400

MICHAEL GOTTLIEB (DCBN 974960)*
mgottlieb@willkie.com
MERYL CONANT GOVERNSKI (DCBN 1023549)*
mgovernski@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 303-1442

KRISTIN E. BENDER (NYBN 5513775)*
kbender@willkie.com
Citypoint, 1 Ropemaker Street
London EC2Y 9AW, United Kingdom
Telephone: +44 203 580 4833

*Pro Hac Vice Pending*

Attorneys for Defendants
**TWITTER, INC. and JACK DORSEY**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Laura Loomer, et al.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>Meta Platforms, Inc. d/b/a Meta f/k/a Facebook, Inc., Mark Zuckerberg, in his capacity as CEO of Facebook, Inc. and as an individual, Twitter, Inc. and Jack Dorsey, in his capacity as former CEO of Twitter, Inc. and as an individual, The Proctor & Gamble Company, Does 1-100, Individuals,<br><br>    Defendants. | Case No. 3:22-CV-2646-LB<br><br>**REPLY IN SUPPORT OF DEFEDANTS TWITTER, INC., AND JACK DORSEY'S MOTION TO DISMISS**<br><br>Date:  March 9, 2023<br>Time:  9:30am<br>Place:  Zoom<br><br>Complaint Filed: May 2, 2022<br>FAC Filed: August 29, 2022 |

# TABLE OF CONTENTS

I. LOOMER CONCEDES THAT THE ELEMENTS OF RES JUDICATA ARE MET ........................................................................................................................... 1

II. LOOMER FAILS TO AVOID SECTION 230 IMMUNITY............................................ 3

III. LOOMER LACKS LEGAL STANDING TO BRING THIS LAWSUIT ........................ 7
    A. Loomer Fails To Demonstrate RICO Standing ...................................................... 7
    B. For the Same Reason, Loomer Fails to Demonstrate Article III Standing ........... 10

IV. THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM ........................ 10
    A. Count One Warrants Dismissal for Failure to State a RICO Violation ................ 10
        1. Loomer fails to allege an association-in-fact enterprise ........................... 10
        2. Loomer fails to allege that Twitter directed any alleged enterprise.......... 11
        3. Loomer fails to allege racketeering activity.............................................. 12
        4. Loomer fails to allege a pattern of racketeering activity .......................... 14
    B. Count Two Warrants Dismiss for Failure to State a RICO Conspiracy Claim................................................................................................................... 14

V. LOOMER'S CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED............... 14

VI. CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
    603 F. Supp. 3d 857 (N.D. Cal. 2022) ...................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................8, 14

*Barnes v. Yahoo!, Inc.*,
    570 F. 3d 1096 (9th Cir. 2009) .............................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................8

*Berenson v. Twitter*,
    2022 WL 1289049 (N.D. Cal. Apr. 29, 2022) .......................................................................3

*Dangaard v. Instagram, LLC*,
    2022 WL 17342198 (N.D. Cal. Nov. 30, 2022) ...................................................................5

*Dobbs v. Jackson Women's Health Org.*,
    142 S. Ct. 2228 (2022) ..........................................................................................................2

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .............................................................................................4, 6

*Feng v. County of Santa Clara*,
    2019 WL 7194475 (N.D. Cal. Dec. 26, 2019) (Beeler, J.) ...................................................8

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020),
    and (2) .................................................................................................................................1, 2, 3

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ...................................................................................................6

*Kimzey v. Yelp Inc.*,
    21 F. Supp. 3d 1120 (W.D. Wash. 2014), *aff'd sub nom.*, 836 F.3d 1263 (9th
    Cir. 2016) ............................................................................................................................6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .............................................................................................4

*King v. Facebook, Inc.*,
    845 F. App'x 691 (9th Cir. 2021) ...................................................................................5

*Lewis v. Lhu*,
    696 F. Supp. 723 (D.D.C. 1988) .....................................................................................7

*Lucero v. IRA Servs., Inc.*,
    2019 WL 5812175 (N.D. Cal. Nov. 7, 2019) (Beeler, J.) ............................................14

*Mazur v. eBay Inc.*,
    2008 WL 2951351 (N.D. Cal. July 25, 2008) ...............................................................12

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994) .......................................................................................................7

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022) .........................................................................5

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...........................................................................5

*Rangel v. Dorsey*,
    2022 WL 2820107 (N.D. Cal. July 19, 2022) ................................................................5

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) .......................................................................................14

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) ..................................................................................5

*Smith v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*,
    2019 WL 2525185 (N.D. Cal. June 19, 2019) ..............................................................3

*Swift v. Zynga Game Network, Inc.*,
    2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) ................................................................5

