SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Attorneys for Defendants
META PLATFORMS, INC. and
MARK ZUCKERBERG

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAURA LOOMER, as an individual, LAURA LOOMER, in her capacity as a Candidate for United States Congress, and LAURA LOOMER FOR CONGRESS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., MARK ZUCKERBERG, in his capacity as CEO of Meta Platforms, Inc. and as an individual, TWITTER, INC., and JACK DORSEY, in his capacity as former CEO of Twitter, Inc. and as an individual, THE PROCTOR & GAMBLE COMPANY, DOES 1-100, individuals,<br><br>Defendants. | Case No. 3:22-cv-02646-LB<br><br>**META PLATFORMS, INC. AND MARK ZUCKERBERG'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Hon. Laurel Beeler<br>Courtroom B, 15th Floor<br>Date: April 13, 2023<br>Time: 9:30 a.m. |

1

## **TABLE OF CONTENTS**

2

3   TABLE OF AUTHORITIES ........................................................................................ ii

4   INTRODUCTION ....................................................................................................... 1

5   BACKGROUND .......................................................................................................... 2

6   ARGUMENT ................................................................................................................ 4

7         I.      AMENDMENT IS FUTILE BECAUSE LOOMER'S NEW ALLEGATIONS

8                FAIL TO CURE THE DEFECTS IN HER CLAIMS ........................................... 4

9              A.     Loomer's New Allegations Have No Bearing On Meta's

10                  Dispositive Res Judicata And Section 230 Defenses................................. 5

11             B.     Loomer's New Allegations Cannot Cure Her Failure To State A

12                  RICO Or RICO Conspiracy Claim .............................................................. 7

13        II.      THE PROPOSED AMENDMENT IS IN BAD FAITH ....................................... 13

14        III.     DISMISSAL WITH PREJUDICE IS WARRANTED ......................................... 14

15  CONCLUSION .......................................................................................................... 16

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

### CASES

3

4

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)............................................................................................10, 11

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................9, 13

7

*Baker v. Pacific Far East Lines, Inc.*,
    451 F. Supp. 84 (N.D. Cal. 1978) ...............................................................................5

8

9

*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995) .........................................................................................4

10

*Boyle v. United States*,
    556 U.S. 938 (2009)......................................................................................................8

11

12

*Carrico v. City & County of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) .....................................................................................4

13

14

*Costantini v. Trans World Airlines*,
    681 F.2d 1199 (9th Cir. 1982) .................................................................................5, 6

15

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015) ...............................................................................8

16

17

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...............................................................................6, 15

18

19

*Foman v. Davis*,
    371 U.S. 178 (1962).....................................................................................................14

20

*Fresno Unified School District v. K.U. ex rel. A.D.U.*,
    980 F. Supp. 2d 1160 (E.D. Cal. 2013).................................................................13, 14

21

22

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N.D. Cal. 2019) .......................................................................8

23

24

*Glaser v. Nationstar Mortgage, LLC*,
    2017 WL 1861850 (N.D. Cal. May 9, 2017)............................................................13

25

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................................15

26

27

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989)....................................................................................................10

28

*Headwaters Inc. v. U.S. Forest Service,*
    399 F.3d 1047 (9th Cir. 2005) ..................................................................5

*Hernandez v. Federal Home Loan,*
    663 F. App'x 518 (9th Cir. 2016) ............................................................15

*Howard v. America Online Inc.,*
    208 F.3d 741 (9th Cir. 2000) ....................................................................9

*Mendoza v. Amalgamated Transit Union International,*
    30 F.4th 879 (9th Cir. 2022) ....................................................................6

*Owens v. Kaiser Foundation Health Plan, Inc.,*
    244 F.3d 708 (9th Cir. 2001) ....................................................................5

*Resolute Forest Products, Inc. v. Greenpeace International,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..............................................11, 12

*Salameh v. Tarsidia Hotel,*
    726 F.3d 1124 (9th Cir. 2013) ............................................................14, 15

*Saul v. United States,*
    928 F.2d 829 (9th Cir. 1991) ....................................................................4

*Schmidt v. PNC Bank, NA,*
    591 F. App'x 642, 643 (9th Cir. 2015) .....................................................14

*Sephery-Fard v. Select Portfolio Servicing, Inc.,*
    2015 WL 1063070 (N.D. Cal. Mar. 10, 2015)..........................................15

*Sikhs for Justice, Inc. v. Facebook, Inc.,*
    697 F. App'x 526 (9th Cir. 2017) ............................................................15

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.,*
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...............................................6, 16

*Sorosky v. Burroughs Corp.,*
    826 F.2d 794 (9th Cir. 1987) ..................................................................13

*Sun Savings & Loan Ass'n v. Dierdorff,*
    825 F.2d 187 (9th Cir. 1987) ..................................................................10

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ..................................................................14

*Tirado v. U.S. Bank National Association,*
    2012 WL 692599 (N.D. Cal. Mar. 2, 2012)................................................5

*Vahora v. Valley Diagnostics Laboratories, Inc.,*
    2020 WL 42242 (E.D. Cal. Jan. 3, 2020) ..................................................6

*Whole Woman's Health v. Hellerstedt*,
    579 U.S. 582 (2016)..............................................................................6

*Yagman v. Gabbert*,
    684 F. App'x 625 (9th Cir. 2017) ......................................................15

**DOCKETED CASES**

*Loomer v. Facebook, Inc.*,
    No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020)......................5, 6

**STATUTES, RULES, AND REGULATIONS**

47 U.S.C. § 230....................................................................1, 4, 5, 6, 7, 15

Fed. R. Civ. P. 9(b) ............................................................................12

Fed. R. Civ. P. 11 ..............................................................................13

**INTRODUCTION**

Laura Loomer's Motion for Leave to File a Second Amended Complaint should be denied and this action should be dismissed with prejudice for two independent reasons.