*Thomas v. Shree Jalaram LLC*,
    2019 WL 3503086 (N.D. Cal. Aug. 1, 2019) (Beeler, J.) .............................................1

*U.S. v. Liquidators of European Fed. Cred. Bank*,
    630 F.3d 1139 (9th Cir. 2011) .......................................................................................1

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) .....................................................................................14

*United States v. Rogers*,
    389 F. Supp. 3d 774 (C.D. Cal. 2019) .........................................................................13

*Vahora v. Valley Diagnostics Lab., Inc.*,
  2020 WL 42242 (E.D. Cal. Jan. 3, 2020) ................................................................................3

*Western Sys., Inc. v. Ulloa*,
  958 F.2d 864 (9th Cir. 1992) ...................................................................................................3

*Whole Woman's Health v. Hellerstedt*,
  579 U.S. 582 (2016)..................................................................................................................2

*Yuksel v. Twitter, Inc.*,
  2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) .....................................................................5, 6

*Zango, Inc. v. Kaspersky Lab, Inc.*,
  568 F.3d 1169 (9th Cir. 2009) ..................................................................................................6

**Statutes**

18 U.S.C. § 1961(1)..........................................................................................................................12

18 U.S.C. § 1962(d) ..........................................................................................................................14

18 U.S.C. § 2385.........................................................................................................................12, 13

47 U.S.C. § 230(e)(1)..........................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................................................13

First Amendment .........................................................................................................................5, 13

L.R. 3-4(c)(2) ......................................................................................................................................1

L.R. 7-4(b) ..........................................................................................................................................1

Plaintiffs' Opposition (Dkt. 87 ("Opp'n")) to the Twitter Defendants' Motion to Dismiss (Dkt. 79 ("Mot.")) failed to show why this Court should not grant the motion without leave to amend. Plaintiffs' claims are facially barred as a matter of law because they are precluded by res judicata (*infra* § I) and Section 230 (*infra* § II). The First Amended Complaint ("FAC") further warrants dismissal for failure to sufficiently plead RICO or Article III standing (*infra* § III) or any of the elements required to state RICO claims (*infra* § IV).[1]

## I. LOOMER CONCEDES THAT THE ELEMENTS OF RES JUDICATA ARE MET

Loomer (the Plaintiffs) concedes that two of the three required elements of res judicata are met here: (1) a final judgment in her previous lawsuit against Twitter, *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020), ("*Freedom Watch*") and (2) privity between the parties in this case and in *Freedom Watch*. Opp'n at 12–13; Mot. at 18–22.[2] Loomer's only argument is that there is not an identity of claims between the two lawsuits because "new factual developments reveal that Defendants have been acting as State Actors by colluding with the Federal Bureau of Investigation and the White House…". Opp'n at 12. This is insufficient to overcome res judicata.

The alleged "new factual developments" do not change Loomer's basis for filing suit: Twitter's 2018 decision to remove Loomer's account. FAC ¶ 217 (pleading injury from Twitter having "permanently banned" Loomer). That both this lawsuit and *Freedom Watch* seek redress for the same injury is dispositive because it means Loomer could have filed the same RICO claims advanced here in *Freedom Watch*. Opp'n at 12. Courts find identity of claims where both cases arise out of the "same transactional nucleus of fact" (here, the removal of Loomer's Twitter account) based on which a claim (here, RICO claims) "could have been raised" in the earlier lawsuit. *U.S. v. Liquidators of European Fed. Cred. Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011); *Thomas v. Shree Jalaram LLC*, 2019 WL 3503086, at *8 (N.D. Cal. Aug. 1, 2019) (Beeler, J.)

---

[1] Plaintiffs' Opposition violates the format required by L.R. 3-4(c)(2) and exceeds the page length allowed under L.R. 7-4(b). Twitter substantively responds nonetheless.

[2] All page citations are to the ECF generated numbers located at the top of the documents.

(Res Judicata "prohibits lawsuits on any claims that were raised or could have been raised in a prior action." (cleaned up)); *see also* Mot. at 18–19 (citing cases).

In any event, Loomer's "factual developments" are insufficient to avoid res judicata as a matter of law. Loomer relies on a statement in *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) that "the development of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." Opp'n at 12. The Supreme Court has disavowed *Whole Woman's Health*'s res judicata analysis. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2276 (2022). But even if *Whole Woman's Health* were still good law, it is inapplicable here because any such exception applies only if "changed circumstances will give rise to a *new* constitutional claim." *Id*. at 2305.