*First*, Loomer's proposed amendment is futile.  Loomer has had at least six prior chances to plead sufficient claims against Meta Platforms, Inc. and Mark Zuckerburg (collectively, "Meta") over her 2019 removal from Facebook:  four complaints in three prior lawsuits, plus her Original and First Amended Complaints ("FAC") in the instant action.  Yet her proposed seventh bite at the apple *still* fails to articulate a viable claim.  The proposed Second Amended Complaint ("SAC"), ECF 114, Ex. A., offers only immaterial revisions to the deficient allegations against Meta she has set forth in her two previous complaints.

These "new allegations"—which are no more than conclusory assertions and allegations already previewed in Loomer's Opposition—cannot cure the flaws that require dismissal of the FAC.  Res judicata still precludes Loomer from bringing this suit, as the proposed SAC seeks to add only allegations that Loomer could have asserted in her previous suits or that do not transform her RICO counts into new claims.  Nor do Loomer's new allegations allow her to pierce the protection granted to Meta and Mr. Zuckerberg under Section 230 as providers of an interactive computer service, as they do not establish that Meta or Mr. Zuckerberg created the content at issue here.  And the proposed SAC does not fix the FAC's failure to plead a RICO enterprise, pattern, injury, predicate act, or conspiracy.  Loomer still does not plead that Meta did anything but follow its own legitimate, independent business interests, does not plead that Meta engaged in any predicate acts—let alone a pattern of related predicates that pose a continuing threat of harm—and does not plead that she suffered a tangible financial injury as a direct result of the conduct she alleges.  Her inability to state a viable claim on her seventh try not only requires that her motion to amend be denied; it also further confirms that this action should be dismissed with prejudice.

*Second*, the timing and nature of Loomer's proposed amendment demonstrate bad faith.  Loomer's serial, frivolous amendments in this case come on the heels of repeated attempts in multiple forums to unsuccessfully challenge the same conduct.  The instant motion was also filed at the eleventh hour, weeks after Loomer first suggested that she planned to seek leave to amend.

And the proposed SAC makes no effort to correct the deficiencies identified not only in Meta's two motions to dismiss, but also in its two earlier letters to counsel providing notice of the fundamental deficiencies in Loomer's claims.  In other words, Loomer continues to press claims that she has known, since at least July 2022, have no merit.  Because Loomer's proposed SAC is not made in good faith, the Court should deny leave to amend.

At this point, it is more than clear that Loomer cannot make allegations that can sustain any viable claim and that her continued efforts to draw out these proceedings are not in good faith. This case should be dismissed with prejudice.

## BACKGROUND

After three failed prior lawsuits against Meta over the same conduct, *see* MTD 5-6, Loomer filed the Original Complaint in this action on May 2, 2022.  ECF 1.  On July 8, 2022, Meta's counsel sent Loomer's counsel a letter outlining that pleading's fatal flaws.  ECF 80, Ex. 1.  The letter urged: "To the extent you believe there are amendments that could somehow cure these defects, please plead them before Meta and Mark Zuckerberg (and, importantly, the Court) are forced to undertake the burden and expense of litigating a motion to dismiss."  *Id.*  Counsel for Loomer insisted on "proceed[ing] with [the] complaint as filed."  ECF 80, Ex. 2.  But despite that assurance, Loomer amended her complaint shortly after Meta moved to dismiss.  ECF 59, 69.

Meta moved to dismiss the FAC, and Loomer filed an opposition.  Meta and Mark Zuckerberg's Mot. to Dismiss Am. Compl., ECF 80 ("MTD"); Plfs.' Omnibus Mem. of Points and Authorities in Opp. to Defs.' Mots. to Dismiss, ECF 87 ("Opp.").  That Opposition only confirmed that her claims are not viable and that further amendment would be futile.  Accordingly, Meta again wrote to counsel regarding "the fundamental, incurable problems [Meta had] repeatedly identified" and urged dismissal.  Holtzblatt Decl. Ex. 1.  Counsel failed to respond, much less heed Meta's request.

Counsel for Loomer then made a series of last-ditch efforts to disrupt the schedule for hearing the motions to dismiss.  On Saturday, February 11, 2023—two days before Defendants' reply briefs were due—counsel sought Defendants' consent to amend the FAC.  Holtzblatt Decl. Ex. 2.  Meta and the other Defendants informed Loomer's counsel the next business day that they

would oppose the motion and timely filed their replies.  Holtzblatt Decl. Ex. 3; ECF 108, 109, 110.  More than three weeks later, and less than 48 hours before the scheduled hearing on the motions to dismiss—for which Meta's counsel had expended substantial time preparing, Holtzblatt Decl. ¶ 5—Loomer filed the instant motion, ECF 114.