Here, the FAC does not allege any "changed circumstances" that gives rise to a *new* claim. None of the 32 paragraphs in the FAC supposedly reflecting "new factual developments"— only 12 of these paragraphs even relate to Twitter—have anything to do with Loomer or her alleged injury. *See* FAC ¶¶ 2–3, 42, 47, 149–150, 206–09, 259 ("Twitter-related Allegations").[3] *Id*. They simply support the same state action theory that the court in *Freedom Watch* considered and rejected. Opp'n at 12–13 (citing ¶¶ 1–3, 20–23, 42–43, 47, 146, 149–50, 159, 206–09, 216–17, 254–61, 309–11, 332); *see Freedom Watch*, No. 1:18-cv-02030-TNM (D.D.C.), Am. Compl., Dkt. 28, ¶ 126 ("Defendants act as quasi-state actors"); *Freedom Watch*, 368 F. Supp. 3d at 40 ("Plaintiffs have failed to allege state action."). Half of the Twitter-related Allegations are not even "new" as they relate to alleged events that occurred, and were known to have occurred, prior to Loomer's *Freedom Watch* lawsuit. *See* FAC ¶ 42 (October 2018 New York Times story), ¶ 47 (September 2018 testimony from Dorsey), ¶¶ 206–09 (describing Twitter's blue-mark verification status before and during 2017). The remaining Twitter-related Allegations amount to conclusory assertions about shadow-banning and the settlement of another user's lawsuit. FAC ¶¶ 2–3, 149–

---

[3] The majority of the other 20 cited paragraphs refer to allegations solely about Defendants Meta and Mark Zuckerberg.

150, 259.[4] At best, Loomer alleges *new* conduct that supports either an *old* claim or a new *theory* that could have been filed earlier, neither of which provides a basis to avoid res judicata.[5] *See, e.g.*, *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ("Different theories supporting the same claim for relief must be brought in the initial action" and does not "avoid the bar of res judicata"); *Smith v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, 2019 WL 2525185, at *9 (N.D. Cal. June 19, 2019) ("Switching legal theories or adding allegations does not create a new claim sufficient to avoid res judicata"); *Vahora v. Valley Diagnostics Lab., Inc.*, 2020 WL 42242, at *7 (E.D. Cal. Jan. 3, 2020) ("Newly discovered evidence typically does not prevent the application of res judicata." (citing cases)).

Loomer could have made the RICO claims asserted here in *Freedom Watch*. That unalterable fact cannot be pled around; dismissal without leave to amend should follow.

## II.     LOOMER FAILS TO AVOID SECTION 230 IMMUNITY

Loomer admits that Twitter is an interactive computer service provider, and that Section 230(c)(1) bars lawsuits that treat interactive computer service providers "as publishers by holding them liable for editorial functions such as removing content or profiles[.]" Opp'n at 21–22. But the Opposition argues that Twitter nonetheless cannot avail itself of Section 230 immunity because (1) Twitter also is an information content provider; (2) the lawsuit does not seek to hold Twitter liable for exercising its editorial functions; and (3) additional exceptions apply. These arguments are meritless.

All of Loomer's Section 230-related arguments center on the assertion that Twitter acts "more like [a] creator[] than publisher[]" primarily by "displaying user information," using "fact checkers to flag posts that could be misleading," and "controlling the narrative." Opp'n at 21–

---

[4] Loomer fails to note that Judge Alsup dismissed, under CDA 230, all of that user's claims except for contract-based claims predicated on allegations of specific assurances directly conveyed by a Twitter Vice-President to the plaintiff. *See Berenson v. Twitter*, 2022 WL 1289049, at *2 (N.D. Cal. Apr. 29, 2022).

[5] If, by contrast, Twitter had reinstated Loomer's account and then, in 2022—after final judgment in *Freedom Watch*—again removed her account, a claim based on that second removal would be a "new" claim. But, for obvious reasons, Loomer cannot plead such facts.

22.  The Opposition relies on an obvious misreading of *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ("*Roomates.com*"), in which the Ninth Circuit denied immunity because the defendant was "'responsible, in whole or in part, for the creation or development of ***the offending content***" at the center of the lawsuit—i.e., requiring users to input information that it was not legally allowed to obtain. *Id*. at 1162, 1169–72 (emphasis added) (cited in Opp'n at 21–22).  Loomer ignores that the "offending content" at issue in this lawsuit is not Twitter's alleged display of user information or use of fact checkers, it is content posted by Loomer herself that Twitter determined amounted to "hateful conduct" and, pursuant to its Terms, warranted a permanent ban.  FAC ¶¶ 217, 251.

Loomer cannot avoid that this lawsuit arises out of Twitter's decision to permanently remove Ms. Loomer from Twitter.  And she ignores that the very case she cites *precludes* her suit:

> "In passing section 230, Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete. In other words, Congress sought to immunize the *removal* of user-generated content, not the *creation* of content: 'Section 230 provides 'Good Samaritan' protections from civil liability for providers of an interactive computer service for actions to *restrict* access to objectionable online material.'"