Now, in her proposed seventh bid to state a claim, Loomer offers only a handful of new allegations and almost no new allegations regarding Meta in particular.  As the instant motion makes clear, Loomer principally seeks to amend to bring new allegations that Twitter coordinated with the government to censor speech, as purportedly revealed by the publication of the "Twitter Files" and a February 8, 2023 hearing with former Twitter executives before a committee of the U.S. House of Representatives.  *See* ECF 114, at 2-4; *see also* SAC ¶¶ 1-8, 233-251, 291-301.  As to Meta, the proposed SAC contains little more than conclusory allegations that Meta participated in Twitter's alleged coordination with government agents.  SAC ¶ 9 ("It is now known that Meta (Facebook) was one of the other social media companies coordinating with Twitter, agents of the federal government and other entities on the JIRA platform."); *see id.* ¶¶ 7, 232, 242, 243 (accusing unnamed "social media companies" of the same coordination); *id.* ¶ 2 (alleging Meta was among entities "involved in one of the most brazen criminal conspiracies in American history" to interfere with the right to free and fair elections); *id.* ¶ 13 (alleging, as "the most banned woman in the world," she was victimized by "Big Tech tyrants" and "deserves … to have her day in Court at trial").  But the proposed SAC includes no factual allegations substantiating Meta's supposed involvement in this "conspiracy."

The proposed SAC also attempts to incorporate allegations—which Loomer previously set forth in her Opposition, and Defendant Procter and Gamble ("P&G") already addressed in its Reply—that Meta employee Josh Althouse warned Loomer in May 2019 that she may be removed from Facebook.  SAC ¶¶ 270-271; *see* Opp. 9; P&G's Reply in Support of Mot. to Dismiss, ECF 110, at 1-2 ("P&G Reply").  The proposed SAC alleges that Mr. Althouse "contacted Ms. Loomer and one of her associates via phone" and confirmed that P&G had "provided a list of persons who were to be banned" from Facebook "unless those persons disavowed the Proud Boys."  SAC ¶ 270.  Mr. Althouse, Loomer alleges, "wasn't supposed to be relaying this information" but "encouraged

1    [her and her associate] to draft a statement disavowing the Proud Boys as a way to placate P&G,

2    who [Mr. Althouse] said was at the time Meta's largest advertiser." *Id.*  Mr. Althouse also

3    allegedly "conveyed to Loomer and her associate that P&G was pressuring Meta to ban Loomer

4    and a list of other high profile conservatives if Meta wished to maintain its advertising revenue

5    with P&G," *id.*, and "stated to Loomer and her associate that P&G demanded Meta label Plaintiff

6    Ms. Loomer a 'Dangerous Individual' and ban her from using Meta's platform," *id.* ¶ 271.

7         Lastly, the proposed SAC adds a series of legal conclusions masquerading as factual

8    allegations.  Loomer proposes to add paragraphs to her complaint that attempt to explain how Meta

9    engaged in "misrepresentations" by removing her from Facebook, and how this purportedly

10   injured her and other users.  *See* SAC ¶ 346-349.  The proposed SAC then makes legal arguments,

11   previewed in her Opposition, Opp. 27-28, as to how Loomer's material support and government

12   overthrow allegations are supposedly related to her wire fraud theory.  *See* SAC ¶¶ 365-366, 379.

13                                          **ARGUMENT**

14        Loomer's motion for leave to amend should be denied—and the FAC should be dismissed

15   with prejudice—because amendment would be futile and her request to amend is in bad faith.

16   **I.     AMENDMENT IS FUTILE BECAUSE LOOMER'S NEW ALLEGATIONS FAIL**

17   **        TO CURE THE DEFECTS IN HER CLAIMS**

18        Loomer's amendment would be futile because Loomer's new allegations cannot overcome

19   Meta's arguments that her claims are foreclosed by res judicata and Section 230 or cure the defects

20   that Meta has repeatedly identified in her RICO and RICO conspiracy claims.  "Futility of

21   amendment can, by itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*,

22   59 F.3d 815, 845 (9th Cir. 1995).  Where, as here, amendment would be futile and the proposed

23   SAC would be subject to dismissal, leave to amend is properly denied.  *See Carrico v. City & Cnty.*

24   *of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citation omitted); *Saul v. United States*,

25   928 F.2d 829, 843 (9th Cir. 1991) (holding "district court did not abuse its discretion by denying

26   leave to amend" where "[n]either amendment could overcome the fundamental futility of the

27   claims").  Despite the handful of new references to Meta in Loomer's SAC, "the proposed

28

amendment is insufficient in law and would thus be a useless act."  *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978).

## A.   **Loomer's New Allegations Have No Bearing On Meta's Dispositive Res Judicata And Section 230 Defenses**

Loomer's proposed amendment in no way addresses the fundamental problem that both her claims are precluded by res judicata and Section 230 of the Communications Decency Act.