*Roommates.Com*, 521 F.3d at 1163 (emphasis in original) (cleaned up) (citations omitted); *Id*. at 1170–71 ("Any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Barnes v. Yahoo!, Inc.*, 570 F. 3d 1096, 1103 (9th Cir. 2009) ("removing content is something publishers do").  Courts have uniformly rejected Loomer's argument that Twitter becomes a content provider by excluding certain content (in FAC parlance "controlling the narrative") and the Opposition cites no case finding otherwise.  *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016) ("creation by transformation" would "extend the concept of an 'information content provider' too far and would

render the CDA's immunity provisions meaningless").[6] Because the FAC's allegations arise out of Twitter's decision to enforce its Terms and remove Mr. Loomer's account, Twitter is not an information content provider and is immunized by Section 230. *See, e.g., King v. Facebook, Inc.*, 845 F. App'x 691, 692 (9th Cir. 2021) (affirming CDA dismissal of claims "arising from Facebook, Inc.'s removal of certain of King's posts and temporary suspensions of his account"); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) (affirming CDA immunity for Facebook against allegations arising out of Facebook blocking plaintiff's content); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, *3 (N.D. Cal. Nov. 7, 2022) (because plaintiff "seeks to hold Twitter liable for its decision to suspend his account, Twitter is immune under the CDA."); *Rangel v. Dorsey*, 2022 WL 2820107, at *3 (N.D. Cal. July 19, 2022) (CDA elements "easily met" where plaintiff's "claims derive entirely from Twitter's decision to exclude his content and suspend his account….").

Although the Opposition cites a number of cases that it claims support Loomer's argument against Section 230 immunity, all of those cases center on whether the service provider engages in conduct that affirmatively facilitates another party to act illegally. *See* Opp'n at 21–22 (citing *Roomates.com* 521 F.3d at 1161–62 ("website would be immune, so long as it does not *require* the use of discriminatory criteria"); *Dangaard v. Instagram, LLC*, 2022 WL 17342198, at *4 (N.D. Cal. Nov. 30, 2022) ("tools are *designed to facilitate* anticompetitive conduct"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1044–45 (N.D. Cal. 2014) ("alleged conduct potentially constitutes contribution to the alleged illegality"); *Swift v. Zynga Game Network, Inc.*, 2010 WL 4569889, at *5 (N.D. Cal. Nov. 3, 2010) ("'material contribution' to the alleged unlawful activity" by designing games "to lure consumers into the allegedly fraudulent transactions"). By contrast, this lawsuit centers on Twitter's decision to remove Loomer from its platform—not on its encouragement of others to act illegally—and Twitter is within its legal right to enforce its Terms,

---

[6] Even if there were any credence to the argument of creation by curation, it would trigger other protections including Section 230(c)(2) and the First Amendment. *Barnes*, 570 F.3d at 1105; *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186 (N.D. Cal. 2022).

restrict use of its platform to users who comply with them, and to remove users who do not. *See Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 883 (N.D. Cal. 2022) (*Roommates.com* "inapposite" where Twitter "seeks immunity for claims only in relation to the suspension of accounts of third party speakers" as opposed to "inducing illegal acts of third parties").[7] The Complaint does not plead any factual allegations supporting, and there is no basis for the Court to infer, that Twitter's decision to ban Loomer facilitated the conduct of any of the other defendants, including Meta, who like Twitter has the right to determine who to permit on its platform.

Finally, Loomer asserts that the FAC's "causes of action concerning RICO, racketeering, and terrorism" exempt Twitter from Section 230 immunity by virtue of Section 230(e)(1)–(4), which states that Section 230 shall have no effect on other laws. Opp'n at 23. Loomer cites no legal support for the argument that Section 230(e), or any other law or regulation, carves out Section 230 immunity for specific causes of action, including those alleged here. Nor is such a position consistent with case law applying Section 230 immunity to lawsuits alleging civil RICO claims. *Yuksel*, 2022 WL 16748612, *5 ("Although Section 230(e)(1) provides a carve-out from its protections for federal criminal prosecutions, 47 U.S.C. § 230(e)(1), it does not provide any exception from Section 230 immunity for civil claims premised upon federal criminal statutes— including civil RICO claims.") (citing *Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) ("Courts have consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes.")); *Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120, 1121 n.1 (W.D. Wash. 2014) (RICO claims did not "fall within the narrow exceptions to CDA immunity"), *aff'd sub nom.*, 836 F.3d 1263 (9th Cir. 2016).