*Res judicata*.  In its motion to dismiss the FAC, Meta explained that res judicata bars this action because Loomer has sued over her removal from Facebook on three prior occasions, MTD 5-6, dismissing one of those suits with prejudice in August 2020, *see* Notice of Voluntary Dismissal, *Loomer v. Facebook, Inc.*, No. 4:20-cv-03154-HSG (N.D. Cal. Aug. 13, 2020), ECF 88 ("*Loomer I*").  Nothing in the proposed SAC cures that defect.  Loomer's "new" allegations against Meta either describe conduct that she knew about while *Loomer I* was pending and thus could have been pressed in that suit, or are insufficient to transform her legal theory *du jour* into a new claim.  Like her FAC and Original Complaint, the proposed SAC therefore seeks impermissibly to "reassert[] the same claims" that were extinguished by the final judgment in *Loomer I*.  *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).

First, Loomer cannot overcome res judicata by newly alleging that her RICO claims are supported by a May 2019 phone call between her and Meta employee Josh Althouse.  *See* SAC ¶¶ 270-271.  Res judicata precludes Loomer from raising in this action any "grounds for recovery which could have been asserted, whether they were or not" in *Loomer I*.  *See Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (citation omitted).  Because Loomer alleges that the call with Mr. Althouse took place before she even filed *Loomer I*—let alone stipulated to its with-prejudice dismissal—she unquestionably could have raised it in the prior suit.  The alleged call thus provides no basis for avoiding res judicata.  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (res judicata barred newly asserted claims based on "additional allegations" that were "'related to the same set of facts as the allegations'" underlying the prior suit (citation omitted)); *Tirado v. U.S. Bank Nat'l Ass'n*, 2012 WL 692599, at *3 (N.D.

Cal. Mar. 2, 2012) ("A claim arising after an entry of judgment is barred unless it is based on facts that occurred after the final judgment.").

Second, to the extent the proposed SAC contains new allegations that post-date the August 2020 judgment in *Loomer I*, they do not help her avoid res judicata because they do not establish any new claim.  As before, Loomer's suit still hinges on her May 2019 removal from Facebook. *See* SAC ¶ 254.  She has litigated this claim on three prior occasions, and following the judgment in *Loomer I*, she cannot relitigate it here by "plead[ing] a new legal theory."  *Costantini*, 681 F.2d at 1201; *see* MTD 7.   Her throwaway, unsupported assertion that Meta coordinated with Twitter or government agents, SAC ¶ 9—which Loomer does not allege had anything to do with her removal from Facebook—"does not alter the underlying fundamental identity of the suits" so as to avoid res judicata.  *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022).  Whether Loomer frames her new allegations as recently discovered evidence or factual developments occurring after the preclusive judgment, res judicata continues to apply because she has not shown that "changed circumstances" give rise to "a new … claim."  *See Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016); *Vahora v. Valley Diagnostics Lab., Inc.*, 2020 WL 42242, at *7 (E.D. Cal. Jan. 3, 2020) ("Newly discovered evidence typically does not prevent the application of res judicata.").

**Section 230**.  In its MTD (at 23-25), Meta further explained that Section 230 bars Loomer's claims because they seek to impose liability on Meta and Mr. Zuckerberg for "deciding whether to exclude material that [a] third part[y]"— Loomer—"seek[s] to post online."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1171-1172 (9th Cir. 2008) (en banc).  Nothing in the proposed SAC even attempts to overcome that defense.  Loomer previously attempted to avoid Section 230 by arguing that she is seeking to impose liability on Meta for acting as an "information content provider" rather than as a publisher of third-party content.  *See* Opp. 21-23.  But as Meta explained in its Reply (at 12-14), that argument fails because Loomer has not alleged that Meta was responsible for "creating or developing the *content at issue*" here, *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (emphasis added)—which, again, is the content that Loomer posted and wishes to post using her account.

None of the new allegations in Loomer's proposed SAC changes that conclusion. To the contrary, the new allegations further confirm that Loomer's claims hinge on Meta's publishing activity related to *third-party* content. *See* SAC ¶ 312 (extortion allegations based on alleged threat of removing user account under Community Standards); *id.* ¶¶ 336-337, 346 (wire fraud allegations based on removal of user content allegedly contrary to prior representations); *id.* ¶¶ 365-366 (material support allegations based on alleged failure to remove terrorist content); *id.* ¶ 379 (government overthrow allegations based on alleged "depriving account access to political figures"). Section 230 thus bars amendment—and continues to require dismissal.

### B.     Loomer's New Allegations Cannot Cure Her Failure To State A RICO Or RICO Conspiracy Claim

As detailed in Meta's MTD and Reply, the FAC also fails to state a claim because it does not plausibly allege conduct of a RICO enterprise, a pattern of racketeering activity, a cognizable injury proximately caused by the conduct alleged, a RICO predicate act, or a conspiracy to violate RICO. The proposed SAC fixes none of these fatal flaws.

***Enterprise***. In moving to dismiss the FAC, Meta explained that Loomer had failed to plead a RICO enterprise because she alleged only lawful parallel conduct between Meta and Twitter and conduct by Meta, Mr. Zuckerberg, and P&G in service of Meta's and P&G's respective (and independent) legitimate business interests. MTD 10-11; Reply 3-5. The proposed SAC fails to cure that defect. Loomer's new allegations instead reaffirm that Meta and P&G were pursuing their own business interests rather than associating together for the purpose of engaging in unlawful racketeering activity. Nor is Loomer's bare assertion that Meta coordinated with Twitter and government agents enough to plausibly allege a RICO enterprise.