---

[7] The Opposition (at 22) cites a footnote in *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1179 (9th Cir. 2009) opining that a web browser would be an "Access software provider" because "most web browsers come equipped with a filtering function, i.e., the technical means to "filter, screen, allow, or disallow content." *Id*. at 1179 n.2. Leaving aside that the footnote appears in a concurring opinion, the Ninth Circuit in *Zango* held an Internet company immune under Section 230(c)(2) for taking steps to "restrict access to objectionable material." *Id*. at 1170.

In sum, the arguments Loomer raises in opposition to Section 230 immunity are wrong as a matter of well-settled law, the claims against Twitter are precluded by Section 230, and no amendment would avoid this result. The Court should dismiss without leave to amend.

### III. LOOMER LACKS LEGAL STANDING TO BRING THIS LAWSUIT

Loomer does not point to any factual allegations that satisfy RICO standing, which requires demonstrating that the alleged injury suffered (i.e., removal from Twitter and purported resulting harms) were to "business or property" and were caused by and would not have occurred but for the predicate RICO act (i.e., allegations of Twitter assisting terrorist organizations and advocacy to overthrow the United States government). *See infra* § III(A); *see also* Opp'n at 13–21; Mot. at 22–23. For the same reasons, Loomer fails to show that she meets Article III's standing requirement. *See infra* § III(B); *see also* Opp'n at 13–21; Mot. at 22–23.

#### A. Loomer Fails To Demonstrate RICO Standing

Loomer Fails To Demonstrate RICO Standing. Loomer continues to rely on "speculative and amorphous" allegations of "reputational damage, lost employment opportunities" and "lost future profits" that are insufficient to confer standing. Opp'n at 14; Mot. at 24 (citing cases requiring allegations of "concrete and actual harm"). Loomer does not cite any law from the Ninth Circuit or this district suggesting that the types of speculative harms alleged are sufficient for RICO standing. The one out-of-circuit case cited also is distinguishable, as the plaintiffs in that case pleaded that defendants defrauded plaintiffs' clients into spending tens of thousands of dollars on information packets that were fraudulently prepared by defendants. Opp'n at 14 (citing *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988)); *Lewis*, 696 F. Supp. at 726.

The Opposition claims that Twitter "erroneously ignored the holding" in *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) that "RICO does not require an economic motive." Opp'n at 14. But the section of *Scheidler* on which Loomer relies had nothing to do with standing; it relates instead to whether a plaintiff must, to state a RICO claim, allege that the RICO enterprise or predicate acts was "accompanied by an underlying economic motive." *Id.* at 256–

59. The Supreme Court's holding that a plaintiff can successfully plead a § 1962(c) claim without allegations as to the motive of a RICO *defendant* has no bearing on the requirement that a RICO *plaintiff* must have suffered concrete harm. The Court should dismiss the FAC for lack of RICO standing. *Cf. Feng v. County of Santa Clara*, 2019 WL 7194475, at *8 (N.D. Cal. Dec. 26, 2019) (Beeler, J.) (stating that civil RICO claim fails where plaintiff "has not pleaded injury to her business or property resulting in 'concrete financial loss'") (cleaned up).

*Second*, the Opposition's extended discussion of RICO's heightened causation requirement amounts to irrelevant recitations of law, bald accusations about the conduct of the defendants en masse, and conclusory assertions about the alleged harm. *See* Opp'n at 14–15 (citing law about indirect causation); *Id*. (reciting legal elements and allegations); *Id*. at 15 (alleging defendants committed fraud); *Id*. at 15–16 (discussing alleged relationship between defendants and Loomer's political rivals); *Id*. at 16 (claiming defendants took away a "property right" and made misrepresentations); *Id*. ("suffered injuries to reputation, monetary and financial loss"); *Id*. at 17 ("clearly directly and indirectly connect to Plaintiffs' injuries"); *Id*. (allegations of extortion); *Id*. at 17–18 (accusation that terrorists are advertisers and that defendants seek to overthrow the government).[8] Such arguments are not factual allegations, or even conclusory allegations, and are insufficient to demonstrate causation under the RICO standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Opposition cites only a handful of the FAC's factual allegations to make its causation argument (Opp'n at 15–18 (citing ¶¶ 110, 114, 223, 312–314, 317)), and just three of them have anything to do with Twitter (¶¶ 312, 314, 317).[9] All three Twitter-related allegations relate to Loomer's claim that Hezbollah, Hamas, and/or the Taliban (or their members) had accounts on

---

[8] Given the irrelevance of most of the Opposition's discussion in its section relating to causation, Twitter does not herein address all of the legal citations or facts alleged. Twitter does not concede the accuracy or characterization of any of the content contained therein.