Loomer's allegations about the May 2019 call with Mr. Althouse, SAC ¶¶ 270-271, do not help her establish that Meta and P&G formed a RICO enterprise. The proposed SAC merely identifies Mr. Althouse as the "knowledgeable and reliable source" cited in the FAC who allegedly informed Loomer that it was in the independent business interests of Meta and P&G for Loomer to be removed from Facebook for violating Facebook's Community Standards. As Loomer now recounts, Mr. Althouse allegedly told Loomer that after publicly expressing its concerns about the

content that was appearing on platforms where it advertised, P&G demanded that Meta remove Loomer from Facebook under its dangerous individuals and organizations policy unless she disavowed the Proud Boys, or else Meta would face the potential loss of P&G's advertising. *Compare* SAC ¶¶ 269-271, *with* FAC ¶¶ 233-235.  As Meta has explained, allegations that Meta applied its preexisting policy to ban Loomer after facing pressure to do so from one of its largest advertisers suggests, at most, that Meta and P&G each acted in accordance with their ordinary business interests, not that the companies coordinated their efforts to engage in illicit conduct. MTD 10-11; Reply 4.  Such "routine commercial dealing" does not amount to a RICO enterprise. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019).

Nor can Loomer plead a RICO enterprise through her conclusory assertion that Meta participated in alleged coordination between government agents and social media companies.  As Meta explained, MTD 9-10, a RICO enterprise consists of "'a group of persons associated together for a common purpose of engaging in a course of conduct,'" and not just "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates." *Boyle v. United States*, 556 U.S. 938, 944, 947 & n.4 (2009).  The proposed SAC baldly asserts (without factual amplification) that Meta coordinated with Twitter and government agents on a platform called JIRA.  SAC ¶ 9.  But none of Loomer's new allegations even hints that Meta came together with Twitter or government actors to carry out the only action that Loomer alleges harmed her: her removal from Facebook under the dangerous individuals and organizations policy.  *See* SAC ¶¶ 287-289, 365-366, 379, 411, 413-414, 419, 429.  She cites no example of Meta ever communicating with Twitter or government agents on JIRA or even using JIRA at all—let alone coordinating with Twitter or government agents through JIRA to de-platform or censor her.  The proposed SAC thus continues to lack plausible allegations as to "what exactly each individual did, when they did it, or how they functioned together as a continuing unit," preventing Loomer from pleading a RICO enterprise.  *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015); *see* MTD 10.

***Pattern***.  Meta explained in its MTD briefing that Loomer failed to plead a RICO pattern because her alleged predicates are not sufficiently related and do not plausibly describe a threat of continuing activity.  MTD 11-13; Reply 5-6.  These defects cannot be cured by the proposed SAC's

1   conclusory assertions that Loomer's material support and government overthrow allegations are

2   related to her wire fraud allegations.  And Loomer offers no new allegations in response to Meta's

3   argument that she has failed to allege a continuing threat.

4        The proposed SAC asserts that its material support allegations are related to her wire fraud

5   theory because Meta "lied to Plaintiffs and other users in suggesting they actually had a policy"

6   against hate speech and dangerous individuals when Meta removed Loomer from Facebook

7   instead of removing all terrorist content.  SAC ¶¶ 365-366.  This is a "'legal conclusion couched

8   as a factual allegation" and should be disregarded in assessing the sufficiency of the proposed

9   SAC.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And in any event, the argument that Loomer

10  (improperly) attempts to advance fails because her pleadings still do not plausibly allege that these

11  purported predicates shared a purpose, result, victim, or method.  *See Howard v. Am. Online Inc.*,

12  208 F.3d 741, 749 (9th Cir. 2000); MTD 12.  Loomer's wire fraud theory hinges on allegations

13  that Meta removed her Facebook account and then did not allow her to return to Facebook after

14  representing that it would not censor politicians.  *See* SAC ¶¶ 336-339.  Her material support

15  theory, by contrast, relies on allegations that Meta failed to deploy the Community Standards to

16  remove every piece of terrorist content on Facebook.  *Id.* ¶¶ 359, 362.  Loomer's disagreement

17  with the way in which Meta has applied its separate policies does not plausibly suggest that the

18  decision to remove her from Facebook is in any way linked to the supposed presence of terrorist

19  content on Facebook, which Loomer still does not allege has harmed her in any way.  *See id.* ¶ 366.

20       Loomer's argument that her government overthrow allegations are related to her wire fraud

21  allegations fails as well.  These government overthrow allegations remain grounded in Loomer's

22  disagreement with certain instances in which Meta allegedly applied (or did not apply) the

23  Community Standards to content that has no relation to Loomer.  *See* MTD 12.  More

24  fundamentally, these allegations are also irrelevant because Smith Act violations are not RICO

25  predicate acts, as Meta has told her time and again.  *See* Mot. to Dismiss Original Complaint, ECF

26  59, at 21-22; MTD 21-22; Reply 12; ECF 80, Ex. 1; Holtzblatt Decl. Ex. 1.