[9] The Opposition also cites FAC ¶¶ 363–65, which comprise part of the first cause of action rather than factual allegations. Four of the seven cited factual allegations related only to Meta. FAC ¶¶ 110, 114, 223, 313.

Twitter at some point after March 2019. FAC ¶¶ 312, 314, 317. None of those allegations show a nexus between the alleged conduct by Twitter (the purported predicate acts, i.e., overthrowing the government and providing material support to terrorism, discussed *infra* § IV.B) and Twitter's removal of Loomer's account (the injury). Nor would it be reasonable or consistent with the allegations for the Court to infer such a link because *all of those allegations* purportedly took place *after* Twitter removed Loomer from its platform. Opp'n at 14–17. Likewise, the Opposition relies on six paragraphs in the FAC to attempt to show a causal link between the actions of Mr. Dorsey and the alleged harm of Loomer's removal from Twitter, even though all but one of those allegations also occurred *after* Loomer's removal. FAC ¶¶ 57, 69, 83, 91, 183.[10] And the one that occurred contemporaneous to the removal had nothing to do with Mr. Dorsey or Loomer. *Id*. ¶ 42 (October 2018 *New York Times* report).

The Opposition does not attempt to reconcile the illogical timeline of Loomer's allegations as to Twitter but instead concludes that there must be a nexus between the alleged presence of accounts belonging to those groups and Loomer's removal:

> Defendants blatantly expressed that they were aware of the terrorist activities and terrorist leaders' accounts present on their sites, yet they removed and blocked Ms. Loomer's account and labeled her a "dangerous individual." Due to the fact that Defendants are run by their advertisers, there is evidence to show a reasonable inference that one of those advertisers is a terrorist organization. There is no other reason to justify the fact that Defendants think that Plaintiff is more dangerous than a known terrorist leader that murders people. Thus, Plaintiffs' predicate claim of terrorism against the Defendant is connected to the wire fraud by communications present online and as a whole and relates to the overall claim of racketeering and civil RICO.

Opp'n at 17–18. Loomer similarly concludes that there is "enough to plausibly show a connection between overthrowing the government and wire fraud, and overall, the link to the predicate act of

---

[10] The Opposition makes reference to these allegations as a stand-alone section titled "Defendants Jack Dorsey's And Mark Zuckerberg's Individual Actions Are Fairly Traceable To Plaintiffs' Injuries" purportedly in connection with Article III standing. It is unclear whether Loomer concedes that there is no causal connection between Mr. Dorsey's alleged conduct, which has nothing to do with the alleged predicate act, and Loomer's alleged injury. Either way, the allegations fail to satisfy the requirements of either RICO or Article III standing.

racketeering charge." *Id*. at 18. But Loomer does not point to any factual allegation or basis for why it would be reasonable for the Court to engage in such convoluted conspiratorial reasoning or to infer any link between the alleged presence of certain types of accounts and the removal of Ms. Loomer from Twitter. The Opposition casually lumps the defendants together without providing any citation to the FAC, but the majority of the allegations on which the Opposition relies have nothing to do with Twitter. For example, Loomer claims defendants "persuaded users that Plaintiffs were not worth of donations by incorrectly labeling Ms. Loomer's page as false[,]" deactivating the "option of giving donations[,]" and made "misrepresentations" by attaching a label to her account (Opp'n. at 15), but the *actual* allegations in the FAC relate only to Meta, not Twitter (*see, e.g.,* ¶¶ 220–21, 235, 273, 282). Loomer provides no basis for the Court to infer that there is any proximate or but-for causation between Twitter's decision to remove Mr. Loomer's account, and the predicate acts alleged as to Twitter, the alleged attempts to overthrow the government and the presence of accounts belonging to Hezbollah, Hamas, and/or the Taliban on the platform. There is no RICO standing.

### B. For the Same Reason, Loomer Fails to Demonstrate Article III Standing

Loomer relies on the same approach to attempt to demonstrate Article III standing, namely repeating the legal standard and concluding that the same factual allegations as above meet it. Opp'n at 18–21. For the same reasons the Opposition fails to demonstrate RICO standing, it does not provide any basis for the Court to find that Loomer has suffered an injury in fact that is fairly traceable to Twitter and which could be redressed by permitting this lawsuit to continue. Mot. at 25.