27       The proposed SAC independently fails to plead a RICO pattern because it does not

28  plausibly allege "past conduct that by its nature projects into the future with a threat of repetition."

1    *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).  Meta has explained that, even assuming

2    Loomer could establish that the alleged predicates are related, her claims are based on no more

3    than "isolated or sporadic acts"—such as her removal from Facebook in May 2019—that do not

4    amount to a "threat of continuing activity."  *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187,

5    194 (9th Cir. 1987); MTD 12-13; Reply 6.  The only new allegation that even arguably relates to

6    this issue is the conclusory assertion that Meta coordinated with Twitter and government agents

7    on the JIRA platform.  SAC ¶ 9.  But even this allegation, which as noted above offers no example

8    of the alleged coordination, *supra* p.8, is framed as a completed act rather than an ongoing threat,

9    *see* SAC ¶ 8 ("the conspirators were using JIRA"); *id.* ¶ 9 ("Meta (Facebook) was one of the other

10   social media companies coordinating … on the JIRA platform.").

11        ***Injury and proximate cause***.  In its motion to dismiss, Meta explained that each of

12   Loomer's asserted injuries either were not the kind of tangible financial injuries cognizable under

13   RICO or were too speculative to establish the required proximate cause.  MTD 13-14; Reply 6-8.

14   None of Loomer's new allegations addresses these defects.  After previewing these arguments in

15   her Opposition, *see* Opp. 15-16, Loomer now shoehorns into her proposed SAC assertions that her

16   removal from Facebook "took away from users the right to decide on which candidate they wanted

17   to follow, or whether or not to donate to a political candidate of their choosing," SAC ¶ 348,

18   "denied [her] as a candidate of the ability to spread her message to voters," *id.* ¶ 349, and took

19   away "Plaintiffs' rights to manage their own political campaign profile, the equal right to spread

20   knowledge and share that profile page, and the ability to solicit donations from users," *id.* ¶ 351.

21        None of these theories suffices.  As Meta has previously explained, any alleged loss of

22   Loomer's "ability to spread her message to voters," SAC ¶ 349, or her (nonexistent) "rights" to

23   use Facebook for her political campaign, *id.* ¶ 351, are not tangible financial injuries and thus not

24   cognizable under RICO, *see* MTD 12; Reply 6-7.  Loomer also cannot establish, as she must, that

25   "the alleged violation led directly to [her] injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

26   451, 461 (2006).  Because "there are numerous reasons" why a user might donate to someone other

27   than Loomer, such as her public anti-Muslim views, *see* SAC ¶ 291, she cannot show the extent to

28   which any injury she suffered is attributable to Meta.  *See Resolute Forest Prods., Inc. v.*

*Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017).  Loomer's argument that Meta's conduct affected would-be donors also fails; "given that the only persons who could have been defrauded were the donors who gave money," Loomer cannot establish that *she* "is the victim of [the] fundraising scheme" of which she accuses Meta, *see id.*  Even assuming, therefore, that Loomer could show that this alleged conduct injured other Facebook users, SAC ¶¶ 348-349, it does not move the needle on her RICO claims.  Loomer must plead *her own* injury proximately caused by Meta's alleged predicate acts.  *See Anza*, 547 U.S. at 461; Reply 8.

**RICO predicate acts**.  Meta explained in its MTD and Reply that the FAC fails the basic requirement of pleading any RICO predicate act.  MTD 15-22; Reply 8-12.  The proposed SAC does not cure this fundamental defect.

Wire fraud:  Meta has explained that Loomer's allegations do not plausibly state a wire fraud theory because she alleges no affirmative, material misrepresentation and no scheme to deprive Loomer of money, property, or honest services.  MTD 15-18; Reply 8-9.  Loomer ostensibly adds a handful of new allegations in support of her wire fraud claim, SAC ¶¶ 346-349, but as noted above, *supra* p.4, these statements merely articulate unavailing theories as to how she and other users were harmed by conduct that she has previously alleged.  Loomer's wire fraud theory still hinges on her insufficient allegations—already put forward in the FAC, *see* FAC ¶¶ 218-230, 276—that Meta "fraudulently deactivat[ed] and bann[ed] Ms. Loomer and her political page," fact-checked unspecified content, and falsely promised that politicians like Loomer would be able to use Facebook, *see* SAC ¶ 346.  According to Loomer, this conduct "persuaded users that Plaintiffs were not worthy of donations," *id.*, "attempt[ed] to persuade social media users to redirect their attention and donate money to Defendants' purported political allies and Ms. Loomer's political opponents," *id.* ¶ 347, and "induced Plaintiffs and the public to believe all political candidates and campaigns would be treated fairly and afforded the right to use their services to campaign," *id.* ¶ 349.