## IV. THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM

### A. Count One Warrants Dismissal for Failure to State a RICO Violation

#### 1. Loomer fails to allege an association-in-fact enterprise

To sufficiently state a RICO claim, Loomer must point to "***evidence***" demonstrating that the defendants formed an enterprise in which they functioned as a unit with a common

Case 3:22-cv-02646-LB   Document 109   Filed 02/13/23   Page 16 of 20

purpose. Opp'n at 25 (citing cases) (emphasis added). But none of the more than one hundred allegations cited in the Opposition provides such evidence. *See* Opp'n at 25–26. Rather, the majority of the cited allegations reflect actions each defendant purportedly took individually, with no indication that they did so based on the enterprise's (rather than their own) volition. *See, e.g.*, FAC ¶¶ 42, 57, 59, 60, 62, 66–69, 91–98, 149–50, 259 (allegations as to Twitter); *id*. ¶¶ 47, 91, 138 (allegations as to Dorsey); *id*. ¶¶ 1, 50, 63–65, 72–74, 89, 92, 108, 110, 117, 125, 131, 143–44, 146, 150, 235–239, 254–58, 303 (allegations as to Meta or Zuckerberg); *id*. ¶¶ 48, 169, 176, 183–85, 195–99 (allegations as to Google). Allegations of parallel, even similar, conduct fail to plead an enterprise. Mot. at 26 (citing cases). And none of the allegations that relate to the Twitter Defendants provides any "evidence" demonstrating that they were part of any enterprise, as opposed to making its own decisions, including to enforce Twitter's Terms. FAC ¶¶ 3, 35, 42, 57, 59–60, 62, 66, 67–69, 91, 93–96, 128, 149–50, 359–60.[11] The remaining allegations that the Opposition cites to support its claim of enterprise amount to facially conclusory recitations of legal elements that are insufficient as a matter of law. *See, e.g.*, FAC ¶¶ 3 ("wide-ranging conspiracy"), 359 ("agreed to and did conduct and participate in the conduct of the Community Media Enterprise's affairs").[12] The FAC warrants dismissal for failure to plead any facts demonstrating the existence of an enterprise.

### 2. Loomer fails to allege that Twitter directed any alleged enterprise

Loomer fails to establish that the Twitter Defendants directed some part of the alleged enterprise's affairs, as the law requires. Mot. at 27 (citing cases). The Opposition claims that the FAC has "shown that Twitter directed the affairs of the enterprise by illegally conspiring with 'individuals within the FBI'" and other members of the government to ban individuals (not

---

[11] Loomer, again, attempts to amend the FAC by citing material that is not in the FAC or properly before the Court about overlapping law firms between counsel in this case and for Twitter and Mr. Dorsey in another case. Opp. at 26 fn. 3. Even if the Court could consider them, allegations that various of the defendants hired the same law firms for separate matters provides no basis to find an enterprise.

[12] Loomer's attempt to label the "enterprise" the "Community Media Enterprise" (FAC ¶ 350) does not make it one.

11
Reply ISO Defendants Twitter, Inc. and Jack Dorsey's Motion To Dismiss
Case No. 3:22-Cv-02646-LB

necessarily Ms. Loomer) from Twitter, but nowhere in the FAC (including one of the handful of paragraphs the Opposition cites) are there factual allegations that the Twitter Defendants directed any activities of any enterprise. Opp'n at 24. The majority of the cited allegations recite the legal elements (FAC ¶ 37), relate to certain third parties who purportedly use Twitter (FAC ¶¶ 42, 83), or discuss how Twitter conducts its *own* affairs–including, for example, deciding what posts to fact check, how to enforce Twitter's rules, and who can use the platform (FAC ¶¶ 91, 96–98, 103, 247, 264). Loomer's remaining allegations relate to an August 12, 2022 claim that Twitter banned a user for posting anti-COVID vaccination information at the encouragement of the federal government. FAC ¶¶ 2, 259, 305. Even accepting these allegations as true, they provide no basis to infer that the Twitter Defendants directed an alleged enterprise *nearly four years earlier* for a different user on a different topic under a different policy.

### 3. Loomer fails to allege racketeering activity

The Opposition fails to meaningfully rebut any of the reasons the Twitter Defendants have raised for why the FAC fails to sufficiently allege predicate acts of racketeering activity. *See* Mot. at 29–32; *Mazur v. eBay Inc.*, 2008 WL 2951351, at *2 n.2 (N.D. Cal. July 25, 2008) ("A plaintiff alleging a RICO violation also must allege the essential elements of each predicate act of racketeering activity.").

Loomer continues to argue that the Twitter Defendants' alleged advocacy to overthrow the government in violation of the Smith Act constitutes a predicate act, but the Opposition fails to address, and thus concedes, that the Smith Act is not a statutorily defined RICO predicate. *See* Opp'n at 33–34. *Compare* 18 U.S.C. § 1961(1), *with* 18 U.S.C. § 2385. Even if it were, the Opposition does not point to a single allegation in the FAC that the Twitter Defendants advocated concrete violent action, as the law requires. *Id.*; Mot. at 17. Instead, Loomer relies on a December 2022 document that post-dates the FAC (and therefore is not properly before the Court) and on the same general allegations that Twitter permitted the Taliban to use the platform. Opp'n at 34. The Opposition does not provide any legal basis to hold that the alleged use of Twitter's platform by

groups like the Taliban amounts to Twitter materially supporting terrorism and/or advocacy to overthrow the government. Nor is there any plausible allegation that the Twitter Defendants took any action, let alone affirmatively advocated in violation of the Smith Act, and Loomer therefore cannot use that law as a basis for claiming a predicate act.