None of Loomer's new assertions overcomes the defects set forth in Meta's MTD briefing.  The proposed SAC asserts that Meta made a misrepresentation because it removed Loomer from Facebook "due to her political speech and political views," and not due to the dangerous

individuals and organizations policy that Meta purported to apply, SAC ¶ 349.  But Loomer's

disagreement with how Meta applies its policies does not render them fraudulent.  *See* MTD 15 &

n.10.  The proposed SAC also states that Meta made misrepresentations through "false claims that

she is 'hateful' and a 'dangerous individual,'" and by "wrongfully induc[ing] Plaintiffs and the

public to believe all political candidates and campaigns would be treated fairly and afforded the

right to use their services to campaign."  SAC ¶ 349.  But as Meta has repeatedly explained, Meta

never represented that banned individuals would be allowed to return to Facebook if they launched

political campaigns.  MTD 16; Reply 8-9.  Any representations that Loomer was "hateful" or

"dangerous," or that exercising editorial control over the content of politicians would be unfair,

*see* SAC ¶ 349, are statements of opinion that are not actionable as fraud, MTD 16-17 & n.11;

Reply 8.  Moreover, Loomer cannot plead, with the particularity required by Rule 9(b), that Meta

fraudulently induced donors to change their campaign contributions, "without describing a single

donor, donation date or amount, nor how the donation was fraudulently induced"—which she still

has not done.  *Resolute Forest Prods.*, 302 F. Supp. 3d at 1022.

<u>Extortion</u>:  Meta explained that the FAC failed to plead extortion because Loomer did not

plausibly allege that Meta attempted to obtain property from her through wrongful threats.  MTD

18-20; Reply 10-11.  Loomer's new allegation that Mr. Althouse "encouraged [Loomer and her

associate] to draft a statement disavowing the Proud Boys" to appease P&G, SAC ¶ 270, brings

her no closer to a viable extortion claim.  Loomer's Opposition made clear that she believes that

she can plead extortion by alleging that Meta suppressed her speech in order to gain advertising

dollars from P&G.  Opp. 31.  But as Meta explained, she cannot.  Meta was fully within its rights

to remove Loomer from Facebook under the applicable Terms of Service, *see* MTD 3-5 & Ex. 3;

Loomer's speech rights are not valuable property that Meta could possibly obtain; and the P&G

advertising money that Meta allegedly sought to acquire did not belong to Loomer.  *See* MTD 19-

20; Reply 10-11.

<u>Material support</u>:  Meta explained that the FAC did not plead material support because she

failed to identify any terrorist account or page that Meta or Mr. Zuckerberg knew of and declined

to remove.  MTD 20-21; Reply 11.  The proposed SAC makes no effort to cure this defect.  Loomer

now asserts that "Defendants blatantly expressed that they were aware of the terrorist activities and terrorist leaders' accounts present on their sites." SAC ¶ 366. But this conclusory assertion, which inappropriately "group[s] multiple defendants together in a broad allegation," *Glaser v. Nationstar Mortg., LLC*, 2017 WL 1861850, at *5 (N.D. Cal. May 9, 2017), does not plausibly allege that *Meta or Mr. Zuckerberg* had knowledge of and declined to remove any particular account, especially given that her amended allegations continue to cite a single statement by an employee of *Twitter* regarding terrorist content, SAC ¶ 360; *see* MTD 20-21 & n.13.

Government overthrow:  As noted above, *supra* p.9, Meta has repeatedly explained that violations of the Smith Act are not RICO predicate acts. Loomer's allegation in the proposed SAC that Meta sought to overthrow the government "by silencing and depriving account access to political figures," SAC ¶ 379, is preposterous. And even if taken seriously—which it cannot be— it does not plead that Meta advocated for, or instigated action aimed at, overthrowing the government through force or violence. *See* MTD 22.

***Conspiracy***.  Meta explained that the FAC failed to plead a RICO conspiracy because it did not plausibly allege a substantive RICO violation or an agreement to commit one. MTD 22-23.  The proposed SAC, as outlined above, fixes neither of these defects. Loomer still does not plausibly allege any enterprise, pattern, injury, or predicate act, nor does the proposed SAC add allegations that "plausibly suggest an illicit accord." *Ashcroft*, 556 U.S. at 680.

## II.     THE PROPOSED AMENDMENT IS IN BAD FAITH

In addition to futility, leave to amend may be denied for reasons "such as undue delay, bad faith motive…or prejudice to the opposing party." *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804–805 (9th Cir. 1987) (holding district court did not abuse its discretion by deny denying leave to amend for bad faith). Bad faith "includes amendments filed frivolously or for an improper purpose." *See Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013). Frivolity is a matter of whether "'to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Id.* (quoting Fed. R. Civ. P. 11).  Contrary to that rule, Loomer continues to press her

1    claims—making only immaterial revisions to her allegations—despite being on notice since at

2    least July 2022 of their incurable defects.  For instance, she insists on alleging Meta violated the

3    Smith Act even though, as Meta has repeatedly explained, Smith Act violations are not RICO

4    predicate Acts.  *Supra* p.9.  As such, the amendment is frivolous, and thus in bad faith.