Loomer's reliance on an alleged violation of 18 U.S.C. § 2385, by allegedly having members of the Taliban, Hamas, or Hezbollah use Twitter's platform, provides no support. There is no basis for the Court to credit Loomer's hunch that it is "unlikely that these feeds and pages remained undetected" by Twitter. Opp'n at 32. The Opposition also fails to address the other reasons raised by the Twitter Defendants as to why Loomer is barred from relying on such allegations by Section 230 and the First Amendment. *See* Mot. at 18.

The FAC also does not allege facts demonstrating that the Twitter Defendants participated in the predicate acts of transportation in aid of racketeering, wire fraud, and extortion. *See* Mot. 30–32; FAC ¶¶ 262–305. With respect to wire fraud, by focusing entirely on half-baked allegations as to Meta, the Opposition concedes that the FAC lacks a single allegation to the Twitter Defendants, let alone at the requisite level of specificity under Rule 9(b). *See* Opp. at 28; FAC ¶¶ 288–305. As to transportation in aid of racketeering, although the FAC does not even mention the Twitter Defendants regarding this predicate act (FAC ¶¶ 279–87), Loomer argues it is sufficient that the FAC "repeated and re-averred" a series of other paragraphs in relation to the allegations regarding extortion. Opp'n at 32 (citing FAC ¶¶ 216–261, 279–287, 363). The cited FAC paragraphs mention Twitter only three times, in the context of allegedly banning users (FAC ¶¶ 217, 247, 259), and they do not reference Mr. Dorsey at all. These allegations fail to demonstrate that the Twitter Defendants used "the mail or any facility in interstate or foreign commerce" to carry out any "unlawful activity." *Cf. United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019). Loomer's attempt to bootstrap the predicate act of transportation in aid of racketeering to allegations of extortion also fails for the same reason that extortion itself cannot serve as a predicate

act: missing allegations as to the elements of extortion. This failure cannot be overcome by a one-paragraph "formulaic recitation of the elements." *Iqbal*, 556 U.S. at 678; FAC ¶ 364.

### 4. Loomer fails to allege a pattern of racketeering activity

Because Loomer fails to sufficiently allege two predicate acts amounting to racketeering activity, Loomer has also failed to sufficiently allege a pattern thereof. Despite arguing that the FAC sufficiently alleges the requisite relationship between the predicate acts, the Opposition does not cite a single paragraph in the FAC that supposedly makes this allegation. *See* Opp'n. at 27. The sole paragraph that Loomer references in a feeble attempt to demonstrate a threat of continuing activity does not do so. Opp'n at 27–28.

### B. Count Two Warrants Dismiss for Failure to State a RICO Conspiracy Claim

Loomer's failure to allege a substantive RICO violation is fatal to the pendent Section 1962(d) RICO conspiracy claim. Mot. 32-33; *Lucero v. IRA Servs., Inc.*, 2019 WL 5812175, at *4 (N.D. Cal. Nov. 7, 2019) (Beeler, J.) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO") (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010)). Loomer's failure to sufficiently allege injury likewise renders the claim deficient. *See supra* § III. Although the Opposition loosely refers to a few paragraphs with threadbare recitations of the elements of Section 1962(d), they fall far short of demonstrating the requisite conspiratorial agreement, FAC ¶¶ 383–85; *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), and Loomer's RICO conspiracy claim fails for this reason as well.

## V. LOOMER'S CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED

The Twitter Defendants previously explained the impropriety of Loomer's claim for $10 billion in punitive damages–namely, punitive damages are not available in RICO cases. *See* Mot. at 37. The Opposition does not contest these arguments and therefore they are conceded.

## VI. CONCLUSION

For the reasons discussed herein, Defendants Twitter, Inc., and Jack Dorsey respectfully request that the Court dismiss the FAC without leave to amend.

February 13, 2023  **WILLKIE FARR & GALLAGHER LLP**

By: */s/ Jonathan A. Patchen*
Jonathan A. Patchen
Michael Gottlieb
Meryl Conant Governski
Kristin Bender
Yuhan Alice Chi

Counsel for Defendants
TWITTER, INC. and JACK DORSEY