5         Bad faith also includes "claims brought to harass the opposing party."  *Fresno Unified Sch.*

6    *Dist*, 980 F. Supp. 2d at 1178.  As detailed above, *supra* pp.2-3, the timing and nature of Loomer's

7    serial amendments, not to mention her pattern of meritless suits in multiple forums over the same

8    conduct, demonstrate that her RICO and conspiracy claims are not made in good faith but rather

9    to harass Meta.  The same conclusion is supported by the fact that the proposed SAC makes no

10   effort to correct the deficiencies Meta has identified time and again, showing Loomer is unwilling

11   to grapple with the governing legal framework.  *See Schmidt v. PNC Bank, NA*, 591 F. App'x 642,

12   643 (9th Cir. 2015) (affirming dismissal without leave to amend where district court noted that

13   action was a "frivolous and desperate attempt to avoid foreclosure" and was brought "in bad

14   faith").  Loomer's protracted years-long attempt to use judicial resources for extrajudicial purposes

15   has imposed substantial costs, not only on Meta, but also on the Court.  Holtzblatt Decl. ¶ 5.  Leave

16   to amend should thus be denied.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("bad faith" and

17   "repeated failure to cure deficiencies by amendments previously allowed" among reasons to deny

18   leave to amend).

19   **III.    DISMISSAL WITH PREJUDICE IS WARRANTED**

20        Loomer's proposed SAC not only fails to establish viable claims; it also confirms the Court

21   should dismiss this action *with prejudice*.  "'[D]ismissal without leave to amend is proper if it is

22   clear that the complaint could not be saved by amendment.'"  *Salameh v. Tarsidia Hotel*, 726 F.3d

23   1124, 1133 (9th Cir. 2013); *see Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming

24   with-prejudice dismissal of RICO claims where amendment would be futile).  Loomer has now

25   (twice) attempted to identify any new allegations that she believes could cure her deficient

26   pleadings.  Her failure to do so demonstrates that she simply cannot fix the problems that require

27   dismissal of her FAC.

28

1    Where, as here, the plaintiff has previously amended, a "district court's discretion to deny

2  leave to amend is 'particularly broad.'" *Salameh*, 726 F.3d at 1133.  Not only has Loomer

3  previously amended in *this case*, but she has also had ample opportunities to plead her claims in

4  her *three prior suits* challenging Meta's decision to ban her account.  *See Sephery-Fard v. Select*

5  *Portfolio Servicing, Inc.*, 2015 WL 1063070, at *5 (N.D. Cal. Mar. 10, 2015) (denying leave to

6  amend because of "Plaintiff's pattern of filing serial lawsuits arising out of the same nucleus of

7  facts").  The proposed SAC is Loomer's seventh bite at the apple (taking into account her four

8  complaints from the three previous suits), yet the defects that Meta has outlined time and again

9  persist.  Given that Loomer has, yet again, "made only minimal changes" to her allegations against

10  Meta, and "continue[s] to lack the facts necessary to support a RICO claim," a prejudicial dismissal

11  is warranted.  *See Yagman v. Gabbert*, 684 F. App'x 625, 627 (9th Cir. 2017) (affirming with-

12  prejudice dismissal of RICO claims).  Indeed, as noted above, she has even continued to press her

13  absurd allegations that Meta attempted to forcibly overthrow the government, while offering no

14  rebuttal to Meta's point that violations of the Smith Act are not RICO predicates.  This case

15  therefore calls for the Court to use its considerable discretion and order that her claims be dismissed

16  with prejudice.

17    Moreover, as Meta has previously explained, *see* MTD 25; Reply 14-15, prejudicial

18  dismissal is especially appropriate here because no matter how Loomer attempts to dress up her

19  RICO claims, she cannot overcome the bar imposed by res judicata or Section 230, *see Hernandez*

20  *v. Federal Home Loan*, 663 F. App'x 518, 519-520 (9th Cir. 2016) (affirming denial of leave to

21  amend complaint "barred by the doctrine of claim preclusion" because "amendment would have

22  been futile"); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017)

23  (amendment futile because claim was "barred by the CDA").  Indeed, courts routinely dismiss with

24  prejudice based on Section 230 early in a case because the statute is meant to protect against

25  "protracted legal battles."  *Roommates.Com*, 521 F.3d at 1175; *Goddard v. Google, Inc.*, 640 F.

26  Supp. 2d 1193, 1202 (N.D. Cal. 2009) (dismissing without leave to amend, reasoning that "the

27  Ninth Circuit implicitly has identified a special form of 'prejudice' to defendants who improperly

28  are denied early dismissal of claims falling within the zone of CDA immunity" and that Google

1    had to be "extricated from this lawsuit now lest the CDA's 'robust' protections be eroded by further

2    litigation"); *Sikhs for Justice, Inc.*, 144 F. Supp. at 1096 (granting motion to dismiss with prejudice

3    based on CDA defense).

4    <u>**CONCLUSION**</u>

5    For the foregoing reasons, the Court should deny the Motion for Leave to File the SAC and

6    dismiss the action with prejudice.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  March 21, 2023

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:    */s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
JEREMY W. BRINSTER (*pro hac vice*)
Jeremy.Brinster@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

EMILY BARNET (*pro hac vice*)
Emily.Barnet@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendants*
META PLATFORMS, INC. AND
MARK ZUCKERBERG

1

## <u>**CERTIFICATE OF SERVICE**</u>

2          I hereby certify that on March 21, 2023, I electronically filed the above document with the

3   Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4   registered counsel.

5

6   Dated:   March 21, 2023

7

By:   */s/ Sonal N. Mehta*
        Sonal N. Mehta

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28